**[ORAL ARGUMENT REQUESTED]**

**Nos. 23-1286, 23-1335**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

CHAYA WERFEL, et al.,

Plaintiffs-Appellants,

v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

Defendants-Appellees.

_____

UNITED STATES OF AMERICA,

Intervenor-Appellant.

_____

On Appeal from the United States District Court
for the District of Colorado
District Court Case No. 21-cv-03043 (Judge Gallagher)

_____

**BRIEF FOR INTERVENOR-APPELLANT
THE UNITED STATES OF AMERICA**

_____

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

SHARON SWINGLE
COURTNEY L. DIXON
  *Attorneys, Appellate Staff
  Civil Division, Room 7246
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-8189*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED APPEALS PURSUANT TO
CIRCUIT RULE 28.2(C)(3)

GLOSSARY

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION .....................................................................2

STATEMENT OF THE ISSUE.............................................................................2

PERTINENT STATUTES AND REGULATIONS ......................................3

STATEMENT OF THE CASE..............................................................................3

      A.    Background..................................................................................3

           1. The PA and PLO .............................................................3

           2. The ATA and PSJVTA ................................................5

      B.    Prior Proceedings.....................................................................9

SUMMARY OF ARGUMENT............................................................................10

STANDARD OF REVIEW ................................................................................12

ARGUMENT .......................................................................................................13

THE PSJVTA'S JURIDICTIONAL PROVISIONS COMPORT
WITH FIFTH AMENDMENT DUE PROCESS ..........................................13

A.    Personal Jurisdiction Under the PSJVTA Is Fair and Reasonable .....................13

B.    The District Court's Contrary Reasoning, and the Second Circuit's
Recent Decision in *Fuld v. PLO*, Are Unpersuasive ................................................21

CONCLUSION ...................................................................................................26

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                 **Page(s)**

*Bank Markazi v. Peterson,*
578 U.S. 212 (2016) .................................................................. 16

*Bristol-Myers Squibb Co. v. Superior Court,*
582 U.S. 255 (2017) .................................................................. 19

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ................................................. 13, 15, 22, 23

*Burnet v. Brooks,*
288 U.S. 378 (1933) .................................................................. 20

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ........................................................ 6, 11, 15

*EEOC v. Arabian Am. Oil Co.,*
499 U.S. 244 (1991)...................................................................20

*Estate of Klieman ex rel. Kesner v. PA,*
923 F.3d 1115 (D.C. Cir. 2019), *vacated,*
140 S. Ct. 2713 (2020) ................................................................ 7

*Estate of Klieman v. P.A.:*
82 F. Supp. 3d 237 (D.D.C. 2015) ............................................. 6
467 F. Supp. 2d 107 (D.D.C. 2006) ........................................... 6

*Fuld v. PLO,*
82 F.4th 74 (2d Cir. 2023) ............................................. 12, 23, 24

*Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)............................................................. 13, 26

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,*
937 F.2d 44 (2d Cir. 1991) ......................................................... 7

*Mallory v. Norfolk S. Ry. Co.,*
600 U.S. 122 (2023) ......................... 1, 10, 13, 15, 16, 22, 24, 25

*Peay v. BellSouth Med. Assistance Plan,*
205 F.3d 1206 (10th Cir. 2000) ....................................... 12, 19, 20

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
   119 F.3d 935 (11th Cir. 1997) ...................................................................20

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936) ........................................................................ 20

*Waldman v. PLO*:
   82 F.4th 64 (2d Cir. 2023) ............................................................ 23
   835 F.3d 317 (2d Cir. 2016) ........................................................... 6
   925 F.3d 570 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*,
      140 S. Ct. 2714 (2020) ........................................................ 7

*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665 (2015) .............................................................. 13, 15

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ................................................................ 19

**Statutes:**

Anti-Terrorism Clarification Act of 2018,
   Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 ...............................................7

Department of State, Foreign Operations, and Related Programs
   Appropriations Act, 2023, Pub. L. No. 117-328, div. K, tit. VII,
   § 7041(l)(3)(B)(i), 136 Stat. 4459, 5049 ...................................................5

Middle East Peace Facilitation Act of 1993,
   Pub. L. No. 103-125, 107 Stat. 1309:
      § 3(b)(2), 107 Stat. at at 1310 ...............................................5
      § 3(b)(2)(A), 107 Stat. at 1310 ..............................................17
      § 3(d)(2), 107 Stat. at 1310................................................17

Palestinian Anti-Terrorism Act of 2006,
   Pub. L. No. 109-446, 120 Stat. 3318:
      § 7, 120 Stat. at 3324 (codified as amended at 22 U.S.C. § 2378b note) ................4

Promoting Security and Justice for Victims of Terrorism Act of 2019,
   Pub. L. No. 116-94, div. J, tit. IX, 133 Stat. 2534:
      § 903, 133 Stat. at 3082-85 (codified at 18 U.S.C. § 2334(e))...............................7-8
      § 903(b), 133 Stat. at 3082 ................................................8
         18 U.S.C. § 2333(a) ...............................................14
         18 U.S.C. § 2333(d)(2) ............................................6

18 U.S.C. § 2334(a) ................................................................... 6

18 U.S.C. § 2334(e) ............................................................. 14, 23

18 U.S.C. § 2334(e)(1) ............................................................. 14

18 U.S.C. § 2334(e)(1)(A) ..................................................... 8, 18

18 U.S.C. § 2334(e)(1)(B) ............................................ 9, 18, 25

18 U.S.C. § 2334(e)(3) ......................................................... 9, 18

18 U.S.C. § 2334(e)(5) ............................................................. 8

Taylor Force Act, Pub. L. No. 115-141, div. S, tit. X,
    § 1002(1), 132 Stat. 348, 1143 (2018)
    (codified at 22 U.S.C. § 2378c-1 note) ...............................18

Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521-24
    (adding 18 U.S.C. § 2331, 2333-38) (ATA) ...........................5

22 U.S.C. § 5201(b) ................................................................. 3

22 U.S.C. § 5202 ............................................................. 4, 5, 7

28 U.S.C. § 1291 ..................................................................... 2

28 U.S.C. § 1331 ..................................................................... 2

**Regulation:**

Statement on Signing the Foreign Relations Authorization Act,
    Fiscal Years 1988 and 1989,
    2 Pub. Papers 1541 (Dec. 22, 1987) ..................................... 4

**Legislative Materials:**

165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) ..............................17

H.R. Rep. No. 102-1040 (1992) ...................................... 5, 16

H.R. Rep. No. 115-858 (2018)....................................... 16, 17

**Other Authority:**

U.S. Dep't of Justice, Office of Legal Counsel, *Application of the
    Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*,
    2022 WL 16859386 (Oct. 28, 2022) ..................................... 4

**STATEMENT OF RELATED APPEALS
PURSUANT TO CIRCUIT RULE 28.2(C)(3)**

Appeal Nos. 23-1286 and 23-1335 arise from the same district court order and judgment and have been consolidated for procedural purposes.

The issue involved in these appeals is also before the Second Circuit in *Fuld v. Palestine Liberation Organization*, No. 22-76 (2d Cir.) (rehearing petition filed Nov. 22, 2023); *Waldman v. Palestine Liberation Organization*, No. 22-496 (2d Cir.) (rehearing petition filed Nov. 22, 2023); and *Shatsky v. Palestine Liberation Organization*, Nos. 22-791, 22-1138 (2d Cir.) (in abeyance pending conclusion of *Fuld* and *Sokolow*).

**GLOSSARY**

| | |
|---|---|
| ATA | Anti-Terrorism Act of 1992 |
| ATCA | Anti-Terrorism Clarification Act of 2018 |
| PA | Palestinian Authority |
| PLO | Palestine Liberation Organization |
| PSJVTA | Promoting Security and Justice for Victims of Terrorist Act of 2019 |

**INTRODUCTION**

In the Anti-Terrorism Act of 1992 (ATA), Congress provided a civil damages remedy for United States nationals harmed by acts of international terrorism. In order to make the ATA's civil remedies provision function effectively, Congress enacted the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA). The PSJVTA provides that if the Palestinian Authority (PA), the Palestine Liberation Organization (PLO), or their successors or affiliates, engage in certain specified conduct after a specified date, that conduct will be deemed to be consent by those entities to personal jurisdiction in U.S. courts for civil actions under the ATA.

The district court in this case erroneously held the PSJVTA's jurisdictional provisions are inconsistent with Fifth Amendment due process. The Supreme Court has long recognized that consent, whether express or implied, is a valid basis for personal jurisdiction, and that "consent may be manifested in various ways by word or deed." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality opinion). In the PSJVTA, Congress gave clear notice to the PA and PLO as to what conduct will be deemed consent to jurisdiction for a particular type of claim—civil claims under the ATA—and a reasonable period of time to structure their conduct accordingly. The actions that Congress chose in the PSJVTA to deem as consent to jurisdiction have a fair and reasonable connection to the United States as a forum and the ATA cause of action. And Congress has particular authority to enact such a statute with respect to the PA and PLO, *sui generis* non-sovereign foreign entities that exercise

governmental authority and that have a unique relationship with the United States government that has long been predicated on conditions intended to encourage those entities to renounce terrorism and commit to peace in the Middle East. The district court's determination that the PSJVTA's deemed-consent provisions are inconsistent with the Due Process Clause of the Fifth Amendment should be reversed.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. App. Vol. 1 at 25.[1] The district court granted defendants' motion to dismiss and entered final judgment in favor of defendants on August 23, 2023. App. Vol. 4 at 980. Plaintiffs filed a timely notice of appeal on September 13, 2023. App. Vol. 4 at 983. The United States, which intervened in district court, filed a timely notice of appeal on October 20, 2023. App. Vol. 4 at 1003. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the provisions of the PSJVTA stating that certain activities by the PA and PLO will be deemed consent to a district court's exercise of personal jurisdiction over those defendants in civil actions under the ATA comport with the Due Process Clause of the Fifth Amendment.

---

[1] Citations to the appendix refer to the Consolidated Joint Appendix filed by plaintiffs.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.      Background

### 1.  The PA and PLO

The PLO is recognized by the United Nations as the representative of the Palestinian people, and the United States has engaged with it on that basis since the time of the Oslo Accords between Israel and the PLO.  The PA was created under the Oslo Accords to exercise interim governance authority for the Palestinian people in Gaza and the West Bank.  The United States does not recognize either the PA or the PLO as the government of a sovereign State.  As a matter of historical practice, Congress and the Executive Branch have worked together closely to determine the United States' policies with respect to those entities.[2]

Prior to the Oslo Accords, in 1987, Congress "determine[d] that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States."  22 U.S.C. § 5201(b).  Congress thus made it unlawful for the PLO or

---

[2] The United States currently assists training of PA security forces, a key partner in efforts to stabilize the West Bank.  Anticipating an end to the current conflict between Hamas and Israel, the United States has expressed the view that the future of Gaza must include Palestinian-led governance and Gaza unified with the West Bank under the PA.

"its constituent groups" to "establish or maintain an office, headquarters, premises, or other facilities or establishments" within the United States or to "expend funds from the PLO" for the purpose of furthering the interests of the PLO or its constituent groups. *Id.* § 5202; *see also* Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7, 120 Stat. 3318, 3324 (codified as amended at 22 U.S.C. § 2378b note) (prohibition of PA facilities in the United States under certain circumstances).

The Executive Branch has constitutional authority to decline to enforce this prohibition in certain circumstances. In his statement upon signing the prohibition into law, President Reagan emphasized the President's constitutional prerogative to determine the United States' diplomatic relationship, if any, with the PLO, and stated the prohibition presented no actual conflict so long as he did not intend to establish diplomatic relations with the PLO. *See* Statement on Signing the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989, 2 Pub. Papers 1541, 1542 (Dec. 22, 1987); *see also* U.S. Dep't of Justice, Office of Legal Counsel, *Application of the Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*, 2022 WL 16859386, at *6 (Oct. 28, 2022) (explaining that the prohibition "may not constitutionally be applied in a manner that effectively prevents" PLO representatives invited to Washington, DC "from making a reasonable expenditure of PLO funds on activities that are necessary incidents of such diplomatic engagements with representatives from the Executive Branch").

Subsequent to the Oslo Accords, Congress has regularly authorized the President to waive the statutory prohibition under certain conditions. *See, e.g.*, Middle East Peace Facilitation Act of 1993, Pub. L. No. 103-125, § 3(b)(2), (d)(2), 107 Stat. 1309, 1310 (authorizing temporary waiver if the President certifies that "it is in the national interest of the United States" and "the Palestine Liberation Organization continues to abide by" its Oslo Accords commitments); Department of State, Foreign Operations, and Related Programs Appropriations Act, 2023, Pub. L. No. 117-328, div. K, tit. VII, § 7041(l)(3)(B)(i), 136 Stat. 4459, 5049 (authorizing waiver if President determines the Palestinians have not obtained the same standing as member states in the United Nations or its specialized agencies and have not "initiated or actively supported an [International Criminal Court] investigation against Israeli nationals for alleged crimes against Palestinians"). Such waivers were routinely made between 1994 and 2017. No such waiver of 22 U.S.C. § 5202 is currently in effect.

## 2. The ATA and PSJVTA

**a.** In the ATA of 1992, in order "to develop a comprehensive legal response to international terrorism," Congress created a civil damages remedy for United States nationals harmed by an act of international terrorism committed by a foreign terrorist organization. H.R. Rep. No. 102-1040, at 5 (1992) (1992 House Report); *see* Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521-24 (adding 18 U.S.C. § 2331, 2333-38) (ATA). The ATA allows a United States national to sue "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the

person who committed such an act of international terrorism." 18 U.S.C.

§ 2333(d)(2). A civil action under the ATA may be brought in federal district court

"for any district where any plaintiff resides or where any defendant resides or is

served, or has an agent." *Id.* § 2334(a).

**b.** In the years following the ATA's enactment, courts exercised general

personal jurisdiction over the PA and PLO in civil ATA cases. *E.g.*, *Estate of Klieman v.*

*PA*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006). In 2014, however, the Supreme Court

clarified that general personal jurisdiction is appropriate under the Due Process Clause

of the Fourteenth Amendment only when the defendant is "essentially at home in the

forum." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quotation marks omitted).

Courts then applied the *Daimler* standard to pending ATA cases and concluded that

the PA and PLO were not "at home" in the United States and thus not subject to

general jurisdiction. *See, e.g.*, *Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016); *Estate*

*of Klieman v. P.A.*, 82 F. Supp. 3d 237, 246 (D.D.C. 2015). Those courts, on the facts

presented in those cases, also declined to exercise specific personal jurisdiction over

the PA and PLO. *See, e.g.*, *Waldman*, 835 F.3d at 337; *Estate of Klieman*, 82 F. Supp. 3d

at 248-49.

Congress responded by enacting the Anti-Terrorism Clarification Act of 2018

(ATCA), which provided that "for purposes of any civil action" under the ATA, "a

defendant shall be deemed to have consented to personal jurisdiction in such civil

action if" the defendant, after a specified date following the ATCA's enactment, either

6

accepts certain forms of foreign assistance or maintains an office within the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202—a provision that, as discussed above, otherwise prohibits the PLO from maintaining an office in the United States.  *See* ATCA, Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (2018).

After the ATCA's enactment, the PA informed the Secretary of State that it was declining to accept the forms of foreign assistance listed in the ATCA.  (The PLO does not receive U.S. foreign assistance.)  Since the ATCA's enactment, the PLO has not operated any office in the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202.  The PLO continues to occupy its United Nations Observer Mission in New York, but that office does not require any waiver or suspension of 22 U.S.C. § 5202.  *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 46 (2d Cir. 1991).

Courts in pending ATA cases thus concluded that the ATCA's factual predicates were not satisfied and continued to hold that U.S. courts could not exercise personal jurisdiction over the PA and PLO.  *Estate of Klieman ex rel. Kesner v. PA*, 923 F.3d 1115, 1128 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020); *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*, 140 S. Ct. 2714 (2020).  The plaintiffs in those cases filed petitions for certiorari in the Supreme Court; while those petitions were pending, Congress enacted the PSJVTA, the statute at issue here.

As relevant here, the PSJVTA supersedes the personal jurisdiction provisions in the ATCA.  *See* PSJVTA, Pub. L. No. 116-94, div. J, tit. IX, § 903, 133 Stat. 2534,

7

3082-85 (2019) (codified at 18 U.S.C. § 2334(e)).[3]  The PSJVTA defines "defendant" to mean only "the Palestinian Authority," "the Palestine Liberation Organization," and their affiliates or successors.  18 U.S.C. § 2334(e)(5).  And it revises the factual predicates for those defendants' conduct that will be deemed consent to personal jurisdiction in civil ATA actions.

First, the PSJVTA focuses on payments to designees of terrorists in Israeli prisons and to the families of persons killed while committing an act of terrorism that injured or killed a United States national.  The PSJVTA specifies that a defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases if, more than 120 days after the PSJVTA's enactment (*i.e.*, April 18, 2020), the defendant makes any payment directly or indirectly—

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or

> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual.

18 U.S.C. § 2334(e)(1)(A).

---

[3] The PSJVTA also includes a number of provisions that are not at issue here, aimed at facilitating the resolution of ATA claims.  *See* Pub. L. No. 116-94, § 903(b), 133 Stat. at 3082.  The portion of the PSJVTA challenged in this action is limited to the jurisdictional amendments contained in § 903(c), which, for ease of reference, this brief refers to as the PSJVTA.

Second, the PSJVTA provides that a defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases if, more than 15 days after the PSJVTA's enactment (*i.e.*, January 4, 2020), the defendant maintains, establishes, or procures any office in the United States or "conducts any activity while physically present in the United States on behalf of" the PLO or PA, with certain limited exceptions related to United Nations business; activities involving U.S. government officials; or certain training activities, legal representation, or ancillary activities. 18 U.S.C. § 2334(e)(1)(B), (e)(3).

## B.    Prior Proceedings

Plaintiffs include family members and personal representatives of the estates of United States citizens killed in a 2014 terrorist attack in a synagogue in Israel. App. Vol. 1 at 50-60. Plaintiffs brought suit under the ATA against the PA and PLO for their alleged role in the attack. *See* App. Vol. 1 at 25. Plaintiffs asserted that the district court could exercise specific personal jurisdiction over the PA and PLO and that the court had jurisdiction pursuant to the PSJVTA's jurisdictional provisions. App. Vol. 1 at 28-32. The PA and PLO moved to dismiss; in opposing the PSJVTA as a basis for personal jurisdiction, defendants did not dispute that they made "at least one" payment described in the PSJVTA's payments prong. App. Vol. 1 at 92-93 n.4 ("[F]or purposes of this Motion, Defendants do not contest they have made at least one such payment after the PSJVTA's effective date."). Defendants argued, however, that the PSJVTA's jurisdictional provisions violate the Due Process Clause of the

9

Fifth Amendment.  The United States intervened in district court to defend the PSJVTA's constitutionality.  *See* App. Vol. 4 at 875-93.

The district court granted defendants' motion to dismiss on August 23, 2023. The district court held that the facts alleged in the complaint did not establish specific personal jurisdiction over the PA and PLO.  App. Vol. 4 at 977.  The court further held that it could not exercise personal jurisdiction under the PSJVTA because that statute's jurisdictional provisions violate Fifth Amendment due process.  The court reasoned that "Congress cannot simply legislate that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court."  App. Vol. 4 at 971 (quotation marks omitted).  According to the district court, Congress in the PSJVTA had simply taken "conduct in which the PLO and PA had previously engaged," which had previously been held insufficient to support general or specific personal jurisdiction over the PA and PLO, "and declared that such conduct 'shall be deemed' to be consent," which the court found inconsistent with due process.  App. Vol. 4 at 974 (quotation marks omitted).

## SUMMARY OF ARGUMENT

The PSJVTA is consistent with Fifth Amendment requirements of due process. A defendant's consent has long been recognized as a basis for a court's exercise of personal jurisdiction, "and consent may be manifested in various ways by word or deed."  *See Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 138 (2023) (plurality opinion).

Congress in the PSJVTA set out expressly what actions of the PA and PLO will be deemed consent to personal jurisdiction in U.S. courts for a limited class of claims—civil actions under the ATA—and gave those entities a reasonable period of time to structure their conduct accordingly. The PSJVTA thus provides defendants fair notice and the opportunity to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," consistent with the Due Process Clause. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quotation marks omitted).

The foreign-affairs context in which the PSJVTA was enacted underscores its constitutionality. Congress enacted the PSJVTA so that the ATA's civil-remedies provision could function effectively to halt and deter international terrorism. The actions that Congress considered to be consent to personal jurisdiction under the PSJVTA are consistent with this legislative purpose and have a fair and reasonable connection to the ATA cause of action and the United States as a forum. The United States views the PA and PLO as *sui generis* foreign entities and does not recognize those entities as a government of a sovereign and independent state. The political branches have long imposed restrictions on the PA's and PLO's ability to operate in the United States based on terrorism-related concerns. In this unique context, it is fair and reasonable for Congress to specify that to the extent the PA and PLO continue to perform certain activity within the United States or continue to make certain payments to designees and family members of persons who committed acts of

11

terrorism that killed or injured U.S. nationals, those actions will be deemed consent to jurisdiction in U.S. courts for this particular class of terrorism-related claims. That the PSJVTA must be assessed under the due process standards of the Fifth Amendment, rather than the Fourteenth Amendment, further confirms its constitutionality.

In holding the PSJVTA unconstitutional, the district court reasoned that Congress cannot simply "deem" conduct that is unrelated to the forum or the lawsuit to be consent to jurisdiction. But that is not what Congress did in the PSJVTA, and the district court's contrary reasoning ignores the PSJVTA's limitations and the unique foreign-affairs context in which it was enacted. For substantially similar reasons, this Court should not follow *Fuld v. PLO*, 82 F.4th 74 (2d Cir. 2023) (rehearing petition filed Nov. 22, 2023), in which a panel of the Second Circuit determined that the PSJVTA's deemed-consent provisions violate the Due Process Clause. Like the district court here, the Second Circuit panel took far too narrow a view of the circumstances in which consent may be implied from a defendant's conduct.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's legal determination that it lacks personal jurisdiction over defendants." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

# ARGUMENT

## THE PSJVTA'S JURIDICTIONAL PROVISIONS COMPORT WITH FIFTH AMENDMENT DUE PROCESS

### A.    Personal Jurisdiction Under the PSJVTA Is Fair and Reasonable

**1.**  The United States assumes for purposes of defending the PSJVTA's constitutionality that the PA and PLO have Fifth Amendment due process rights. The Supreme Court has long recognized, however, that because "personal jurisdiction is a *personal* defense," it "may be waived" by a defendant. *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 144 (2023) (plurality opinion).  The Supreme Court has also long recognized that a defendant's "express or implied consent" may "ground personal jurisdiction— and consent may be manifested in various ways by word or deed." *Id.* at 138 (plurality opinion) (quotation marks omitted); *see also Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (recognizing there are a "variety of legal arrangements" through which a defendant may consent to personal jurisdiction). Where a defendant's consent is "knowing and voluntary," *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015), and the circumstances are not "unreasonable and unjust," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quotation marks omitted), a court's exercise of personal jurisdiction comports with due process requirements.

Consistent with these principles, the PSJVTA sets out a reasonable "legal arrangement[]," *Bauxites*, 456 U.S. at 703, through which the PA and PLO may,

knowingly and voluntarily, constructively consent to personal jurisdiction in U.S. courts for a particular type of claim: civil claims under the ATA. *See* 18 U.S.C. § 2334(e)(1); *id.* § 2333(a). Specifically, the PSJVTA provides that the PA and PLO will be "deemed to have consented" to personal jurisdiction in U.S. courts for civil ATA claims if: (1) more than 15 days after the PSJVTA's enactment, the PA and PLO maintain an office in the United States or conduct certain activity "while physically present in the United States"; or, (2) more than 120 days after the PSJVTA's enactment, the PA and PLO make any payment to a designee or family member of an individual imprisoned for or killed while committing an act of terrorism that injured or killed a U.S. national, if the payment is made by reason of such individual's imprisonment or death for that act. *See id.* § 2334(e).

The PSJVTA thus expressly describes what actions of the PA and PLO will cause such defendants to be "deemed to have consented to personal jurisdiction" in U.S. courts; it specifies the particular cause of action for which such consent will apply—civil claims under the ATA; and it provides an implementation period to give defendants fair warning that the particular conduct will subject them to personal jurisdiction and a reasonable period of time to structure their conduct accordingly. *See* 18 U.S.C. § 2334(e)(1). Since the PSJVTA's enactment, therefore, the PA and PLO have "know[n]" what actions will be deemed consent to personal jurisdiction for civil ATA claims, and they have had the opportunity to "voluntarily" choose whether or not to continue such actions and thereby consent to jurisdiction for that particular

type of claim. *See Wellness Int'l Network*, 575 U.S. at 685. Defendants have thus had the opportunity to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," consistent with due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Burger King*, 471 U.S. at 472).

The PSJVTA therefore operates similarly to other legal arrangements through which a defendant may validly consent to personal jurisdiction. Just last term, in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, the Supreme Court upheld as consistent with due process a Pennsylvania law providing that an out-of-state company's registration in the state as a foreign corporation made the company amenable to suit in Pennsylvania courts "on any claim." *Id.* at 135. The Court explained that the Pennsylvania law was "explicit" that registration in the state would permit state courts "to exercise general personal jurisdiction" over an out-of-state corporation, and that the defendant had "understood" that it would be "amenable to suit on any claim" as a result of its registration. *Id.* at 134-35 (quotation marks omitted). It was thus "hardly unfair" for Pennsylvania's state courts to exercise personal jurisdiction over the out-of-state defendant that had registered pursuant to the statute's terms. *See id.* at 146 n.11 (noting grounds on which a majority of the Court "agree[d]").

The PSJVTA similarly gives clear notice as to what conduct will be deemed consent to jurisdiction in the courts of the United States if taken after a specified date.

15

Indeed, the PSJVTA's jurisdictional provisions are much narrower than the business-registration statute upheld in *Mallory*. While Pennsylvania's law applied to any out-of-state business registering in the state and made such businesses amenable to suit in Pennsylvania state court "on *any* claim," *see Mallory*, 600 U.S. at 135 (emphasis added), the PSJVTA is limited to a particular type of claim—civil claims under the ATA—that has a fair and reasonable connection to the activity Congress determined would be consent to jurisdiction. *See infra* pp. 16-19. Moreover, the PSJVTA applies only to the PA and PLO: *sui generis* foreign non-sovereign entities that, as discussed further *infra* pp. 17-19, have a unique relationship with the United States government.

**2.** That "Congress passed, and the President signed, [the PSJVTA] in furtherance of their stance on a matter of foreign policy," *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016), further supports the PSJVTA's constitutionality. The political branches' judgments in this context "warrant[] respectful review by courts," *id.*, and this context meaningfully informs the fairness and reasonableness of the PSJVTA's deemed-consent provisions.

Congress enacted the ATA's civil-liability provision "to develop a comprehensive legal response to international terrorism." 1992 House Report 5. Congress found, however, that because courts had held that the PA and PLO were not subject to general personal jurisdiction in the United States, the ATA's goals were not being realized. *See* H.R. Rep. No. 115-858, at 6 (2018). Congress thus determined that it was necessary to enact the PSJVTA's statutory predecessor, the ATCA, in 2018

16

so that the ATA's civil-liability provision could function effectively to "halt, deter, and disrupt international terrorism."  *Id.* at 7-8.  In revising the ATCA's factual predicates in the PSJVTA, Congress acted with the same statutory purpose.  *See, e.g.*, 165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford); *id.* at S7182-83 (statement of Sen. Grassley).

The actions of the PA and PLO Congress selected in the PSJVTA to "deem[]" as consent by those entities to personal jurisdiction are consistent with this legislative purpose and have a fair and reasonable connection to the ATA cause of action and the United States as a forum.  The PA and PLO are *sui generis* foreign non-sovereign entities.  Their ability to operate within the United States and engage in a range of activities is dependent on the coordinated judgments of the political branches, which have long imposed restrictions on the PA's and PLO's activities and operations in the United States based on the same concerns that motivated enactment of the PSJVTA—namely, concerns about their historical support for acts of terrorism.  *See supra* pp. 3-5 (discussing constitutional and statutory conditions under which the Executive Branch may waive or decline to enforce prohibitions to permit the PLO to operate in the United States); *see also, e.g.*, Middle East Peace Facilitation Act of 1993, § 3(b)(2)(A), (d)(2), 107 Stat. at 1310 (authorizing temporary waiver of prohibition if President certifies "it is in the national interest of the United States" and the PLO is honoring its Oslo Accords commitments); Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7, 120 Stat. at 3324 (prohibiting the establishment or

17

maintenance in the United States of any office of the PA during any period for which it is effectively controlled by or unduly influenced by Hamas in the absence of a statutory waiver).

In this context, where Congress and the Executive Branch have long conditioned the PA's and PLO's ability to engage in a range of activities in the United States on the judgments of the political branches concerning those entities' renouncement of terrorism and commitment to peace in the Middle East, it does not offend due process for Congress to specify in the PSJVTA that to the extent the PA and PLO continue to perform certain activities in the United States after a specified date, the performance of those activities will be deemed consent to personal jurisdiction in U.S. courts for civil ATA claims brought to redress injuries to U.S. nationals caused by terrorism. *See* 18 U.S.C. § 2334(e)(1)(B), (e)(3).

Similarly, in this unique context, it was fair and reasonable for Congress to specify that the PA's and PLO's payments to designees and family members of persons imprisoned for or killed while committing acts of terrorism that kill or injure U.S. nationals will be deemed consent to personal jurisdiction in U.S. courts for civil anti-terrorism claims. *See* 18 U.S.C. § 2334(e)(1)(A). Indeed, in other legislation, Congress has found that such payments by the PA and PLO incentivize the very type of terrorism Congress sought to combat in creating the ATA cause of action. *See* Taylor Force Act, Pub. L. No. 115-141, div. S, tit. X, § 1002(1), 132 Stat. 348, 1143 (2018) (codified at 22 U.S.C. § 2378c-1 note) (finding the PA's "practice of paying

18

salaries to terrorists serving in Israeli prisons, as well as to the families of deceased terrorists, is an incentive to commit acts of terror"). Congress's tailored effort in the PSJVTA to ensure that the ATA cause of action is enforceable in United States courts does not violate the Due Process Clause.

**3.** Finally, the PSJVTA must be assessed under the due process standards of the Fifth Amendment, rather than the Fourteenth Amendment, *see Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (2000), further confirming its constitutionality. Although the PSJVTA would be constitutional even under the Fourteenth Amendment's limitations, the Fifth Amendment, properly understood, permits federal courts to exercise personal jurisdiction over foreign defendants in ways that have no analogue for a state court exercising personal jurisdiction under the Fourteenth Amendment.

The Supreme Court has "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 269 (2017). Importantly, the limitations recognized in the Fourteenth Amendment context reflect not only concerns about fairness to individual defendants, but also concerns about federalism and the limited and mutually exclusive sovereignty of the several states—concerns that, "at times," may "be decisive." *Id.* at 263; *see also, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-94 (1980)

19

("The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States.").

Those same concerns do not apply to the United States, which has authority over foreign commerce and foreign affairs and, unlike a state, power "to enforce its laws beyond [its] territorial boundaries." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). Moreover, the United States' "powers of external sovereignty" and its ability to conduct relationships with foreign actors are grounded in the United States' status in international law as an independent state. *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 318 (1936); *see Burnet v. Brooks*, 288 U.S. 378, 396, 403-06 (1933).

Thus, while this Court has recognized that "the Fourteenth Amendment's fairness and reasonableness requirements" are not to be "be discarded completely when jurisdiction is asserted under a federal statute," *Peay*, 205 F.3d at 1212 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997)), the United States' position as a sovereign in the international community and its special competence in matters of foreign affairs and international commerce are, at a minimum, relevant to determining whether a federal court's exercise of jurisdiction pursuant to congressional authorization is "fair and reasonable" to a foreign defendant, *see id.*; *see also Republic of Panama*, 119 F.3d at 945-46 (recognizing, in context of minimum contacts analysis, that the "factors used in determining fairness under the Fourteenth Amendment" are not to be applied "mechanically" to the Fifth Amendment). And those considerations should inform the analysis of what conduct

20

is "fair and reasonable" for Congress to deem consent to jurisdiction in U.S. courts for a particular type of claim. That is particularly so with respect to *sui generis* foreign entities such as the PA and PLO that exercise governmental authority but have not been recognized as the government of a sovereign state by the Executive.

As discussed above, Congress has enacted numerous laws, including the ATA, to combat acts of international terrorism outside the United States that affect U.S. persons and interests, and Congress has sought to make that legislation effective by putting the PA and PLO on reasonable notice that engaging in certain related activities will subject them to the adjudicative authority of federal courts for purposes of those specific claims. Even if a state could not enact similar legislation consistent with structural limitations on state authority and the Fourteenth Amendment, the Fifth Amendment does not prohibit the United States from determining that certain actions of the PA and PLO properly subject them to personal jurisdiction in U.S. courts in these limited circumstances.

**B.      The District Court's Contrary Reasoning, and the Second Circuit's Recent Decision in *Fuld v. PLO*, Are Unpersuasive**

**1.** In concluding the PSJVTA is inconsistent with due process, the district court primarily reasoned "that Congress cannot simply legislate that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court." App. Vol. 4 at 971 (quotation marks omitted). For the reasons

21

explained above, however, Congress in the PSJVTA did not "deem" the PA and PLO to have consented to personal jurisdiction based on conduct entirely unrelated to the forum or to the lawsuit.  To the contrary, the activities that Congress identified in the PSJVTA to constitute consent to personal jurisdiction have a fair and reasonable connection to the only cause of action to which the PSJVTA applies—civil ATA actions concerning terrorist attacks killing or injuring U.S. citizens—and to the United States as a forum in light of the United States' unique relationship with the PA and PLO as *sui generis* foreign non-sovereign entities whose ability to operate in the United States has long been linked to anti-terrorism-related objectives.  *See supra* pp. 16-19.  The district court's contrary analysis fails to give appropriate weight to the PSJVTA's limitations and the foreign-affairs context in which it was enacted.

The district court further reasoned that the PSJVTA is inconsistent with due process because the activity Congress identified to "deem[]" as consent is activity that courts have held insufficient to establish general or specific jurisdiction over the PA and PLO.  App. Vol. 4 at 974 (quotation marks omitted).  But consent—whether explicit or implied—is a separate and independent basis for personal jurisdiction that can apply even if the requirements for general or specific jurisdiction have not been established.  *See Mallory*, 600 U.S. at 138; *id.* at 148 (Jackson, J., concurring); *id.* at 153 (Alito, J., concurring in part and concurring in the judgment); *see also, e.g.*, *Burger King*, 471 U.S. at 472 (recognizing a forum's ability to exercise jurisdiction by consent is

separate and apart from the forum's ability to exercise general or "specific jurisdiction over an out-of-state defendant who has not consented to suit there").

The district court similarly erred in reasoning that the PSJVTA is inconsistent with due process because the conduct Congress chose to "deem" as consent is conduct that the PA and PLO "had previously engaged" in prior to the statute's enactment.  App. Vol. 4 at 974.  Under the PSJVTA, the identified conduct will be "deemed" consent to personal jurisdiction only if the PA and PLO undertake those actions *after* specified periods of time following the statute's enactment.  *See* 18 U.S.C. § 2334(e).  Thus, as explained above, the PSJVTA gives the PA and PLO "fair warning" of the activity that will subject them to personal jurisdiction and a reasonable period of time in which to choose whether or not to continue those activities knowing the jurisdictional consequences, consistent with due process.  *See Burger King*, 471 U.S. at 472.

**2.**  After the district court issued its decision in this case, a panel of the Second Circuit similarly held that the PSJVTA does not comport with due process requirements.  *See Fuld v. PLO*, 82 F.4th 74, 88 (2d Cir. 2023) (rehearing petition filed Nov. 22, 2023); *Waldman v. PLO*, 82 F.4th 64, 73 (2d Cir. 2023) (incorporating "the entirety of *Fuld*'s analysis" in case presenting the same issue) (rehearing petition filed Nov. 22, 2023).  In reaching that conclusion, the Second Circuit stated that "a variety of legal arrangements" may represent a defendant's consent to personal jurisdiction and that a defendant's consent may be express or implied.  *See Fuld*, 82 F.4th at 88

23

(quotation marks omitted).  The Second Circuit interpreted the case law, however, to essentially limit the ways in which a defendant may impliedly consent to personal jurisdiction to just two: a defendant's "litigation-related conduct" or due to a defendant's "reciprocal bargain[]" to accept a "government benefit" in exchange for submission to the forum.  *Id.* at 88, 90-94.  The Second Circuit concluded that neither circumstance was present and therefore consent could not fairly be implied under the PSJVTA.  *See id.* at 97.

The Second Circuit took too narrow an understanding of the circumstances under which consent to jurisdiction can be inferred and this Court should not follow its reasoning.  Nothing in the Fifth Amendment's text or history limits implied consent to litigation-related conduct or a "reciprocal bargain" for a government benefit, *Fuld*, 82 F.4th at 90, and there is no basis to conclude that a court's exercise of jurisdiction is fair and reasonable only in those limited circumstances.  Thus, in upholding Pennsylvania's business-registration statute in *Mallory*, the Supreme Court did not limit its reasoning to a reciprocal exchange of benefits between the defendant and the forum (as the Second Circuit erroneously suggested, *Fuld*, 82 F.4th at 90, 96), but rather the Court emphasized the "explicit" language of the statute and that the defendant had "understood" that by registering in the jurisdiction it would be "amenable to suit" there.  *See* 600 U.S. at 135-36 & n.5; *id.* at 150-62 (Alito, J., concurring in part and concurring in the judgment) (recognizing the company had taken "steps that, under the express terms" of state law, "were understood as consent

24

to the State's jurisdiction"); *id.* at 148-49 (Jackson, J., concurring) (recognizing "the jurisdictional consequences of registration were clear" and that the company "made the choice to register").

For the reasons explained above, where Congress has provided fair notice to a limited, *sui generis* class of defendants of what conduct will be deemed consent for a specific type of claim and a reasonable period of time to determine whether or not to continue that conduct—and where that identified conduct is fairly connected to the subject matter of the litigation and the United States as a forum—it is fair and reasonable for federal courts to exercise jurisdiction over defendants on that specific type of claim, even if there is not a reciprocal exchange of benefits in return.

Moreover, and in any event, at least with respect to the PSJVTA's prong specifying that certain conduct of the PA and PLO within the United States will be deemed consent to jurisdiction, 18 U.S.C. § 2334(e)(1)(B), the United States *has* conferred a benefit: to the extent the PA and PLO are performing activities in the United States that satisfy that prong, they are receiving the benefit of being permitted to do so because the United States could limit or prohibit them from engaging in those activities in the United States—and, in some cases, has done so. *See supra* pp. 3-5. The PSJVTA's activities prong thus serves the same function as registration in *Mallory* in subjecting defendants to suit. It does "not offend traditional notions of fair play and substantial justice" for Congress to specify that the performance of such activities by the PA and PLO within the United States will be considered consent to

25

personal jurisdiction in U.S. courts for civil ATA claims. *See Bauxites*, 456 U.S. at 702-03 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

SHARON SWINGLE
  *s/ Courtney L. Dixon*
COURTNEY L. DIXON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7246*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-8189*
  *courtney.l.dixon@usdoj.gov*

January 2023

## REQUEST FOR ORAL ARGUMENT

The United States believes that oral argument would be of assistance to this Court, and respectfully requests oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,515 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Courtney L. Dixon*
Courtney L. Dixon

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

*s/ Courtney L. Dixon*

Courtney L. Dixon

**STATUTORY ADDENDUM**

## TABLE OF CONTENTS

18 U.S.C. § 2333 ...................................................................................................A1

18 U.S.C. § 2334 ...................................................................................................A2

**18 U.S.C. § 2333**

**§ 2333. Civil remedies**

**(a) Action and jurisdiction. --**Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

**18 U.S.C. § 2334**

**§ 2334.  Jurisdiction and venue**

**(a) General venue.--**Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

**(b) Special maritime or territorial jurisdiction.--**If the actions giving rise to the claim occurred within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of this title, then any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district in which any plaintiff resides or the defendant resides, is served, or has an agent.

**(c) Service on witnesses.--**A witness in a civil action brought under section 2333 of this title may be served in any other district where the defendant resides, is found, or has an agent.

**(d) Convenience of the forum.--**The district court shall not dismiss any action brought under section 2333 of this title on the grounds of the inconvenience or inappropriateness of the forum chosen, unless--

    **(1)** the action may be maintained in a foreign court that has jurisdiction over the subject matter and over all the defendants;

    **(2)** that foreign court is significantly more convenient and appropriate; and

    **(3)** that foreign court offers a remedy which is substantially the same as the one available in the courts of the United States.

**(e) Consent of certain parties to personal jurisdiction.**--

    **(1) In general.**--Except as provided in paragraph (2), for purposes of any civil action under section 2333 of this title, a defendant shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed, the defendant--

        **(A)** after the date that is 120 days after the date of the enactment of the Promoting Security and Justice for Victims of Terrorism Act of 2019, makes any payment, directly or indirectly--

            **(i)** to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United

States, if such payment is made by reason of such imprisonment; or

**(ii)** to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual; or

**(B)** after 15 days after the date of enactment of the Promoting Security and Justice for Victims of Terrorism Act of 2019--

**(i)** continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States;

**(ii)** establishes or procures any office, headquarters, premises, or other facilities or establishments in the United States; or

**(iii)** conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority.

**(2) Applicability.**--Paragraph (1) shall not apply to any defendant who ceases to engage in the conduct described in paragraphs (1)(A) and (1)(B) for 5 consecutive calendar years. Except with respect to payments described in paragraph (1)(A), no court may consider the receipt of any assistance by a nongovernmental organization, whether direct or indirect, as a basis for consent to jurisdiction by a defendant.

**(3) Exception for certain activities and locations.**--In determining whether a defendant shall be deemed to have consented to personal jurisdiction under paragraph (1)(B), no court may consider--

**(A)** any office, headquarters, premises, or other facility or establishment used exclusively for the purpose of conducting official business of the United Nations;

**(B)** any activity undertaken exclusively for the purpose of conducting official business of the United Nations;

**(C)** any activity involving officials of the United States that the Secretary of State determines is in the national interest of the United States if the Secretary reports to the appropriate congressional committees annually on the use of the authority under this subparagraph;

**(D)** any activity undertaken exclusively for the purpose of meetings with officials of the United States or other foreign governments, or participation in training and related activities funded or arranged by the United States Government;

**(E)** any activity related to legal representation--

**(i)** for matters related to activities described in this paragraph;

**(ii)** for the purpose of adjudicating or resolving claims filed in courts of the United States; or

**(iii)** to comply with this subsection; or

**(F)** any personal or official activities conducted ancillary to activities listed under this paragraph.

**(4) Rule of construction.**--Notwithstanding any other law (including any treaty), any office, headquarters, premises, or other facility or establishment within the territory of the United States that is not specifically exempted by paragraph (3)(A) shall be considered to be in the United States for purposes of paragraph (1)(B).

**(5) Defined term.**--In this subsection, the term "defendant" means--

**(A)** the Palestinian Authority;

**(B)** the Palestine Liberation Organization;

**(C)** any organization or other entity that is a successor to or affiliated with the Palestinian Authority or the Palestine Liberation Organization; or

**(D)** any organization or other entity that--

**(i)** is identified in subparagraph (A), (B), or (C); and

**(ii)** self identifies as, holds itself out to be, or carries out conduct in the name of, the "State of Palestine" or "Palestine" in connection with official business of the United Nations.

**ATTACHMENT REQUIRED BY CIRCUIT RULE 28.2(A)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-03043-GPG-STV

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint

under Rule 12(b)(2) and Rule 12(b)(6) (D. 58).  The Court GRANTS the motion for the following

reasons.

## I. FACTS

This civil action arises from a terrorist attack in a synagogue in the Israeli Har Nof

neighborhood of Jerusalem on November 18, 2014 (D. 50 at 38).[1]  Plaintiffs allege that two

operatives of the Popular Front for the Liberation of Palestine (PFLP), Uday Abu Jamal and

Ghassan Abu Jamal, carried out a terrorist attack and killed several worshippers at the synagogue

(some of whom were also American citizens).  The victims included Rabbi Aryeh Kupinsky, Rabbi

---

[1] The Court draws the operative facts as set forth in Plaintiffs' First Amended Complaint (D. 50).

Moshe Twersky, Rabbi Abraham Goldberg, Rabbi Kalman (Cary) Levine, and Police Sergeant Zidan Saif.  The suspects also seriously injured Dr. Norman Heching and Rabbi Saul Goldstein (*id.* at 38-39).  This civil action is brought by the personal representatives of the estates of U.S. citizens Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky as well as of non-U.S. citizens Zidan Saif and Rabbi Abraham Goldberg (*id.* at 4).

Rather than bringing this civil action against the estate of Uday Abu Jamal and Ghassan Abu Jamal or the PFLP, Plaintiffs are suing the Palestine Liberation Organization (PLO) (claiming that it is a front for the PFLP), the Palestinian Authority (PA), and Riyad Mansour (as representative of the PLO and PA) pursuant to the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA), under 18 U.S.C. §§ 2333, 2334, and the Antiterrorism Act (ATA), under 18 U.S.C. § 2331.  Plaintiffs assert that this Court has original subject matter jurisdiction over Plaintiffs' ATA claims under 18 U.S.C. §§ 2331, 2333, 2334, and 2338 along with 28 U.S.C. § 1331, as well as supplemental subject matter jurisdiction over their Israeli-law claims under 28 U.S.C. § 1367.

Plaintiffs raise six claims:  (1) direct liability for international terrorism under 18 U.S.C. § 2333(a); (2) respondeat superior liability for international terrorism under 18 U.S.C. § 2333(a); (3) aiding and abetting under 18 U.S.C. § 2333(d); (4) conspiracy under 18 U.S.C. § 2333(d); (5) negligence under Israeli law, Civil Wrongs Ordinance (CWO) § 35; and (6) vicarious liability under CWO § 12 (*id.* at 42-54).  Defendants argue, inter alia, that exercising jurisdiction over them would violate due process and that the PSJVTA does not establish valid personal jurisdiction via the Due Process Clause of the Fifth Amendment (D. 58).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), if a court is without personal jurisdiction

over a party, the court cannot render a valid judgment.  Fed. R. Civ. P. 12; *see J.L. v. Best W. Int'l,*

*Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021).  The plaintiff bears the burden of establishing

that the federal court has jurisdiction over the defendant.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415,

1417 (10th Cir. 1988).  To avoid dismissal, the plaintiff must make a prima facie showing of

personal jurisdiction and must point to well-pleaded factual allegations, both in the complaint and

in any supporting affidavits, that would support jurisdiction over each defendant.  *Gould v. Wyse*,

No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023).  When deciding personal

jurisdiction without an evidentiary hearing the court does not need to accept inferences drawn by

plaintiffs if such inferences are unsupported by the facts.  *See Kuenzle v. HTM Sport-Und*

*Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996); *Livnat v. Palestinian Auth.*, 851 F.3d 45,

57 (D.C. Cir. 2017).

Plaintiffs allege that the Court has personal jurisdiction over Defendants under Federal

Rule of Civil Procedure 4(k)(1)(C) and 4(k)(2).[2]  In a civil action based on a federal question, the

---

[2] Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA and general personal jurisdiction over Defendant Mansour (D. 69 at 19-34).  These claims typically arise under the Fourteenth Amendment and the state's long-arm statute, however, these claims may be analyzed under the Fifth Amendment as the standard is the same in civil cases (this issue will be addressed infra).  Ultimately, this Court finds that the PSJVTA's consent provision does not comport with due process.  Thus, to the extent that Plaintiffs would attempt to assert personal jurisdiction under Colorado's long-arm statute, this argument would fail too.  The plaintiff must show (1) the laws of the forum state potentially confer jurisdiction by authorizing service upon the defendant, and (2) the exercise of such jurisdiction comports with the principles of due process.  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citation omitted).  Because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause," the statutory and constitutional analysis is the same.  *Id.*  Thus, the court merely needs to examine whether the exercise of personal jurisdiction comports with due process.  The due process analysis examines whether:  (1) the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court (either by showing general or specific personal jurisdiction) and (2) the exercise of personal jurisdiction in the circumstances presented offends traditional notions of fair play and substantial justice.  *Id.* (quotations and citations omitted).  This Court finds that Defendants do not have any minimum contacts with the state

court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).  Under Rule 4(k)(1)(C), "[s]erving a summons or filing of a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014) (internal quotations and citation omitted).  "While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are [nonetheless] distinct concepts that require separate inquiries." *Id.*  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction . . . provided that due process is satisfied." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).

Rule 4(k)(2) provides for federal long-arm jurisdiction if the plaintiff can show:  (1) the defendant is not subject to the jurisdiction of any state's court of general jurisdiction, and (2) that the exercise of jurisdiction comports with due process, the United States Constitution, and laws. *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 671 (D. Colo. 2019); *see also Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012).  "This Rule serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Archangel Diamond Corp. Liquidating Tr.*, 75 F. Supp. 3d

---

of Colorado and would not expect to be haled into court here, thus the exercise of personal jurisdiction over Defendants would not comport with the Due Process Clause of the Fourteenth Amendment.

at 1360 (internal quotations and citation omitted).  In order to preclude the use of Rule 4(k)(2) under the first prong of the test, courts require the defendant

> to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311.

### III. ANALYSIS

In the instant motion to dismiss, Defendants argue that:  (1) they have not consented to personal jurisdiction under the PSJVTA; (2) the PA and PLO are persons under the Due Process Clause of the Fifth Amendment, and (3) Federal Rule of Civil Procedure 23.2 does not convey personal jurisdiction over them (D. 58, D. 76). Plaintiffs contend that (1) Defendants have submitted to jurisdiction under the PSJVTA by making payments to terrorists or family members after the enactment of the PSJVTA; (2) the PLO and PA are not persons under the due process clause; (3) this Court has specific jurisdiction over the PLO and PA; and (4) this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 23.2 (D. 69).  The parties also submitted briefing on the U.S. Supreme Court's decision, *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023), which held that Pennsylvania's consent statute requiring an out-of-state corporation to consent to personal jurisdiction in order to register to do business within the state did not violate the Due Process Clause of the Fourteenth Amendment.  There is no dispute Defendants PLO and PA waived service of process in this action (D. 15) and Defendant Mansour was served at his home address in Florida (D. 55).  The question before the Court is whether the PSJVTA consent

provision for personal jurisdiction in federal courts comports with due process.  The Court finds that it does not.

### A.  PSJVTA

The scope of personal jurisdiction "flows not from Art. III, but from the Due Process Clause."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.").  The Court conveys its condolences to the victims and their families.  While the events described in Plaintiffs' First Amended Complaint are undoubtedly tragic, the Court is mandated to examine whether it can exercise jurisdiction and to ensure that it is within the limits prescribed by the Due Process Clause.[3]

To understand this case, it is necessary to understand the catalyst for the PSJVTA.  In 2016, the Second Circuit vacated a jury verdict against the PLO and PA due to a lack of jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016).   The Second Circuit determined that the PLO and PA were not recognized as sovereign states by the United States and were not corporations; rather, the PA was designated a non-sovereign government and the PLO as a foreign agent (both of which the Second Circuit defined as unincorporated associations)*. Id.* at 332.  Ultimately, the Second Circuit held that the defendants' activities in the United States (e.g., maintaining an office in Washington, D.C., promoting the Palestinian cause in speeches and media

---

[3] It is irrelevant for this Court to distinguish between the Fifth Amendment and Fourteenth Amendment in its analysis in this case because the minimum contacts and fairness analyses are the same under the Fifth Amendment and the Fourteenth Amendment in civil cases.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)); *see also Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1359 (D. Colo. 2014).

appearances, and retaining a lobbying firm) did not render the defendants essentially at home in the United States to such an extent that a federal court would have personal jurisdiction over civil claims regarding terrorist attacks in Israel.  *Id.* at 333; *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotations and citation omitted).  The Second Circuit ultimately ruled that there was no general personal jurisdiction, specific personal jurisdiction, or waiver of personal jurisdiction because the attacks occurred outside of the United States, the attacks in Israel were not expressly aimed at the United States (although Americans did die or suffer injuries), and lobbying activities by the defendants to change American policy were insufficiently related conduct under the ATA. *Waldman*, 835 F.3d at 343–44.

In light of this case and other rulings[4] that victims of terrorist attacks in Israel or family members of said victims could not bring a civil action against the PLO or PA under the ATA in federal courts, Congress enacted the PSJVTA.  18 U.S.C. § 2333; *see also* Further Consolidated Appropriations Act of 2020, Pub. L. No. 116-94, 133 Stat. 2534; *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 578 (S.D.N.Y. 2022).  The PSJVTA provides that any national of the United States who is injured "in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," may sue the PLO or PA "to recover threefold

---

[4] *See, e.g., Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54 (D.C. Cir. 2017).

the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).

Specifically, the PSJVTA declares that the PLO and PA "shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed" if either (1) after 120 days post-enactment of the PSJVTA, the defendant makes a direct or indirect payment to a party who has committed an act of terrorism or to any family member of an individual who died committing an act of terrorism that killed or injured a United States national; or (2) after 15 days post-enactment of the PSJVTA, the defendant continues to maintain or establishes an office, headquarters, premises, or other facilities or establishments in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority."  18 U.S.C. § 2334(e)(1)(A)-(B).  The PSJVTA notes that "no court may consider," inter alia, that any premise or activity undertaken was exclusively for the purpose of conducting official business of the United Nations (UN) when determining consent to personal jurisdiction.  18 U.S.C. § 2334(e)(3).  Like the U.S. District Court for the Southern District of New York, this Court finds that Congress cannot simply legislate that "any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court." *Fuld*, 578 F. Supp. 3d at 580.  Ultimately, the Court finds that it cannot exercise jurisdiction in this case because the consent provision of the PSJVTA does not comport with due process.

####    1.   *Persons under the Due Process Clause*

First, Plaintiffs argue that the PLO and PA are not persons under the Due Process Clause and that the Due Process Clause only applies to natural persons and private corporations but not a political body or a sovereign (D. 69 at 6-7). This argument is unavailing. Plaintiffs clearly allege in the Amended Complaint that Defendants PLO and PA are each "a person as defined in 18 U.S.C. § 2331." Per 18 U.S.C. § 2331(3), "the term 'person' means any individual or entity capable of holding a legal or beneficial interest in property."

The Tenth Circuit has clarified that courts may consider context when determining the meaning of a word in a statute. Context means "the text of the Act of Congress surrounding the word at issue, or the text of other related congressional Acts." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1130 (10th Cir. 2013); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993) ("The relevant portion of the Dictionary Act, 1 U.S.C. § 1, provides (as it did in 1959) that [i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.") (internal quotations omitted).[5]

The PLO and the PA are not foreign sovereigns because they are not recognized by the United States as a sovereign state and such determination by the Executive is binding. *Waldman*,

---

[5] The U.S. Court of Appeals for the District of Columbia Circuit seemed to suggest that the PLO and PA were foreign corporations that were not subject to personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding that Plaintiffs could not invoke retroactive consent to personal jurisdiction because Defendants had not yet made a payment to trigger the PSJVTA). The U.S. Court of Appeals for the Second Circuit also invoked *Daimler* but held that the PA is a non-sovereign government and the PLO is a foreign agent, both of which are unincorporated associations. *Waldman*, 835 F.3d at 332. Either decision, in the eyes of this Court, renders the PLO and PA to be persons that are entitled to due process protection.

835 F.3d at 329 (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015)); *see also Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 431 (S.D.N.Y. 2004) (detailing the history of the PLO and PA).  While Plaintiffs rely on the dicta in *Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *5 (S.D.N.Y. Mar. 18, 2022), for the proposition that the PLO and PA are not persons for purposes of constitutional due process, this Court respectfully disagrees.  The definition of personhood within the PSJVTA includes the PLO and PA because they are entities capable of holding a legal or beneficial interest in property, and Plaintiffs relied upon such a definition when pleading that the PLO and PA were persons in the Amended Complaint.  Accordingly, this Court finds that the PLO and PA are persons under the PSJVTA and, therefore, entitled to due process protection.  *See Waldman*, 835 F.3d at 330 ("Indeed, this Court has already applied Fourteenth Amendment principles to Fifth Amendment civil terrorism cases."); *see also* U.S. Amicus Br., *Sokolow v. Palestine Liberation Organization*, 138 S.Ct. 1438 (2018), 2018 WL 1251857 at *8 ("This Court has not recognized any other class of entities - whether natural or artificial - as outside the category of 'persons' for purposes of due process. It has treated as 'persons' domestic and foreign entities of various types, such as corporations.").

### 2.  *Mallory and Consent to the PSJVTA*

The next issue before this Court is to determine whether the PSJVTA's consent provision comports with due process.   The United States intervened in this case to defend the constitutionality of the consent provision of the PSJVTA, arguing that the U.S. Supreme Court affirmed in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023) that deemed consent was consistent with due process (D. 107).  The holding in *Mallory*, however, is not as broad-sweeping as Plaintiffs and the United States purport it to be.  The *Mallory* Court did not break new ground

in its holding but rather reaffirmed that *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917) controlled the analysis.  Accordingly, the U.S. Supreme Court held that Pennsylvania's consent statute, which required out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as a condition of registering to do business within the state, did not violate the Fourteenth Amendment's Due Process Clause.  *Mallory*, 143 S. Ct. at 2037-38.

The PSJVTA is substantially different from the Pennsylvania statute.  *Compare* 18 U.S.C. § 2334 with 42 Pa. Stat. and Cons. Stat. § 5301(a)(2)(i), (b).  In both *Pennsylvania Fire* and *Mallory*, the out-of-state corporation had registered with the respective department of state in order to conduct business and maintained an office within that jurisdiction.  That is not the case here.  Rather, the trigger for establishing personal jurisdiction over the PLO and PA is if one of the entities (1) makes an international payment, directly or indirectly, to an individual convicted of terrorism that injured or killed a national of the United States or to *any family member* of the convicted person; (2) maintains a premise within the United States; or (3) conducts *any activity* while physically present in the United States on behalf of the PLO or PA, regardless of whether that activity is UN-related.  18 U.S.C. § 2334(e)(1)(A)-(B) (emphasis added).[6]  With the PSJVTA, "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction . . . and declared that such conduct 'shall be deemed' to be consent."  *Fuld*, 578 F. Supp. 3d at 587.  As the U.S. Supreme Court noted in 1945:

---

[6] Because the Court finds that the PSJVTA violates the Due Process Clause, it will refrain from delving into an analysis regarding whether it is also vague and ambiguous or facially unconstitutional.

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945).

As previously discussed, and as Plaintiffs have alleged, Defendants are persons and not out-of-state corporations that have registered to do business within Colorado. Defendants' work at the UN and in Washington, D.C., or payments made in Palestine also do not trigger jurisdiction in the U.S. District Court for the District of Colorado. *See Sokolow*, 607 F. Supp. 3d at 326 ("Even accepting Plaintiffs' argument that Defendants' United States activities fall within the ambit of the PSJVTA's U.S. activities prong . . . these types of conduct do not infer any intention on the part of Defendants to legally submit to suit in the United States."); *Fuld*, 578 F. Supp. at 587 ("Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it must be willful, thoughtful, and fair. Extorted actual consent and equally unwilling implied consent are not the stuff of due process." (internal quotations and citation omitted)). Plaintiffs' allegations neither support the conclusion that Defendants have consented to the jurisdiction of every federal court in the United States nor can be extrapolated to establish jurisdiction in the U.S. District Court for the District of Colorado. Ultimately, this Court finds that the holding in *Mallory* is not applicable to the PSJVTA, the consent provision of the PSJVTA does not comport with due process, and Defendants have not consented to jurisdiction in this Court.

3. *General and Specific Personal Jurisdiction*

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, which are analyzed similarly in civil cases, the Court examines two parts to the due process test for personal jurisdiction as established by *International Shoe* and its progeny: (1) "the minimum contacts inquiry" (i.e., "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant"); and (2) "the reasonableness inquiry" (i.e., "whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case"). *Waldman*, 835 F.3d at 331 (internal quotations and citations omitted). A court can exercise personal jurisdiction in two ways: general jurisdiction and specific jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316.

Plaintiffs do not allege that there is general personal jurisdiction over the PLO and PA but do allege that the Court has general personal jurisdiction over Riyad Mansour, who is the named representative for the PLO and PA, as he is a domiciliary of the United States and service was effected at Mansour's home address in Florida (D. 69 at 27). Plaintiffs fail to identify activities sufficient to establish general personal jurisdiction, which "requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Medinfo, Inc. v. MedTool LLC*, No. 15-CV-00260-MEH, 2015 WL 3542712, at *2 (D. Colo. June 5, 2015) (internal quotations and citation omitted).

Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA (D. 69 at 19-27). "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the

forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Here, the only tie this case has to the U.S. District Court for the District of Colorado is the fact that Plaintiff Shelley Levine is domiciled and resides in Boulder, Colorado (D. 50 at 5). The actions by Defendants (especially actions taken in Israel) are not sufficiently connected to the United States or even the state of Colorado. Thus, there is no basis to conclude that Defendants may haled into a federal court in the United States, let alone this Court. "The overwhelming evidence shows that the defendants are 'at home' in [the Palestinian Territories]."[7] *Waldman*, 835 F.3d at 332. Accordingly, the Court finds that Plaintiffs have failed to establish that this Court has either specific or general personal jurisdiction over any of the Defendants due to lack of activity in the forum.

---

[7] See *Palestinian Territories*, U.S. Dep't of State, https://www.state.gov/countries-areas/palestinian-territories/ (last visited Aug. 22, 2023).

#### 4. Federal Rule of Civil Procedure 23.2

Finally, Plaintiffs argue that Rule 23.2 permits class actions against unincorporated associations.[8]  Rule 23.2 states:

> This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. *The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members.* In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e).

Fed. R. Civ. P. 23.2 (emphasis added).  This rule does not create personal jurisdiction over Defendants when there is a lack of consent, general personal jurisdiction, or specific personal jurisdiction.  Furthermore, Plaintiffs are not suing Defendants as a class action under Rule 23.  Accordingly, this argument is unavailing, and the Court will not spend further time analyzing it.

### B. Remaining Claims

The Court has disposed of all of Plaintiffs' federal law claims.  All the remaining claims are brought under Israeli law, which Plaintiffs argue implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367.  Under 28 U.S.C. § 1367(c)(3), when all the federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims not brought under federal law.  *See Smith v. City of Enid*, 149 F.3d 1151,

---

[8] The Tenth Circuit has previously held that unincorporated associations may not be sued under certain federal laws. *See Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 1:22-CV-00581-CNS, 2023 WL 1338676, at *6 (D. Colo. Jan. 31, 2023) (holding that an unincorporated association could not be sued under  42 U.S.C. § 1985(3)) (collecting cases); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017); *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006) (holding that an unincorporated association was not a person under 42 U.S.C. § 1983).  However, because this Court has agreed with the Second Circuit that, the PA is a non-sovereign government and the PLO is a foreign agent, which makes them persons under the Due Process Clause, the Court does not need to reach the issue of whether Defendants are unincorporated associations and whether they can even be sued in the Tenth Circuit.  *See Waldman*, 835 F.3d at 332.

1156 (10th Cir. 1998).  Accordingly, the Court dismisses the remaining claims without prejudice for lack of subject-matter jurisdiction.

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED (D. 58).  It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED August 23, 2023.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Gordon P. Gallagher

Civil Action No. **1:21-cv-03043-GPG-STV**

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

## FINAL JUDGMENT

---

    In accordance with the orders filed during the pendency of this case, and pursuant to Fed.

R. Civ. P. 58(a), the following Final Judgment is hereby entered.

    Pursuant to the order entered by Judge Gordon P. Gallagher on August 23, 2023, [D. 111]

it is

    **ORDERED** that Defendants' Motion to Dismiss [D. 58] is **GRANTED**, It is

    **FURTHER ORDERED** that Plaintiffs' First Amended Complaint and all remaining

      claims are dismissed without prejudice, it is

    **FURTHER ORDERED:** that judgment is entered in favor of the Defendants, and

      against the Plaintiffs, it is

    **FURTHER ORDERED** that the Defendants are awarded their costs to be taxed by the

      Clerk of the Court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1)

      and D.C.COLO.LCivR 54.1

This case will be closed.

DATED at Grand Junction, Colorado this 23rd day of August 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK


By:     s/ D. Clement
        D. Clement
        Deputy Clerk