Nos. 23-1286, 23-1335

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

CHAYA WERFEL, et al.,
Plaintiffs/Appellants
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor.

---

CHAYA WERFEL, et al.,
Plaintiffs,
v.
THE PALESTINE LIBERATION ORGANIZATION, et al.,
Defendants/Appellees
---------------------
UNITED STATES OF AMERICA,
Intervenor/Appellant.

---

On Appeal from the United States District Court
For the District of Colorado
The Honorable Gordon P. Gallagher
D.C No. 21-cv-03043-GPG-STV

---

**CONSOLIDATED JOINT APPENDIX
Volume IV of IV**

---

Daniel K. Calisher
Michael A. Rollin
Chip G. Schoneberger
FOSTER GRAHAM MILSTEIN
& CALISHER LLP
360 S. Garfield Street, 6th Floor
Denver, CO 80209
Telephone: (303) 333-9810
Emails: calisher@fostergraham.com
mrollin@fostergraham.com
cschoneberger@fostergraham.com

Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: (786) 687-0404
Email: asher@asherperlin.com

# TABLE OF CONTENTS

## Volume I

| ECF No. | Document Title | Date Filed | Page No. |
|---|---|---|---|
|  | Civil Docket for Case No. 1:21-cv-03043-GPG-STV |  | 0001 |
| 50 | First Amended Complaint and Jury Demand | 5/17/22 | 0022 |
| 58 | Defendants' Motion to Dismiss First Amended Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) | 6/27/22 | 0077 |
| 69 | Plaintiffs' Opposiiton to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) | 9/19/22 | 0134 |
| 69-1 | Declaration of Asher Perlin in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) | 9/19/22 | 0190 |
| 69-2 | Exhibit A to Declaration of Asher Perlin | 9/19/22 | 0193 |
| 69-3 | Exhibit B to Declaration of Asher Perlin | 9/19/22 | 0209 |

## Volume II

| ECF No. | Document Title | Date Filed | Page No. |
|---|---|---|---|
| 69-4 | Exhibit C to Declaration of Asher Perlin | 9/19/22 | 0277 |
| 69-5 | Exhibit D to Declaration of Asher Perlin | 9/19/22 | 0314 |
| 69-6 | Exhibit E to Declaration of Asher Perlin | 9/19/22 | 0373 |
| 69-7 | Exhibit F to Declaration of Asher Perlin | 9/19/22 | 0398 |
| 69-8 | Exhibit G to Declaration of Asher Perlin | 9/19/22 | 0401 |
| 69-9 | Exhibit H to Declaration of Asher Perlin | 9/19/22 | 0423 |
| 69-10 | Exhibit I to Declaration of Asher Perlin | 9/19/22 | 0467 |

**Volume III**

| ECF No. | Document Title | Date Filed | Page No. |
|---------|----------------|------------|----------|
| 69-11 | Exhibit J to Declaration of Asher Perlin | 9/19/22 | 0554 |
| 69-12 | Exhibit K to Declaration of Asher Perlin | 9/19/22 | 0592 |

**Volume IV**

| ECF No. | Document Title | Date Filed | Page No. |
|---------|----------------|------------|----------|
| 69-13 | Declaration of Dr. Boaz Shnoor | 9/19/22 | 0832 |
| 71 | Table of Authorities Supplement to Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) | 9/20/22 | 0855 |
| 73 | Intervenor United States of America's Brief in Support of the Constitutionality of the Promoting Security and Justice for Victims of Terrorism Act of 2019 | 9/26/22 | 0868 |
| 76 | Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) | 11/14/22 | 0895 |
| 106 | Plaintiffs' Supplemental Briefing Concerning *Mallory v. Norfolk* | 7/24/23 | 0943 |
| 107 | Intervenor United States of America's Supplemental Brief | 7/24/23 | 0949 |
| 110 | Defendants' Supplemental Brief Concerning *Mallory* | 8/3/23 | 0955 |
| 111 | Order | 8/23/23 | 0964 |
| 112 | Final Judgment | 8/23/23 | 0980 |
| 113 | Notice of Appeal (Plaintiffs) | 9/13/23 | 0982 |
| 122 | Notice of Appeal (Intervenor United States of America) | 10/20/23 | 1003 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:21-cv-03043-RM-STV

SHELLEY LEVINE, *et al.*,

                    Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                    Defendants.

-------------------------------------------------------------------------X

<u>**DECLARATION OF DR. BOAZ SHNOOR**</u>

   a.  <u>**Professional Background**</u>

   1.      I am a Senior Lecturer at the Academic Center for Science and Law (Shaarei

Mishpat College), in Hod Hasharon, Israel, and have been a faculty member there since 2019.

Before that I was a faculty member at the Academic Center of Law and Business, in Ramat Gan,

Israel. During the last two decades I also held positions teaching law at the Faculty of Law of the

Hebrew University in Jerusalem, and at the College of Management (Academic Studies Divi-

sion) in Rishon Letzion, Israel. During the academic year 2010-2011 I was a visiting scholar at

Cornell University's law school.

   2.      My teaching and research fields focus primarily on Israeli tort law, libel law, en-

vironmental law, psychological analysis of law, and honor litigation in an historical context. I am

the author of the book <u>Toxic Torts</u> (2011, Sacher Institute) (Hebrew), co-author of the book <u>Li-</u>

<u>bel Law - De Lege Lata and De Lege Ferenda</u> (2005, Sacher Institute; 2nd. Edition, 2019, Sacher

**0832**

Institute) (Hebrew), and have authored and co-authored numerous other academic and professional papers on Israeli tort law and other legal topics.

3.      I hold LL.D, LL.M and LL.B degrees from the Hebrew University. My doctoral dissertation dealt with toxic torts. I am a member of the Israeli Bar and licensed to practice law in the State of Israel. A copy of my current curriculum vitae is attached hereto.

### b.  <u>Purpose of this Declaration</u>

4.      The purpose of this Declaration, which I provide at the request of counsel for the plaintiffs in the above-captioned case, is to provide my opinion regarding assertions relating to Israeli law (detailed below), which are contained in the defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(2) and Rule 12(b)(6)" (the "Motion").

5.      The bases for my opinion as set forth herein are my professional and academic legal studies, research, teaching and publishing over the course of many years, as well as the statutes, cases and authorities cited in this Declaration.

### c.  <u>Negligence Liability May Be Imposed on Multiple "But-For" Tortfeasors</u>

6.      The defendants assert in their Motion that because the plaintiffs allege in a different law suit that Syria and Iran are liable to the plaintiffs because they provided material support to the PFLP, the plaintiffs cannot show in this action that the defendants' actions were a "but-for" cause of their injuries, as required for the tort of Negligence under Israeli law. (*Id.* at p. 43).

7.      This assertion simply has no basis in Israeli law. To the contrary, Section 64 of the Israeli Civil Wrongs Ordinance ("CWO") provides in relevant part that "a person shall be deemed to cause damage by his fault when the fault **was the cause or one of the causes** of the damage." (emphasis added). Therefore, multiple tortfeasors may be, and very frequently are

2

**0833**

found by Israeli courts to be, "but-for" (*sine qua non*) causes of a single tort, and Israeli courts hold multiple tortfeasors liable in Negligence for a single tort as a matter of course.

8.      The rule regarding multiple tortfeasors was clarified in the leading Israeli Supreme Court decision in  C.A. 22/75 **Edri v. Azizian** PD 30(1) 701 (1976), which has been cited dozens of times by the Supreme Court since then. In **Edri**, the Court stated that when two or more tortfeasors are both the sine qua non reason for the Plaintiff`s harm they will be liable jointly and severely for the whole damage, whether they acted jointly or separately, unless the harm each of them caused can be separated from the harm caused by the other, and each separate harm can be attributed to the respective defendant that caused it.

9.      For example (and as just one of numerous available examples), in C.A. 12914-06-17 (Mag. Rishon Letzion) **Ilan Tal v. Toby Sivan** (Dec. 5, 2020) (Nevo Publishers), the court found that water damage to the plaintiffs' apartment was caused both (1) by existing building defects (which were the fault of the contractors, who were named as defendants), and (2) by a flood in the apartment above (which was the fault of the upstairs neighbor, who was also named as a defendant). The court concluded that "**each of these factors**" which, as noted, resulted from the independent conduct of different defendants, "**was a sine qua non cause of the creation of the damage**. In other words, **but for the sealing defects**, the flooding event alone would not have harmed the plaintiffs' apartment. So too, **but for the flooding event**, the sealing defect would not have caused the harm." *Id*. at 6 (emphasis added).[1] See also for example the following Supreme Court cases: C.A. 7436/12 **Clal Insurance v. B.I.M. Building Company Inc.** (July 6, 2017); C.A. 7008/09 **Al Rahim v. Al Kader** (Sep. 7, 2010)

---

[1] I read Hebrew and English fluently and I confirm the accuracy of this translation.

10.     Therefore, under Israeli law, even if the court hearing the plaintiffs' action against Syria and Iran finds that their support to the PFLP was a *sine qua non* cause of the terrorist attack, that finding would in no way undermine or conflict with the plaintiffs' assertion that the defendants in the above-captioned action are liable to the plaintiffs for Negligence under the CWO.

### d.   The Defendants Confuse Different Types of "Vicarious Liability" Under the CWO

11.     Defendants also assert in their Motion that the plaintiffs' vicarious liability claims under Israeli law fail because they cannot show "that the Attackers were affiliated with Defendants," or that "the PA or PLO ever authorized or ratified the actions of the Attackers," or that "the PA or PLO expressly authorized the Attack." (*Id.* p. 44). In support of this claim, Defendants cite *Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 229-30 (D.D.C. 2011). As explained below, this assertion, too, is not correct.

12.     The CWO includes three different sections § 12, § 13, and § 14, which allow the court to hold a defendant vicariously liable for the actions of the direct tortfeasor. Each of these three alternative sections stands alone, and has its own requirements.

13.     Section 12 of the CWO provides that a person "who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, **or** who orders, authorizes, or ratifies such an act or omission, shall be liable" for such act or omission. CWO § 12 (emphasis added). I have emphasized the word "or" because each of the various categories of conduct listed in CWO § 12 constitutes an alternative basis for liability. Thus, a defendant which "assists" the direct tortfeasor may be liable under CWO § 12, even if the defendant did not "participate in," "advise," "solicit," "order," "authorize," or "ratify" the tort. Contrary to the defendants' assertions, therefore, aiding and abetting liability under CWO § 12 does **not require** any authorization or ratification.

4

14.     In fact, the vast majority of Israeli court decisions under CWO § 12 involve the "assists" element of § 12 only—*i.e.*, cases where the defendant only **assisted** the direct tortfeasor. Thus, CWO § 12 functions mainly as Israel's civil "aiding and abetting" provision.

15.     The plaintiffs' First Amended Complaint ("FAC") asserts a claim for aiding and abetting under CWO § 12. (FAC at ¶¶ 233-34). The allegations that the PFLP carried out the attack (FAC at ¶¶ 172-73) and that for years prior to the attack the defendants provided the PFLP funding and various types of in-kind support that enabled and enhanced the PFLP's ability to carry out terrorist attacks in Israel (FAC at ¶¶ 126-46), if true, would certainly make the defendants liable for the attack under CWO § 12.[2]

16.     Section 13 of the CWO deals with vicarious liability arising from an employer-employee relationship, which is not relevant to this case, and is not cited in the FAC.

17.     Section 14 of the CWO deals with vicarious liability arising from a principal-agent relationship (other than an employer-employee relationship). In other words, CWO § 14 provides for **respondeat superior** liability. In the case cited by the defendants, *Botvin*, the plaintiffs sought to impose liability on the basis of CWO § 14, not § 12, and the federal court made clear that it was not addressing § 12. (*Botvin*, p. 230, fn. 13 ("Because the plaintiffs have not asserted the defendants' liability under Article 12, the court will not address this potential theory of

---

[2] The FAC separately alleges that the defendants are liable under the "ratification" prong of § 12, because they make payments to the families of the terrorists who carried out the attack. (*Id*. ¶ 236). The defendants do not appear to address this assertion in their Motion, but I note that the Israeli Supreme Court recently held that because the Palestinian Authority ("PA") maintains a standing program for making payments to imprisoned terrorists, and to the families of terrorists killed carrying out terrorist attacks, the PA can be held liable under § 12 for post facto ratification of a terrorist attack, solely on the basis of the fact that it made post-attack payments to the perpetrators, or to the families of the perpetrators, of the specific attack from which the suit arises. C.A. 2362/19 *Does v. Palestinian Authority* (April 10, 2022) *rehearing denied* C.R. 2744/22 (Aug. 30, 2022).

**0836**

liability.")). Thus, the language from *Botvin* quoted by the defendants relates only to CWO § 14 (respondeat superior), **not** to CWO § 12.

18.     As the defendants correctly state (quoting *Botvin*), CWO § 14 provides that "[a]ny person who employs an agent ... to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts." (Motion at p. 44).

19.     Contrary to the defendants' arguments, CWO § 14 does not require that the principal "authorized or ratified" the tortious actions of the agent, much less "expressly authorized" those actions.[3] Rather, under § 14, a principal is liable for any act done by an agent in the course of fulfilling his duties as an agent. The liability of the principal is strict and it does not matter whether the defendant intended the agent to perform the tort or not, whether the defendant knew about the possibility of the occurrence of the tort or not, or whether the defendant was negligent or not in appointing the agent. Under controlling Israeli Supreme Court precedent, pursuant to CWO § 14, the mere fact that the agent was indeed the principal's agent is sufficient to deem the principal liable for any tort done by the agent in the course of fulfilling the agency. (C.A. 502/78 *State of Israel v. Nissim*, PD 35(4) 748 (1981)).

20.     The FAC asserts a respondeat superior claim under CWO § 14, on the grounds that the defendants used the PFLP as their agent to carry out terrorist attacks in order to achieve their goal (shared with the PFLP) of ending the Israeli and Jewish presence in certain territories.

---

[3] Until 2005, the CWO contained a provision (§ 25) that a principal would not be liable for an assault committed by its agent unless the principal had expressly authorized or ratified the assault. However, that provision was repealed in 2005, almost a decade before the attack at issue here.

(FAC ¶¶ 237-38).[4] The FAC contains numerous allegations asserting that the defendants employed terrorism to achieve this goal, and used to PFLP to carry out that terrorism. If these allegations are true, the FAC easily states a valid claim for respondeat superior liability under § 14.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September 18, 2022

_____
Dr. Boaz Shnoor

---

[4] The FAC alleges an agency relationship between the defendants **and the PFLP**. Therefore, the relevant question is whether the PFLP, as an organization, was the agent of the defendants, and not whether the individual perpetrators were the defendants' agents.

0838

## CURRICULUM VITAE – BOAZ SHNOOR

1. **Higher Education**

   **Undergraduate and Graduate Studies**

| Period of Study | Name of Institution and Department | Degree | Year of Approval of Degree |
|---|---|---|---|
| 2015 – 2021 | Open University | Psychology (B.A.) | 2021 |
| 1997-2004 | Hebrew University Law School | LL.D. | 2005 |
| 1996-1999 | Hebrew University Law School | LL.M. (part of accelerated LL.D. program) | 1999 |
| 1991-1995 | Hebrew University Law School | LL.B. (magna cum laude) | 1995 |

2. **Academic Ranks and Tenure in Institutes of Higher Education**

| Dates | Name of Institution and Department | Rank/Position |
|---|---|---|
| 2019- | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Senior Lecturer |
| 2013-2019 | Law faculty, Academic Center of Law and Business, Ramat Gan | Senior Lecturer |
| 2010-2011 | Cornell University Law School | Visiting Scholar |
| 2007-2008 2018-2019 | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Adjunct Lecturer |

**0839**

| 2004-2013 | Law faculty, Academic Center of Law and Business, Ramat Gan | Lecturer |
|---|---|---|
| 2003-2004 | Law faculty, Academic Center of Law and Business, Ramat Gan | Adjunct Lecturer |
| 2002-2017 | School of Law, the College of Management Academic Studies, Rishon LeZion | Adjunct Lecturer |
| 2002-2016<br>2021-2022 | Law faculty, Hebrew University, Jerusalem | Adjunct Lecturer |

### 3.  Offices in Academic Administration

2022 -        Head of Teaching Committee, The Academic Center for Law and Science (Sha'arei Mishpat College)

2020 -        Member of the Institutional Ethical Review Board, The Academic Center for Law and Science (Sha'arei Mishpat College)

2019 -  2022    Head of the Research Authority, The Academic Center for Law and Science (Sha'arei Mishpat College)

2013 - 2018    Chairperson, Institutional Ethical Review Board, Academic Center of Law and Business

2011 – 2018    Chairperson, Students' Disciplinary Appeals Board, Academic Center of Law and Business

2006 – 2010    Chairperson, Students' Disciplinary Board, Academic Center of Law and Business

2005 - 2013    Founder and Academic Supervisor of the Environmental Law Clinic, Academic Center of Law and Business

### 4.  Scholarly Positions and Activities outside the Institution

#### a.  Membership in Scientific Editorial Boards

2019 - 2021    Co-Editor, The Oñati Socio-Legal Series, 'Too Much Litigation?' issue

2017-2018    Guest Co-Editor, the International Journal of the Legal Profession

0840

| 2016-2017 | Co-Editor, The Oñati Socio-Legal Series, 'Too Few Judges: Regulating the Number of Judges in Society' issue |
|---|---|
| 1993-1994 | Co-Editor in Chief "Mishpatim" (Hebrew University Law Review) |
| 1992–1993 | Member of the Editorial Board "Mishpatim" (Hebrew University Law Review) |

### b.  Reviewing Articles for Law Reviews

| 2021 | "Hamishpat" - the College of Management, Academic Studies Law journal |
|---|---|
| 2020 | "Mishpat Va`Asakim" – IDC Law Review |
| 2020 | "Moznei Mishpat" – Netanya Law Review |
| 2020 | "Mishpatim online" - Hebrew University Online Law Journal |
| 2019 | "Mishpatim" - Hebrew University Law Review |
| 2019 | "Mishpat Va`Asakim" – IDC Law Review |
| 2018 | "Mishpatim online" - Hebrew University Online Law Journal |
| 2014 | "Mishpatim" - Hebrew University Law Review (two articles) |
| 2012 | "Mishpatim" - Hebrew University Law Review |
| 2012 | "Mehkarei Mishpat" - Bar Ilan Law Studies |
| 2011 | "Alei Mishpat" - Academic Center of Law and Business Law Review |
| 2010 | "HaMishpat" - the College of Management, Academic Studies Law journal |
| 2009 | "Hukim" – Journal on Legislation |
| 2008 | "Din U`Dvarim" - Haifa University Law Review |
| 2008 | "Alei Mishpat" - Academic Center of Law and Business Law Review |
| 2007 | "Hapraklit" - Israeli Bar Review |
| 2007 | "Mishpatim" – Hebrew University Law Review |
| 2006 | "Hapraklit" - Israeli Bar Review |

### c.  Reviewing Dissertations, Theses and Books

| 2019 | Reviewing a Proposal for Master`s Thesis – Bar Ilan University Law Faculty |
|---|---|
| 2018 | Reviewing a Doctoral Dissertation – The Hebrew University Law Faculty |
| 2015 | Reviewing a book - the Harry Sacher Institute for Legislative Research and Comparative Law |

### d.  Public Committees

3

**0841**

2015-2016     The Ministry of Health Public Committee for the Regulation of Procedures regarding Living Organ Donors – member

2013     The Public Commission on Age as a Criteria for Receiving Organ Donations - member

## 5. **Participation in Scholarly Conferences**
a. **Active Participation**

**Conferences Abroad**

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|---|---|---|---|---|
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice (with Eyal Katvan) | Speaker |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Judges' Precious Time: Let's talk about it (with Eyal Katvan) | Speaker |
| July 2015 | Workshop on Consumer Redress When Lawyers Are Negligent | Oñati, Spain | Informed Consent to Legal Treatment (with Eyal Katvan) | Speaker |
| May 2014 | How Objective Can Judges Be: Legal Rule, Evidence, Narratives, Society Conference | Antwerp | Courts as the Creators of Legal Rules :The Case, the Judge, the Court and the State | Speaker |
| November 2011 | The 6th Annual Conference on Empirical Legal Studies | Chicago | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine | Speaker |
| June 2011 | Association for Israel Studies | Boston | Terms of Betrayal – Legal and behavioral aspects of ringworm | Speaker |

4

**0842**

| | | | treatment in Israel (with Eyal Katvan) | |
| July 2006 | 17th Congress of the International Academy of Comparative Law | Utrecht, the Netherlands | Pure Economic Loss in Israel (with Tamar Gidron) | Speaker |

Conferences in Israel

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|---|---|---|---|---|
| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| June 2016 | 32nd annual Conference of the Association for Israel Studies | Jerusalem | Eastern or Western 'Kavod'? Honor in Informal Courts in Mandatory Palestine" (with Eyal Katvan) | Speaker |
| October 2015 | The Association for Law & History Annual Conference | Jerusalem | `But Your Honor, he Started it`: Honor and the Regulation of Emotions in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| April 2015 | Conference on Lawyers' Legal Ethics and Professional Responsibility – Hamishpat Law Review | Tel-Aviv | Judges' Perceptions of Counsels' Behavior in Court | Speaker |
| October 2013 | The Law and History Association Annual conference | Jerusalem | The History of the Struggle between Freedom of Speech and Honor – Legislation vs. Adjudication (Heb.) | Speaker |

| December 2012 | The Law and Society Conference | Ramat-Gan | Cases, Judges, or Politics – What makes American Courts Change Tort Law? (Heb.) | Speaker |
|---|---|---|---|---|
| October 2012 | The Law and History Association Annual conference | Jerusalem | Archives with Honor (Heb.) (with Eyal Katvan) | Speaker |
| October 2012 | The Legal Year Conference | Haifa | Libel Law in Israel 2012 (Heb.) | Speaker |
| May 2012 | 3rd Annual Conference of the Israeli Association of Private Law | Ramat-Gan | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine (Heb.) | Speaker |
| May 2012 | Intermediary Liability in the Digital Age | Haifa | Intermediaries' Liability for Libel - Lessons from Past Developments in Israeli Courts and the Knesset | Speaker |
| April 2012 | Regulation of Off-Shore Drilling Conference | Tel-Aviv | Torts as Regulation of Off-Shore Drilling (Heb.) | Speaker |
| December 2011 | Annual Conference of the Israeli Association of Law and Society | Ramat-Gan | A Community with Its Own Dignity (Heb.) (with Eyal Katvan) | Speaker |
| November 2008 | Between Criminal and Civil | Ramat-Gan | Punitive Damages, Compensation for Non-pecuniary Harm and Compensation without Proof of Harm (Heb.) | Speaker |
| June 2008 | Conference on Economic Incentives in Environmental Law | Ramat-Gan | Economic Incentives and Pollution: Goal and Methods (Heb.) | Speaker |

| May 2008 | Evidence Law | Haifa | Evidence Law and Uncertainty in Tort Law (Heb.) | Speaker |
| March 2007 | Libel Law | Jerusalem | Libel law – Theory and Reality (Heb.) | Speaker, part of panel |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Pets, Torts and Animal Rights (Heb.) | Speaker |
| June 2005 | 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences | Rehovot | Environmental Law: From Public to Private Enforcement | speaker |
| December 2003 | The 13th annual conference of the Rationality Center of the Hebrew University | Ein Gedi | The Causal Connection in the Shamgar Committee Report on the Kishon River (Heb.) | speaker |
| December 2002 | Annual convention of the Israel Society for Ecology and Environment | Tel-Aviv | Causation in Environmental Torts (Heb.) | speaker |

b. **Organization of Conferences or Sessions**

| Date | Name of Conference | Place of Conference | Subject of Conference/ Role at Conference/ Comments | Role |
| --- | --- | --- | --- | --- |
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | The litigants in Courts | Coordinator (Member of the scientific board) |

0845

| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in a Changing Society | Member of the scientific board, member of the organizing committee |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Regulation of the Number of Judges in Society | Coordinator (Member of the scientific board) |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Animal rights and Biodiversity | Organizer |

6. **Invited Lectures\ Colloquium Talks**

| Date | Place of Lecture | Name of Forum | Presentation/Comments |
|------|------------------|---------------|------------------------|
| November 2021 | Sha`arei Mishpat – The Academic College of Law and Science | Israeli bar – Libel and Privacy Law | Defenses in Defamation |
| October 2021 | Peres  Academic Center, Rehovot | Law school, Faculty Seminar | Critique on Omer Aloni, "The League of Nations and the Protection of the Environment" |
| October 2020 | Zoom | Jewish History and Emotions on-line workgroup | "Honorably – Theodor Herzl" (With Eyal Katvan and Meron M. Piotrkowski) |
| March 2018 | Tel-Aviv – Jaffa Civil Court | Judges` Workshop | Libel and the Judicial Process |
| June 2017 | Tel-Aviv University | Environmental Law Program | Substance and Practice in Mass Environmental Torts |
| November 2016 | Tel-Aviv University | Environmental Clinic Workshop | Toxic Torts |
| December 2013 | Ashkelon | The Institute for Judges` Training | Defenses in Libel Suits |

0846

| January 2013 | Ashkelon | The Institute for Judges` Training | Psychology of Causation |
| March 2012 | Ma`aleh HaHamisha | Ministry of Environmental Protection | Nuisance Law and Remedies in Torts |
| February 2012 | Neve Ilan | The Institute for Judges` Training | Challenges of Environmental Protection – Policy, Law, and Action |
| November 2011 | Academic Center of Law & Business | Law faculty, Faculty Seminar | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine |
| October 2011 | Yad Hashmona | Ozmat forum for legal aids | Toxic Torts |
| March 2011 | Cornell University | Berger International Legal Studies Program Speaker Series | The Influence of Betrayal on Law Making: Lessons from the United States and Israel |
| December 2008 | Faculty Seminar, Academic Center of Law and Business | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| November 2008 | The Law Faculty, Tel Aviv University | The Yuval Levy & Co. Law & Environment Workshop | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| June 2008 | The College of Management Academic Studies, Rishon LeZion | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| May 2008 | Haifa University | Judges` Conference | Uncertainty and Causation in Tort Cases |

**0847**

| October 2007 | Neve Ilan | The Institute for Judges` Training | Toxic Torts |
| January 2006 | Netanya College | Environmental Law Professors Forum | The Future of Toxic Torts |

## 8. Research Grants

### e. Grants Awarded

| Role in Research | Co-Researchers | Topic | Funded by/ Amount | Year |
| --- | --- | --- | --- | --- |
| Co-PI | Eyal Katvan (PI), Tamar Ashkenazi (PI), Israel Doron, and Eitan Mor | The Consequences of Policy Changes regarding the use of Age Criteria in Organ Transplantation<br><br>Publications: article No. 11 | The Israel National Institute for Health Policy Research 123,000 NIS | 2017 |
| PI | Eyal Katvan | Honor in a Changing Society - Research Workshop Grant | Israel Science Foundation<br><br>68,000 NIS | 2015 |
| PI | Eyal Katvan<br><br>Chemi Ben Noon | Lawyers (in)Civility in Courts – Empirical Research of Judges' Attitudes<br><br>Publications: article No. 9 | David Weiner Center for Lawyers Ethics and Professional Responsibility<br><br>5,000 NIS | 2014 |
| PI | Eyal Katvan | Kavod (honor) and its Legal Defense in Mandatory Palestine: Values in "Melting Pot" Societies<br><br>Publications: articles No. 16, 18, 19, 20 | Israel Science Foundation 360,000 NIS | 2013 |

9. **Teaching**

**Courses Taught in Recent Years**

| Year | Name of Course | Type of Course Lecture/Seminar/ Workshop/High Learn Course/ Introduction Course (Mandatory) | Degree | Number of Students |
|---|---|---|---|---|
| 2002-2022 | Tort law | Mandatory Introductory Course 6-8 credits | LL.B. | 70-200 (most years I gave the course more than once) |
| 2004 - 2012 | Environmental law | High Learn Course | LL.B. | 20-90 |
| 2008 - 2010 | Environmental law and Policy | High Learn Course | LL.B. | 20-90 |
| 2018 - 2021 | Environmental law and Policy | High Learn Course | M.A. | 50 - 75 |
| 2013-2015 2017 2021 | Environmental law and Policy | Seminar | LL.B. | 12-25 |
| 2002-2005 2019 | Causation in torts | High Learn Course | LL.B. | 20-50 |
| 2004-2009 2011-2013 | Causation in torts | Seminar | LL.B. | 12-25 |
| 2008-2009 | Tortious adjudication under uncertainty | Seminar | LL.B. | 12 |
| 2009 2010 | Negligence | Seminar | LL.B. | 10 |
| 2015-2017 | Tortious protection of personal and economic interests | Seminar | LL.B. | 12-20 |
| 2005 - 2008 | Libel law | High Learn Course | LL.B. | 15-50 |

0849

| 2015-2021 | Libel and privacy law | Seminar | LL.B. | 12-25 |
|---|---|---|---|---|
| 2017-2021 | Libel and privacy law | Seminar | LL.M. | 12-20 |
| 2015-2017 2019 2021 | Psychology of Judging | High Learn Course | LL.B. | 15-50 |

0850

## Publications

**A. Authored Books – Published**

2a. Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law, 2nd Ed., 2019, The Sacher Institute Hebrew University, The Israel Democracy Institute and Nevo Publishing, [556 pages]. Ranked A

2b . Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law - De Lege Lata and De Lege Ferenda, 2005, The Sacher Institute Hebrew University and The Israel Democracy Institute, Heb., [487 pages]. Ranked A

3. **Boaz Shnoor**, Toxic Torts, 2011, Nevo Publishing and The Sacher Institute Hebrew University, Heb., [613 pages]. Ranked A

**B. Edited Books and Special Journal Issues – Published**

4. 'Too Few Judges: Regulating the Number of Judges in Society' issue, Vol. 7(4) *The Oñati Socio-Legal Series*, 2017 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr)

5. 'Too Few Judges' issue, Vol. 26(1), *The International Journal of the Legal Profession*, 2019 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr) Ranked B

6. 'Too Much Litigation?' issue, Vol. 11(2) *The Oñati Socio-Legal Series*, 2021 (with Eyal Katvan, Ulrike Schultz, Guy Seidman and Avrom Sherr)

**C.   Articles in Refereed Journals**

**Published**

7. **Boaz Shnoor**, Volenti Non Fit Injuria: Theory and Reality, 1 *ALEI MISHPAT* 327-354 (2000, Heb.) Ranked B

8. **Boaz Shnoor**, The Theoretical Foundation of Proportional Liability in Israel, 37 *MISHPATIM LAW REVIEW* 177-218 (2007, Heb.) Ranked A

9. **Boaz Shnoor**, Causation in Fact in Toxic Torts, 23(2) *LAW STUDIES* (Bar-Ilan Law Review) 559-620 (2007, Heb.) Ranked A

10. Talma Izak-Biran, Richard Laster, Tamar Berman and **Boaz Shnoor**, Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases, 39(1) *ENVIRONMENTAL POLICY AND LAW* 70-72 (2009) [peer reviewed] SJR 0.178

11. **Boaz Shnoor**, Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts, 33(1) *AMERICAN JOURNAL OF TRIAL ADVOCACY*

13

**0851**

71-112 (2009)        Ranked 6th out of 32 in civil litigation and dispute resolution in Washington and Lee

12.    Eyal Katvan, **Boaz Shnoor**, Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil, 15 *HAMISHPAT* 71-110 (2010, Heb.) Ranked B

13.    **Boaz Shnoor**, On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case, 10 *ALEI MISHPAT* 7-52 (2012, Heb.) Ranked B

14.    **Boaz Shnoor**, Truth, Lies, and in Between them – Developments in Israeli Libel Law 2012, 8 *DIN U'DVARIM* 197-239 (2014, Heb.) Ranked A

15.    Chemi Ben Noon, **Boaz Shnoor**, Eyal Katvan, Judges' Perception of Lawyers' Behavior in Court, 21 *HAMISHPAT* 11-49 (2015, Heb.) Ranked B

16.    **Boaz Shnoor**, Sub Judice and Freedom of Speech – Words in the Air and the Dead Letter of the Law, 12 *ALEI MISHPAT* 261-284 (2015, Heb.) Ranked B

17     Eyal Katvan, Israel Doron, Tamar Ashkenazi, Hagai Boas, Michal Carmiel-Haggai, Michal Dranitzki Elhalel, **Boaz Shnoor**, Jacob Lavee, Age limitation for organ transplantation: the Israeli example, 46(1) *AGE AND AGEING*, 8–10 (2017)    [peer reviewed] IP 10/2 (3 out of 53 Si: Geriatrics & Gerontology)

18     Eyal Katvan, **Boaz Shnoor**, Informed Consent to Legal Treatment – Lessons from Medical Informed Consent, 24(2) *THE INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION* 125-144 (2017)   [peer reviewed] SJR 0.22 Ranked B  2nd Quartile

19a    **Boaz Shnoor**, Eyal Katvan, Court's Precious Time: Transparency, Honor and Judicial Scarce Resources, 7(4) *OÑATI SOCIO-LEGAL SERIES*, 825-846 (2017) [peer reviewed]

19b    **Boaz Shnoor**, Eyal Katvan, A Perfect Façade?: Transparency, Honor and Judicial Scarce Resources, 26(1) *INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION*, 143-158 (2019) [peer reviewed] SJR 0.22 Ranked B 2nd Quartile

20     Limor Zer-Gutman, Eyal Katvan, **Boaz Shnoor,** Lawyers' Honor in the Professional and Private Spheres, 11(2) *HAIFA LAW REVIEW (Din Udvarim)* 457-501 (2018) (Heb.) Ranked B

21     Doron Menashe, **Boaz Shnoor**, Sub Judice and Free Speech: Balancing the Right to a Fair Trial against Freedom of Expression in Israel, 18(1) *SAN DIEGO INTERNATIONAL LAW JOURNAL* 39-70 (2018)    ranked 72 out of 163 under international law, in Washington and Lee ranking  Ranked C

22      Eyal Katvan, **Boaz Shnoor**, An Angry worker: Honor, Anger and the Working Class Emotions in Informal Adjudication in Mandatory Israel, 3 *LAW, SOCIETY & CULTURE* 191-226 (2020) [peer reviewed] (Heb.)

23     Eyal Katvan, **Boaz Shnoor**, Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice, 11(2) *OÑATI SOCIO-LEGAL SERIES* 503-533 (2021) [peer reviewed]

**0852**

24 **Boaz Shnoor**, Eyal Katvan, Freedom of Expression, Honor, and Judicial Independence in Mandate Palestine 26(2) *ISRAEL STUDIES* 66-83 (2021). [peer review] SJR 0.13 Q2

25 Eyal Katvan, **Boaz Shnoor**, Physicians' Honor and Prestige in Pre-Israel Palestine, 25 *KOROT* 7-42 (2021)(Heb.) [peer reviewed]

26 **Boaz Shnoor**, Eyal Katvan, Reputation Struggles: A Jubilee of developments in Libel Law – Chronicles of a dynamic balance, 14 *NETANYA LAW REVIEW* 65-108 (2021) (Heb.) Ranked C

### Accepted for Publication

27 **Boaz Shnoor**, Binding Precedent? Tort Cases not Creating Legal Rules, 28 *HAMISHPAT* __ (to be published 2022, approx. 30 pages)(Heb.) Ranked B

28 Eyal Katvan, **Boaz Shnoor**, In whose honor? The Debate regarding Court Dress *HAPRAKLIT* (TO BE PUBLISHED 2022, APPROX. 40 PAGES) (HEB.) RANKED B

### D.  Articles or Chapters in Scientific Books

#### Published

29. Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, *Libel Law*, *in* DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE pp. 179 – 233 (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.)

30. Tamar Gidron, **Boaz Shnoor**, *Pure Economic Loss in Israel*, *in* PURE ECONOMIC LOSS 186-217 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009). A different version of this paper was published as part of conference proceedings (see F.1) Ranked A

31. **Boaz Shnoor**, Israel Gilead, *Causal Uncertainty and Proportional Liability in Israel*, *in* PROPORTIONAL LIABILITY – ANALYTICAL AND COMPARATIVE PERSPECTIVES pp. 183-198 (Israel Gilead, Michael D. Green, Bernhard A. Koch, Eds., De Gruyter publishing, 2013)

32. **Boaz Shnoor**, Eyal Katvan, *The Ringworm Victims Compensation Law – 1994: Legislation and Court Decisions – between Rhetoric and Compensation,* *in* RINGWORM - THE INTERNATIONAL AND THE ISRAELI SAGA, (eds.: Shvarts S, Sadetzki S., Ben Gurion University Publication, 2018, Heb.) Ranked A

### E. Articles in Conference Proceedings

**Published**

33.    Tamar Gidron, **Boaz Shnoor**, Pure Economic Loss in Israel, in *Israeli Reports to the XVII International Congress of Comparative Law* 199-230 (The Sacher Institute, 2009) A different version of this paper was published as a book chapter (see D.2)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:21-cv-03043-RM-STV

SHELLEY LEVINE, *et al.*,

                      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                      Defendants.

---

**TABLE OF AUTHORITIES SUPPLEMENT
TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
UNDER RULE 12(b)(2) AND RULE 12(b)(6)**

---

Plaintiffs, Shelley Levine, et al. (collectively "Plaintiffs"), submit this Table of Authorities

Supplement to Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended

Complaint Under Rule 12(b)(2) and Rule 12 (b)(6) (Doc. 69) as follows:

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abecassis v. Wyatt*,
   785 F.Supp.2d 614 (S.D.Tex. 2011) ......................................................................43

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
   817 F.3d 755 (Fed. Cir. 2016) ................................................................................18

*Aetna Cas. & Sur. Co. v. Iso-Tex, Inc.*,
   75 F.3d 216 (5th Cir. 1996) ....................................................................................28

*Agbara v. Okoji*,
   2021 WL 4940927 (D.D.C. Oct. 22, 2021) ...........................................................12

*Aicher v. Access Corr.*,
   2017 WL 8944040 (D.N.M. Aug. 28, 2017) .........................................................39

*Alfaro-Huitron v. Cervantes Agribusiness*,
   982 F.3d 1242 (10th Cir. 2020) ...................................................................... 43, 45

*Am. Select Ins. Co. v. Johnson*,
   U.S. Dist. LEXIS 101446, (D. Colo. June 18, 2018) ...........................................45

*Associated Press v. Bd. of Pub. Educ.*,
   246 Mont. 386 (1991) ..............................................................................................3

*Atchley v. AstraZeneca UK Ltd.*,
   22 F.4th 204 (D.C. Cir. 2022)......................................................................... passim

*Battle Fowler v. Brignoli*,
   765 F. Supp. 1202, (S.D.N.Y. 1991) ....................................................................25

*Bibbs v. Molson Coors Beverage Co. USA, LLC*,
   --- F.Supp.3d ----, 2022 WL 2900275, n.2 (N.D. Tex. July 22, 2022)................22

4873-6555-8836, v. 1

*Boim v. Am. Muslims for Palestine*,
   9 F.4th 545 (7th Cir. 2021) ...................................................................45

*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) ......................................................... 35-36

*Boston Telecomm. Grp., Inc. v. Deloitte Touche Tohmatsu*,
   249 Fed.App'x 534 (9th Cir. 2007).......................................................13

*Buckley v. Airshield Corp.*,
   116 F. Supp. 2d 658 (D. Md. 2000)......................................................32

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...............................................................................21

*Calagaz v. Calhoon*,
   309 F.2d 248 (5th Cir. 1962) ......................................................... 24, 27

*CGHH, LLC v. Cesta Punta Deportes, S.A. de C.V.*,
   2006 WL 8430970 (N.D. Ga. Mar. 31, 2006) ......................................13

*City of E. St. Louis v. Cir. Ct. for the Twentieth Jud. Cir., St. Clair Cnty., Ill.*,
   986 F.2d 1142 (7th Cir. 1993) .................................................................3

*Cockrum v. Donald J. Trump for President, Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018)......................................................18

*Cohen v. Facebook*,
   252 F. Supp. 3d 140 (E.D.N.Y. 2017) ..................................................17

*Coniglio v. Highwood Servs., Inc.*,
   60 F.R.D. 359 (W.D.N.Y. 1972) ..................................................... 28, 29

*Constitutionality of Closing the Palestine Information Office, an Affiliate of the Palestine Liberation Organization*,
   11 Op. O.L.C. 104 (1987)........................................................................6

*Creek v. Village of Westhaven*,
   1987 WL 5429 (N.D. Ill. Jan. 15, 1987)..................................................3

*Curley v. Brignoli, Curley & Roberts Assoc.*,
915 F.2d 81 (2d Cir. 1990) .................................................... 25, 27, 28, 29, 30, 32

*Ditter v. Subaru Corp.*,
2022 WL 889102 (D. Colo. Mar. 25, 2022) ................................................. 16, 20

*DRFP v. Republica Bolivariana de Venezuela*,
945 F. Supp. 2d 890 (S.D. Ohio 2013) .................................................................4

*Eastman v. Union Pac. R. Co.*,
493 F.3d 1151 (10th Cir. 2007) ...........................................................................32

*Estate of Parsons v. Palestinian Auth.*,
651 F.3d 118 (D.C.Cir. 2011).......................................................................42, 45

*Flanagan v. Islamic Republic of Iran*,
190 F. Supp. 3d 138 (D.D.C. 2016).....................................................................37

*Flory v. United States*,
79 F.3d 24 (5th Cir. 1996) ...................................................................................12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)............................................................... 16, 17, 20, 21, 22,

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
582 F.3d 393 (2d Cir. 2009) .................................................................................4

*Gill*,
893 F.Supp.2d ......................................................................................................42

*Goldberg v. UBS*,
660 F. Supp. 2d 410 (E.D.N.Y. 2009) .............................................................1, 22

*Gridiron Steel Co. v. Jones & Laughlin Steel Corp.*,
361 F.2d 791 (6th Cir. 1966) ...............................................................................32

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ................................................................ 47, 48, 50

4873-6555-8836, v. 1

**0858**

*Havel v. Honda Motor Eur. Ltd.*,
2014 WL 4967229 (S.D. Tex. Sept. 30, 2014) ............................................. 18, 19,

*Hood v. Am. Auto Care, LLC*,
21 F.4th 1216 (10th Cir. 2021) ............................................................26

*Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*,
203 F.3d 835 (10th Cir. 2000) ..............................................................14

*Hunter v. Serv-Tech, Inc.*,
2009 WL 2858089 (E.D. La. Aug. 28, 2009) ......................................................13

*In re Nexus 6P Prod. Liab. Litig.*,
2018 WL 827958 (N.D. Cal. Feb. 12, 2018) ......................................................18

*In re Parmalat Sec. Litig.*,
474 F. Supp. 2d 547 (S.D.N.Y. 2007) ......................................................... 44, 45

*In re Parmalat Sec. Litig.*,
594 F. Supp. 2d 444 (S.D.N.Y. 2009) ..............................................................46

*In re Scott Cable Commc'ns, Inc.*,
259 B.R. 536 (D. Conn. 2001) ..............................................................3

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ............................................................. 10,

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873, (2011) ..............................................................11

*Jenco v. Islamic Republic of Iran*,
154 F. Supp. 2d 27 (D.D.C. 2001) ..............................................................44

*Kaplan v. Lebanese Canadian Bank*,
405 F. Supp. 3d 525 (S.D.N.Y. 2019) ......................................................... 38, 42

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ..............................................................41

5

*Kerney v. Fort Griffin Fandangle Ass'n, Inc.*,
 624 F.2d 717 (5th Cir. 1980) ...............................................................27

*Klinghoffer*,
 739 F.Supp. .........................................................................................33

*Knox v. PLO*,
 306 F. Supp. 2d 424 (S.D.N.Y. 2004) ....................................................2

*Leibovitch v. Syrian Arab Republic*,
 25 F. Supp. 3d 1071 (N.D. Ill. 2014) ....................................................51

*Linde v. Arab Bank*,
 882 F.3d 314 (2d Cir. 2018) ................................................................36

*Livnat v. PA*,
 851 F.3d 45 (D.C. Cir. 2017)........................................... 7, 8, 20, 21, 22,

*Luna v. Bank of Am. NA*,
 2015 WL 11120875 (N.D. Tex. Nov. 9, 2015) ....................................39

*Lyngaas v. Ag*,
 992 F.3d 412 (6th Cir. 2021) ...............................................................26

*Marks v. U.S.*,
 430 U.S. 188 (1977)............................................................................12

*Miller v. Arab Bank*,
 372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...................................................36

*Mohamad v. PA*,
 566 U.S. 449 (2012)...................................................................... 45, 46

*Mohamad v. Rajoub*,
 634 F.3d 604 (D.C. Cir. 2011)............................................................46

*Molock v. Whole Foods Mkt. Grp., Inc.*,
 952 F.3d 293 (D.C. Cir. 2020)............................................................26

6

*Murray v. Sevier*,
   156 F.R.D. 235 (D. Kan. 1994) .................................................. 27, 28, 29, 30, 32

*Mussat v. Enclarity*,
   362 F. Supp. 3d 468 (N.D. Ill. 2019) ...................................................................12

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ................................................................................26

*New Hampshire v. Maine*,
   121 S. Ct. 1808 (2001) .........................................................................................32

*Northbrook Excess & Surplus v. Med. Malpractice Joint Underwriting Ass'n of*
   *Massachusetts*,
   900 F.2d 476 (1st Cir. 1990) ......................................................................... 26, 27

*Oklahoma v. Int'l Registration Plan, Inc.*,
   455 F.3d 1107 (10th Cir. 2006) .............................................................................3

*Owens v. BNP Paribas, S.A.*,
   897 F.3d 266 (D.C. Cir. 2018) .............................................................................41

*Parsons v. PA*,
   715 F. Supp. 2d 27 (D.D.C. 2010) .......................................................................45

*Patrician Towers Owners, Inc. v. Fairchild*,
   513 F.2d 216 (4th Cir. 1975) ...............................................................................29

*Peay v. BellSouth Med. Assistance Plan*,
   205 F.3d 1206 (10th Cir. 2000) ...........................................................................22

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   294 F.3d 82 (D.C. Cir. 2002) .............................................................................7, 8

*Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*,
   59 F. Supp. 2d 310 (D.P.R. 1999) .....................................................................4, 5

*Republic of Argentina v. Weltover*,
   504 U.S. 607 (1992) ............................................................................................ 3-4

*Resolution Trust Corp. v. Deloitte & Touche*,
 822 F. Supp. 1512 (D. Colo. 1993)................................................................. 25, 33

*Rothstein v. UBS AG*,
 708 F.3d 82 (2d Cir. 2013) .................................................................................41

*Rux v. Republic of Sudan*,
 461 F.3d 461 (4th Cir. 2006) ..............................................................................37

*Salt Lake City Corp. v. Sekisui SPR Americas, LLC*,
 2018 WL 4688356 (D. Utah Sept. 28, 2018).......................................................12

*Sattar v. United States*,
 314 F. Supp. 2d 279 (S.D.N.Y. 2004) .................................................................37

*Schansman v. Sberbank of Russia*,
 565 F. Supp. 3d 405 (S.D.N.Y. 2021) .................................................................38

*Sclafani v. Air & Liquid Sys. Corp.*,
 2013 WL 12119556, n.9 (C.D. Cal. Mar. 20, 2013)............................................32

*Sembach v. McMahon Coll., Inc.*,
 86 F.R.D. 188 (S.D. Tex. 1980)..................................................................... 25, 28

*Shatsky v. PLO*,
 955 F.3d 1016 (D.C. Cir. 2020)............................................................. 20, 21, 22

*Shatsky v. PLO*,
 2017 WL 2666111 (D.D.C. June 20, 2017)................................................. 40, 41

*Shatsky v. PLO*,
 2022 WL 826409 (S.D.N.Y Mar. 18, 2022)........................ 6, 7, 9, 10, 11, 12, 15

*Sokolow v. PLO*,
 60 F. Supp. 3d 509 (S.D.N.Y. 2014) .......................................... 30, 31, 32, 43, 45

*Sokolow v. PLO*,
 2015 WL 10852003 (S.D.N.Y. Oct. 1, 2015).......................................................1

4873-6555-8836, v. 1

**0862**

*Sokolow v. PLO*,
    --- F.Supp.3d ----, 2022 WL 719261 (S.D.N.Y. Mar. 10, 2022) ............ 10, 11, 12

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) .................................................................................. 3, 4, 5

Southern District of New York agreed the PSJVTA is unconstitutional. *Fuld v. PLO*,
    578 F. Supp. 3d 577 (S.D.N.Y. 2022) .................................................................. 10

*Taha v. Bucks Cnty. Pennsylvania*,
    172 F. Supp. 3d 867 (E.D. Pa. 2016) ...................................................................... 3

*Tinley v. Poly-Triplex Techs., Inc.*,
    2009 WL 812150 (D. Colo. Mar. 26, 2009) ........................................................ 14

*Titan Feeding, LLC v. Corey Cattle Company, LLC*,
    2022 WL 4182458 (D. Colo. Sept. 13, 2022) .......................................... 18, 19, 22

*Toumazou v. Turkish Republic of Northern Cyprus*,
    No. 14-7170 (D.C. Cir. Jan 15, 2016) .................................................................... 8

*Ungar v. PA*,
    315 F. Supp. 2d 164 (D.R.I. 2004) ................................................................ 2, 33

*United States v. Kandic*,
    2022 WL 1266431, (E.D.N.Y. Apr. 28, 2022) .................................................... 37

*V&A Collection, LLC v. Guzzini Properties Ltd.*,
    46 F.4th ----, 2022 WL 3589143 (2d Cir. Aug. 23, 2022) ............................. 10, 11

*Virgin Islands v. Miller*,
    2010 WL 1790213 (V.I. Super. May 4, 2010) ...................................................... 4

*Waldman v. PLO*
    835 F.3d 317 (2d Cir. 2016) ................................................................... 2, 7, 8

*Waldman, Livnat, Klieman v. PA*,
    923 F.3d 1115 (D.C. Cir. 2019) ................................................................ 20, 22

9

0863

*Weiss v. Nat'l Westminster Bank*,
    768 F.3d 202 (2d Cir. 2014) ..................................................................36

*Wenz v. Memery Crystal*,
    55 F.3d 1503 (10th Cir. 1995) ....................................................... 17, 20

*White-Ruiz v. City of New York*,
    1996 WL 744892 (S.D.N.Y. Dec. 31, 1996) .........................................12

*Wultz v. Islamic Republic of Iran*,
    755 F.Supp.2d 1 (D.D.C. 2010).................................................... 42, 51

*WW, LLC v. Coffee Beanery, Ltd.*,
    2012 WL 3728184 (D. Md. Aug. 27, 2012) .........................................14

## **Statutes**

18 U.S.C. § 2331 ....................................................... 1, 19, 21, 34

18 U.S.C. § 2333 ....................................... 19, 34, 36, 42, 46, 47, 50, 51

18 U.S.C. § 2334 .......................................................... 2, 9, 23

18 U.S.C. § 2339 ............................................................ 36, 37

U.S. Const. Amend. V..................................................................3

## **Rules**

Fed. R. Civ. P. 4 .......................................................................2

Fed. R. Civ. P. 12 ............................................................. passim

Fed. R. Civ. P. 17 ....................................................................27

Fed. R. Civ.P. 23 ............................................................. passim

Fed. R. Evid. 801(d)(2) .............................................................32

4873-6555-8836, v. 1

**0864**

## **<u>Other Authorities</u>**

7C Fed. Prac. & Proc. Civ. § 1861 (3d ed.) ........................................... 35, 40, 42, 44

8B Wright, Miller & Marcus, § 2180 (3d ed. 2010) ................................................. 44

*Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*,
  81 Harv. L. Rev. 356 ................................................................ 37, 40, 41

*The History of the Modern Class Action, Part I: Sturm Und Drang, 1953-1980*,
  90 WASH. U. L. REV. 587 (2013) ........................................................ 36

Wright & Miller § 1867 ............................................................. 36, 38, 41

**0865**

DATED this 20th day of September, 2022.

*s/ Daniel K. Calisher*
Daniel K. Calisher
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiffs*

*s/ Jordan Factor*
Jordan Factor
Allen Vellon Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-534-4499
Email: jfactor@allen-vellone.com
*Attorneys for Plaintiffs*

*s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-233-7164
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*

4873-6555-8836, v. 1

**0866**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2022, a true and correct copy of the foregoing **TABLE OF AUTHORITIES SUPPLEMENT TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(2) AND RULE 12(b)(6)** was electronically served upon all counsel of record via *ECF*.

*s/ Daniel K. Calisher*

4873-6555-8836, v. 1

**0867**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**SHELLEY LEVINE**, et al.,

Plaintiffs,

   v.

**THE PALESTINE LIBERATION ORGANIZA-
TION** and **THE PALESTINIAN AUTHORITY**,

Defendants.

Case No. 1:21-cv-03043-RM-STV

INTERVENOR UNITED STATES OF AMERICA'S
BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF
THE PROMOTING SECURITY AND JUSTICE
FOR VICTIMS OF TERRORISM ACT OF 2019

**0868**

**Table of Contents**

Introduction ...................................................................................................1

**Statutory Background** ...............................................................................3

**Argument** ..................................................................................................7

    I.   The PSJVTA Is Consistent with Fair Play and Substantial Justice. ......................7

        A.   Consent Provided by the PSJVTA Is Knowing and Voluntary..........................7

        B.   The Activities Deemed Consent To Personal Jurisdiction under PSJVTA Have a Connection to the United States. .......................................10

        C.   The PSJVTA's Consent Provisions Advance Federal Interests and Must Be Accorded Deference. ............................................................11

    II.   Consent Can Be Valid Even Without an Exchange of Benefits. ....................13

    III.   District Courts That Found the PSJVTA Unconstitutional Were Wrong. ...........16

**Conclusion** .............................................................................................19

**0869**

TABLE OF AUTHORITIES

**Cases**

*Ayers v. Tanami Trading Corp.*,
 No. 2:08-CV-00472-DB, 2009 WL 1362402 (D. Utah May 14, 2009) .................................. 9, 10, 11

*Bank Markazi v. Peterson*,
 578 U.S. 212 (2016) .................................................................................................................... 13

*Bristol-Myers Squibb v. Superior Court of Cal.*,
 137 S. Ct. 1773 (2017) .................................................................................................................. 9

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ............................................................................................................*passim*

*Center for Const. Rights v. CIA*,
 765 F.3d 161 (2d Cir. 2014) ........................................................................................................ 13

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
 527 U.S. 666 (1999) ............................................................................................................... 17, 18

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) .................................................................................................................. 4, 8

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
 722 F.3d 81 (2d Cir. 2013) ............................................................................................................ 7

*Estate of Klieman ex rel. Kesner v. PA*,
 923 F.3d 1115 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020) .................................... 5, 11, 18

*Estate of Klieman v. PA*,
 82 F. Supp. 3d 237 (D.D.C. 2015) ................................................................................................. 4

*Estate of Klieman v. PA*,
 467 F. Supp. 2d 107 (D.D.C. 2006) ............................................................................................... 4

*Estates of Ungar ex rel. Strachman v. PA*,
 153 F. Supp. 2d 76 (D.R.I. 2001) .................................................................................................. 4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021) .................................................................................................................. 7

*Fuld v. PLO*,
 578 F. Supp. 3d 577 (S.D.N.Y. 2022),
 *appeal filed*, No. 22-76 (2d Cir. Jan. 13, 2022),
 *appeal filed*, No. 22-496 (2d Cir. Mar. 8, 2022) .................................................................. 16, 17, 18

**0870**

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011) .................................................................................................4

*Hanson v. Denckla,*
   357 U.S. 235 (1958) .................................................................................................8

*Hess v. Pawloski,*
   274 U.S. 352 (1927) ...............................................................................................16

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) ...................................................................................................13

*In re Mid-Atlantic Toyota Antitrust Litig.,*
   525 F. Supp. 1265 (D. Md. 1981) .........................................................................14

*Ins. Cor. of Ireland v. Compagnie des Bauxites de Guinee ("Bauxites"),*
   456 U.S. 694 (1982) .................................................................................1, 7, 14, 18

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,*
   326 U.S. 310 (1945) ............................................................................................ 7, 9

*J. McIntyre Mach., Ltd. v. Nicastro,*
   564 U.S. 873 (2011) ...............................................................................................17

*Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro,*
   937 F.2d 44 (2d Cir. 1991) ......................................................................................5

*Knox v. PLO,*
   248 F.R.D. 420 (S.D.N.Y. 2008) .............................................................................4

*Kulko v. Superior Court of Cal.,*
   436 U.S. 84 (1978) ...................................................................................................8

*Leonard v. USA Petroleum Corp.,*
   829 F. Supp. 882 (S.D. Tex. 1993) ........................................................................14

*Livnat v. PA,*
   851 F.3d 45 (D.C. Cir. 2017) .............................................................................. 4, 18

*Moran v. Burbine,*
   475 U.S. 412 (1986) ...............................................................................................15

*New York v. Quarles,*
   467 U.S. 649 (1984) ...............................................................................................15

*Oregon v. Elstad,*
   470 U.S. 298 (1985) ...............................................................................................15

*Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.,*
   243 U.S. 93 (1917) ..................................................................................16

*Peay v. BellSouth Med. Assistance Plan,*
   205 F.3d 1206 (10th Cir. 2000) ......................................................... 9, 11

*Roell v. Withrow,*
   538 U.S. 580 (2003) ................................................................................14

*Ruggieri v. General Well Serv. Inc.,*
   535 F. Supp. 525 (D. Colo. 1982)...........................................................16

*Schneckloth v. Bustamonte,*
   412 U.S. 218 (1973) ................................................................................15

*Shaffer v. Heitner,*
   433 U.S. 186 (1977) ..................................................................................9

*Shatsky v. PLO,*
   No. 18-CV-12355 (MKV), 2022 WL 826409 (S.D.N.Y. Mar. 18, 2022).................................... 17, 18

*Sokolow v. PLO,*
   No. 04 Civ. 397, 2011 WL 1345086 (S.D.N.Y. Mar. 30, 2011),
   *vacated sub nom. Waldman v. PLO*, 835 F.3d 317 (2d. Cir. 2016) ......................................... 3-4

*Sokolow v. PLO,*
   No. 04 Civ. 397 (GBD), 2022 WL 719261 (S.D.N.Y. Mar. 10, 2022),
   *appeal filed*, No. 22-1060 (2d. Cir. May 9, 2022) ......................................................17

*United States v. O'Brien,*
   926 F.3d 57 (2d Cir. 2019)......................................................................15

*United States v. Taylor,*
   745 F.3d 15 (2d Cir. 2014).......................................................................15

*United States v. Velez,*
   354 F.3d 190 (2d Cir. 2004).....................................................................15

*Waldman v. PLO,*
   835 F.3d 317 (2d Cir. 2016)............................................................... 4, 18

*Waldman v. PLO,*
   925 F.3d 570 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*, 140 S. Ct. 2714 (2020).........................5

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ..................................................................................3

*Wellness Int'l Network v. Sharif,*
   575 U.S. 665 (2015) .................................................................................................... 7, 9, 14

*WorldCare Ltd. Corp. v. World Ins. Co.,*
   767 F. Supp. 2d 341 (D. Conn. 2011) .................................................................................17


## U.S. Constitution

U.S. Const. Art. I, § 8 ...........................................................................................................9

U.S. Const. Art. II, § 2 ..........................................................................................................9


## Statutes

18 U.S.C. § 2334(e) ........................................................................................................*passim*

22 U.S.C. § 5201 ...................................................................................................................12

22 U.S.C. § 5202 ............................................................................................................ 4, 5, 12

*Anti-Terrorism Act of 1992* ("ATA"),
   18 U.S.C. § 2333(d)(2) ....................................................................................................*passim*

*Anti-Terrorism Clarification Act of 2018* ("ATCA"),
   Pub. L. No. 115-253, 132 Stat. 3183 (2018) .................................................................*passim*

*Department of State, Foreign Operations, & Related Programs Appropriations Act of, 2022,*
   Pub. L. No. 117-103, 136 Stat. 49 (2022) ..........................................................................12

*Federal Courts Administration Act of 1992,*
   Pub. L. No. 102-572, 106 Stat. 4506 (1992) ........................................................................3

*Middle East Peace Facilitation Act of 1993*
   Pub. L. No. 103-125, 107 Stat. 1309 (1993) .......................................................................12

*Palestinian Ant-Terrorism Act of 2006,*
   Pub. L. No. 109-446, 120 Stat. 3318 (2006) ......................................................................12

*Promoting Security & Justice for Victims of Terrorism Act of 2019* ("PSJVT"),
   Pub. L. No. 116-94, 133 Stat. 2534 (2020) ...................................................................*passim*

*Taylor Force Act,*
   Pub. L. No. 115-141, 132 Stat. 348 (2018) ........................................................................13

**<u>Legislative Materials</u>**

166 Cong. Rec. S627 (daily ed. Jan. 28, 2020) (statement of Sen. Leahy)..............................................11

165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford and Sen. Grassley). 6, 11

*Antiterrorism Act of 1992 ("1992 House Report")*,
    H.R. Rep. No. 1040, 102d Cong., 2d Sess. (1992) ............................................................................. 3 11

*Anti-Terrorism Clarification Act of 2018 ("ATCA")*,
    H.R. Rep. No. 858, 115th Cong., 2d Sess. (2018) ...............................................................................10

*Federal Courts Administration Act of 1992*,
    S. Rep. No. 342, 102d Cong., 2d Sess. (1992) ......................................................................................1

**<u>Rules</u>**

Fed. R. Civ. P. 12(h) ...................................................................................................................................18

### Introduction

The United States respectfully submits this memorandum in support of the constitutionality of 18 U.S.C. § 2334(e), as amended by the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA"). Through several statutes over four decades, in particular the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. § 2333(d)(2), Congress has provided civil damages remedies for United States nationals harmed by acts of international terrorism. The PSJVTA is the most recent of Congress's efforts to "open[] the courthouse door to victims of international terrorism," S. Rep. No. 102-342, at 45 (1992), to allow victims to vindicate their interests in federal court and receive just compensation for their injuries. After judicial decisions in the Second and D.C. Circuits held that defendants in this case, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), were not subject to personal jurisdiction in U.S. courts, Congress enacted two statutes—the Anti-Terrorism Clarification Act of 2018 ("ATCA") and the PSJVTA—that detailed actions taken by the PA, the PLO, or affiliates or successor entities, that would be deemed consent to personal jurisdiction only for civil cases under the ATA.

Assuming for the purposes of defending the constitutionality of the PSJVTA that the PA and PLO have due process rights under the Fifth Amendment, an issue which this Circuit has not addressed, the PSJVTA provides a constitutional basis for personal jurisdiction. The Supreme Court has long recognized that parties may consent to personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee ("Bauxites")*, 456 U.S. 694, 703 (1982) (confirming that a defendant may consent to a court's exercise of personal jurisdiction through a "variety of legal arrangements.").

The PSJVTA's jurisdictional provisions are consistent with the constitutional requirements of due process under the Fifth Amendment because they allow for knowing and voluntary consent.

**0875**

Congress gave "fair warning" to defendants "that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (alteration in original). PSJVTA detailed what activities would be considered consent: payments made to family members or designees of those who injure or kill Americans in terrorist attacks and certain activities of the PA or PLO in the United States. The Act also provided time for the PA and PLO to cease those specific activities before consenting to jurisdiction.[1]

Asserting personal jurisdiction based on deemed consent in the PSJVTA is also fair and reasonable. The statute applies only to PA/PLO and their affiliates—non-sovereign foreign entities that have historically been the subject of conditions placed by Congress and the Executive Branch on their presence and activities in the United States.[2] In our constitutional system, the political branches are responsible for foreign relations, and Congress has broad discretion to legislate in a range of areas concerning foreign affairs. Congress's enactment, and the President's signature into law of the PSJVTA, are well in accord with the political branches' broad power to act in the field of foreign

---

[1] The government understands that the defendants have conceded that they have made certain payments described in 18 U.S.C. § 2334(e)(1)(A). *See* Mot. to Dismiss, ECF No. 58, at 5, n.4 ("MTD") ("Defendants do not contest they have made at least one such payment after the PSJVTA's effective date"), but they continue to contest that certain "U.S. activities" satisfy the factual predicates required. *See id.* at 11 n.7. The government takes no position on whether any of the statute's factual predicates have been satisfied; rather, assuming the Court finds that one or both of those predicates has been satisfied, the government urges that the PSJVTA is constitutional. *See also note 3 infra.*

[2] The PLO has been recognized by the United Nations as the representative of the Palestinian people; the PA was created pursuant to the 1993 Oslo Accords to exercise interim governance authority for the Palestinian people in Gaza and the West Bank. The United States does not recognize either the Palestinian Authority or the Palestine Liberation Organization as a sovereign government. As a matter of historical practice, Congress and the Executive Branch have historically worked together to determine U.S. policies with respect to those entities. At present the United States is cooperating on training of PA security forces, a key partner of the United States and Israel in stabilizing the West Bank and combating terrorism. The United States is also engaged with the PA in discussions on how to reform or end the prisoner and "martyr" payment system that underlies one of the bases for deemed personal jurisdiction under the PSJVTA.

affairs, a power repeatedly invoked in addressing the relationship of the United States with the PA and PLO, and in addressing issues of international terrorism that harms U.S. nationals.

If the Court reaches the constitutional question,[3] it should hold that 18 U.S.C. § 2334(e), as amended by the PSJVTA's deemed consent provisions, is constitutional.

### Statutory Background

In 1992, in order "to develop a comprehensive legal response to international terrorism," Congress enacted the ATA, creating a civil damages remedy for United States nationals harmed by an act of international terrorism committed by a foreign terrorist organization.  H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House Report"); *see* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, title X, § 1003(a), 106 Stat. 4506, 4521–24 (1992) (adding 18 U.S.C. §§ 2331, 2333–2338).  The ATA allows United States nationals to sue "any person who aids and abets, by knowingly providing substantial assistance, or who conspires [to commit] an act of international terrorism."  18 U.S.C. § 2333(d)(2).  Congress wanted to "open[] the courthouse door to victims of international terrorism" by "extend[ing] the same jurisdictional structure that undergirds the reach of American criminal law to the civil remedies that it defines."  S. Rep. 102-342, at 45.

In the ensuing years, courts found personal jurisdiction over the PLO and the PA in ATA cases, holding that "the totality of activities in the United States by the PLO and the PA justifies the exercise of general personal jurisdiction."  *Sokolow v. PLO*, No. 04 Civ. 397, 2011 WL 1345086, at *3

---

[3] Plaintiffs allege many grounds for personal jurisdiction.  *See* Am. Compl., ECF No. 50, ¶¶ 7–16.  If the Court finds that grounds other than the PSJVTA exist for personal jurisdiction, the Court need not and should not opine on the constitutionality of the Act.  *See, e.g., Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) ("courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'" (citation omitted)).

(S.D.N.Y. Mar. 30, 2011), *vacated sub nom. Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016); *accord, e.g., Estates of Ungar ex rel. Strachman v. PA*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001); *Knox v. PLO*, 248 F.R.D. 420, 427 (S.D.N.Y. 2008); *Estate of Klieman v. PA*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006).

However, in 2014, the Supreme Court clarified that general personal jurisdiction was appropriate under the Due Process Clause of the Fourteenth Amendment only when the defendant was "essentially at home in the forum," and explained that for non-natural persons, "at home" was usually limited to the place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Courts applying the *Daimler* standards to pending ATA cases concluded that the PA and PLO were not "at home" in the United States and thus not subject to general jurisdiction. *See Waldman*, 835 F.3d at 337; *Livnat v. PA*, 851 F.3d 45, 48–52 (D.C. Cir. 2017); *Estate of Klieman v. PA*, 82 F. Supp. 3d 237, 246 (D.D.C. 2015). Courts also did not find specific personal jurisdiction because "these [terrorist] actions, as heinous as they were, were not sufficiently connected to the United States to provide specific personal jurisdiction in the United States." *Waldman,* 835 F.3d at 337; *accord Livnat*, 851 F.3d at 57; *Estate of Klieman*, 82 F. Supp. 3d at 248–49.

Congress responded in 2018 by enacting the ATCA. Section 4 of the ATCA provides that "for purposes of any civil action" under the ATA, "a defendant shall be deemed to have consented to personal jurisdiction in such civil action if, . . . the defendant," after January 31, 2019, either accepts certain forms of foreign assistance or maintains an office within the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202 (which prohibits the PLO from maintaining an office in the United States). ATCA Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (2018) (adding 18 U.S.C. § 2334(e)).

After the ATCA's enactment, the PA and PLO structured their affairs to avoid consenting to jurisdiction. On December 26, 2018, the PA informed the Secretary of State that it was declining to

**0878**

accept the forms of foreign assistance listed in the ATCA (the PLO does not receive U.S. foreign assistance). The PLO continues to occupy its United Nations Observer Mission in New York, but that does not require any waiver or suspension of 22 U.S.C. § 5202, so it did not operate as consent under the ATCA. *See Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991). Since prior to the enactment of the ATCA, the PLO has not operated any other office in the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202.

Because the PLO and PA had restructured their activities, the factual predicates to consent under the ATCA were not satisfied and the D.C. and Second Circuits continued to find no general or specific personal jurisdiction over the PA/PLO in ATA cases. *See Estate of Klieman ex rel. Kesner v. PA*, 923 F.3d 1115, 1128 (D.C. Cir. 2019), *vacated*, 140 S. Ct. 2713 (2020). Courts held "that plaintiffs have not made an adequate showing that any of [the ATCA's] factual predicates has been triggered," and so those courts did not reach the question of whether the consent-to-jurisdiction provisions of the ATCA were constitutional. *Id.* at 1128; *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019), *vacated sub nom. Sokolow v. PLO*, 140 S. Ct. 2714 (2020)

The plaintiffs in those cases filed petitions for certiorari. While those petitions were pending, the PSJVTA was enacted. PSJVTA, Pub. L. No. 116-94, § 903, 133 Stat. 2534, 3082 (2019). Among other things, the PSJVTA superseded the personal jurisdiction provisions in the ATCA and removed predicates related to accepting foreign aid.[4] The Act defined "defendant" to mean only "the Palestinian Authority," "the Palestine Liberation Organization," or their affiliates or successors. *Id.* § 903(c)(1)(A), 133 Stat. 3085–86.

---

[4] The Act also included provisions that are not at issue here, aimed at facilitating the resolution of ATA claims. *Id.* § 903(b), 133 Stat. 3028. The portions of the PSJVTA challenged here are the jurisdictional amendments in § 903(c), which this brief refers to as the PSJVTA.

The PSJVTA substituted new factual predicates for conduct that is deemed consent to personal jurisdiction for ATA civil actions.  The Act first focused on the practice of paying designees of terrorists serving sentences in Israeli prisons, or to families of those who died committing an act of terrorism, when such acts of terrorism involve U.S. victims.  A defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases if, after April 18, 2020, it "makes any payment, directly or indirectly—

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or

> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual[.]"

18 U.S.C. § 2334(e)(1)(A).

The PSJVTA next established what PLO or PA activities within the United States would be deemed consent to personal jurisdiction in ATA civil actions.  A defendant "shall be deemed to have consented to personal jurisdiction" if after January 4, 2020, it maintains, establishes, or procures any office in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority" outside limited exceptions.  18 U.S.C. § 2334(e)(1)(B)(i)-(iii), (e)(3).  As the PSJVTA's lead sponsor explained generally, the Act "allow[s] the PA/PLO to conduct a very narrow scope of activities on U.S. soil—such as activities pertaining to official business at the United Nations, engagements with U.S. officials necessary to our national interest, and legal expenses related to adjudicating or resolving claims filed in U.S. courts—without consenting to personal jurisdiction in civil ATA cases."  165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford).

**0880**

## Argument

The United States submits this brief to explain why, assuming the PA and PLO have due process rights,[5] the PSJVTA's provisions that certain actions will be considered consent to personal jurisdiction in ATA civil actions are constitutional.

I.   The PSJVTA Is Consistent with Fair Play and Substantial Justice.

The PSJVTA provides a constitutional mechanism for the PA and PLO to consent to personal jurisdiction.  "[T]he test for personal jurisdiction requires that the maintenance of the suit not offend traditional notions of fair play and substantial justice." *Bauxites*, 456 U.S. at 702–03 (some quotation marks omitted) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316–17 (1945)); *accord Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *Burger King*, 471 U.S. at 476–77.  If a defendant's consent is "knowing and voluntary," the court's exercise of jurisdiction is consistent with due process.  *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015).  Personal jurisdiction based on consent "does not offend due process" as long as the consent was not "unreasonable and unjust."  *Burger King*, 471 U.S. at 472 n.14 (citation omitted); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

A.   Consent Provided by the PSJVTA Is Knowing and Voluntary.

A defendant may consent to a court's exercise of personal jurisdiction through a "variety of legal arrangements."  *Bauxites*, 456 U.S. at 703; *accord Burger King*, 471 U.S. at 472 n.14.  The PSJVTA is one such arrangement that is consistent with due process.

The PSJVTA sets out a reasonable "legal arrangement[ ]" through which Congress specified a defendant consents to personal jurisdiction, *Bauxites*, 456 U.S. at 703, and gives potential defendants

---

[5] The Tenth Circuit has not previously determined whether the PA and PLO, as non-sovereign foreign entities, are entitled to due process rights under the Fifth Amendment.

"fair warning that a particular activity may subject [them] to the jurisdiction" of U.S. courts, *Burger King*, 471 U.S. at 472 (citation omitted). The PSJVTA expressly states what actions will cause a defendant to be "deemed to have consented" to personal jurisdiction for the limited purpose of civil ATA claims. 18 U.S.C. § 2334(e). The Act gives the defendants fair warning about what conduct will subject them to personal jurisdiction for certain terrorism-related claims, and also provides a reasonable period to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler*, 571 U.S. at 139 (quoting *Burger King*, 471 U.S. at 472).[6]

The PA/PLO argue the PSJVTA is not consistent with due process because it relies on conduct that has been found to be insufficient to independently support a finding of specific or general personal jurisdiction. MTD, at 6. That argument conflates separate jurisdictional doctrines and conflicts with a long-standing body of Supreme Court precedent consistently recognizing that consent can be a stand-alone basis for personal jurisdiction, regardless of whether specific or general jurisdiction have otherwise been established. *Burger King*, 471 U.S. at 472. The Supreme Court has, for example, repeatedly suggested a legislature can enact a special jurisdictional statute (whether or not labeled "consent") that goes beyond conventional general and specific jurisdiction, but that is nonetheless consistent with *International Shoe*'s overall requirements of fairness and reasonableness. *See Hanson* v. *Denckla*, 357 U.S. 235, 252 (1958) (explaining the result in an earlier case as having been based on "special legislation" enacted by the forum state); *Kulko* v. *Superior Court of Cal.*, 436 U.S. 84, 98 (1978)

---

[6] The Act has a 120-day period before consent will be deemed from payments related to terrorism that killed or injured a U.S. national, 18 U.S.C. § 2334(e)(1)(A), and a fifteen-day period for non-excepted activities on behalf of the PA or PLO while physically in the United States, *id.* § 2334(e)(1)(B).

("California has not attempted to assert any particularized interest in trying such cases in its courts by, e.g., enacting a special jurisdictional statute"); *Shaffer* v. *Heitner*, 433 U.S. 186, 216 (1977) ("[A]ppellants had no reason to expect to be haled before a Delaware court. Delaware, unlike some States, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State"); *see also* U.S. Br. at 33 n.6, *Bristol-Myers Squibb* v. *Superior Court of Cal.*, 137 S. Ct. 1773 (2017) (No. 16-466) (citing cases to suggest that a state may, in some circumstances, "craft a well-defined rule" that "reaches beyond the circumstances in which the exercise of specific jurisdiction has been sustained by this Court").[7]

Exercising personal jurisdiction based on the PSJVTA's deemed consent provisions ultimately would not be unfair or unreasonable. *Burger King*, 471 U.S. at 473; *see also Int'l Shoe*, 326 U.S. at 320 (exercising personal jurisdiction satisfies due process if it is "reasonable and just according to our traditional conception of fair play and substantial justice"); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (noting that the assertion of personal jurisdiction should comport with fair play and substantial justice); *Ayers v. Tanami Trading Corp.*, No. 2:08-CV-00472-DB, 2009 WL 1362402, at *5 (D. Utah May 14, 2009) (courts will "inquire into the reasonableness of conferring jurisdiction where the basis of that jurisdiction lies in the purported consent of the defendant."). Since the PSJVTA's enactment, the PA and PLO have known (or should have known) what activities will be deemed consent and have had the opportunity to voluntarily choose whether or not to continue those activities. *Wellness Int'l*, 575 U.S. at 684–85. Under the circumstances here, if they engaged in

---

[7] Furthermore, cases describing state power under the Fourteenth Amendment's Due Process Clause do not limit Congress's authority under the Fifth Amendment. Congress and the Executive have unique constitutional responsibilities to manage international relations that have no State analog. *See* U.S. Const. Art. I, § 8; id. Art. II, § 2.

**0883**

those activities, they have validly consented to personal jurisdiction for the limited purpose of ATA civil actions.

B. The Activities Deemed Consent To Personal Jurisdiction under PSJVTA Have a Connection to the United States.

The activities that are deemed consent under the PSJVTA are also fair and reasonable because the specified actions have a close relationship with the United States. *See Ayers*, 2009 WL 1362402, at *6. The first provision conditions certain PLO or PA activities within the borders of the United States on their consent to personal jurisdiction for a narrow set of terrorism-related civil claims. *See* H.R. Rep. No. 115-858, at 7 (2018) (committee report in support of ATCA) (explaining that "Congress has repeatedly tied [the PA's and PLO's] continued receipt of these privileges [including presence in the United States] to their adherence to their commitment to renounce terrorism," and that it is appropriate to deem the continued acceptance of these benefits to be "consent to jurisdiction in cases in which a person's terrorist acts injure or kill U.S. nationals").

Actions under the second prong, payments that are deemed consent under § 2334(e)(1)(A), also have a nexus to the interests of the United States because only payments made in relation to an act of terrorism killing or injuring a U.S. national are considered consent under the PSJVTA. If Defendants make payments described in the PSJVTA after the effective date to individuals (or their family members) who harmed or killed Americans, the connection between Defendants' proscribed activity (payments) and the United States (harm to an American) is sufficient to satisfy due process. The PSJVTA gave Defendants 120 days to halt payments related to acts of terrorism that harmed or killed U.S. nationals. 18 U.S.C. § 2334(e)(1)(A).[8]

---

[8] Other courts analyzing specific personal jurisdiction—a separate doctrine—have focused on the facts of the underlying terrorist attack and found that the American nationality of a victim

C.   The PSJVTA's Consent Provisions Advance Federal Interests and Must Be Accorded Deference.

The PSJVTA is also fair and reasonable because it advances important federal interests. *Ayers*, 2009 WL 1362402, at *6 (noting that factors for consideration should include "the federal policies advanced by the statute, the relationship between [the scope of the consent] and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy.") (quoting *Peay*, 205 F.3d at 1213). Congress enacted, and the President signed into law, the PSJVTA as a response to international terrorism, and the political branches acted against an extensive backdrop of statutes concerning the PLO and PA. The ATA's civil-liability provision is intended "to develop a comprehensive legal response to international terrorism." 1992 House Report at 5. The consent provisions in the PSJVTA serve to further the goal of deterring international terrorism. *See* 166 Cong. Rec. S627 (daily ed. Jan. 28, 2020) (statement of Sen. Leahy) ("Congress is committed to pursuing justice for American victims of terrorism while ensuring appropriate standards regarding the ability of foreign missions to conduct official business in the United States."); 165 Cong. Rec. S7182 (daily ed. Dec. 19, 2019) (statement of Sen. Lankford) (bill "strike[s] a balance between Congress's desire to provide a path forward for American victims of terror to have their day in court and the toleration by the Members of this body to allow the PA/PLO to conduct a very narrow scope of activities on U.S. soil"); *id.* (statement of Sen. Grassley) ("these lawsuits disrupt and deter the financial support of terrorist organizations. By

was not enough of a connection to provide specific personal jurisdiction because a victim's nationality was "random, fortuitous, or attenuated." *Estate of Klieman ex rel. Kesner*, 923 F.3d at 1123-26. But that reasoning is irrelevant to the questions at issue here—whether PA/PLO kept making payments related to terrorist attacks that harmed or killed an American and whether those payments would be sufficient to be consent to personal jurisdiction. Unlike the attacks, payments like those described in the PSJVTA and made 120 days after enactment, are not "random, fortuitous, or attenuated." *Id.*

cutting terrorists' financial lifelines, the ATA is a key part of the U.S. arsenal in fighting terrorism and protecting American citizens.").

The deemed consent provisions relating to Defendants' activities within the United States are consistent with these legislative goals of deterring international terrorism that harms or kills Americans.  The PA and PLO are *sui generis* foreign entities that exercise governmental power but have not been recognized as sovereign governments by the Executive Branch.  They have a unique relationship with the United States government premised on their renunciation of terrorism and commitment to peace in the Middle East.  Their ability to operate within the United States is dependent on the judgments of the political branches, which have long imposed restrictions on these entities' U.S. operations based in part on the same concerns that motivated enactment of the ATCA and PSJVTA—namely, concerns about their historical support for acts of terrorism.  *See* 22 U.S.C. § 5201 (enacted 1987; determining "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States"); *id.* § 5202 (prohibiting PLO from maintaining an office in the United States); Middle East Peace Facilitation Act of 1993, Pub. L. No. 103-125, § 3(b)(2), 107 Stat. 1309, 1310 (1993) (authorizing temporary waiver of that prohibition if the President certifies that "it is in the national interest of the United States" and "the Palestine Liberation Organization continues to abide by" its Oslo Accords commitments); Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022, Pub. L. No. 117-103, div. K, title VII, § 7041(l)(3)(B)(i), 136 Stat. 49, 641 (2022) (authorizing temporary waiver if the President determines the Palestinians have not obtained United Nations membership status as a state and have not "actively supported an [International Criminal Court] investigation against Israeli nationals for alleged crimes against Palestinians"); *see also* Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7, 120 Stat. 3318, 3324 (2006) (22 U.S.C. § 2378b

note) (prohibiting the establishment or maintenance in the U.S. of any office of the PA during any period for which it is effectively controlled by or unduly influenced by Hamas, absent a waiver).

Similarly, deeming payments to designees or family members of those imprisoned for or killed while committing acts of terrorism killing or harming Americans as consent to personal jurisdiction furthers critical foreign policy interests in discouraging support for international terrorism harming Americans. *See* Taylor Force Act, Pub. L. No. 115-141, div. S, title X, § 1002(1), 132 Stat. 348, 1143 (2018) (Findings) (22 U.S.C. § 2378c-1 note); *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 8–10 (2010) (discussing national security interests in deterring support for terrorism); *Center for Const. Rights v. CIA*, 765 F.3d 161, 169 (2d Cir. 2014) ("incit[ing] violence against American interests at home and abroad [will cause] damage to the national security").

Given that the PSJVTA was enacted "on a matter of foreign policy"—namely, combatting international terrorism harming Americans—and the political branches' role with respect to our country's relationship with Defendants, the statute "warrants respectful review by courts." *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016). The consent the PSJVTA provides is narrow—limited to *sui generis* foreign entities, applicable only to ATA claims, and in furtherance of U.S. foreign policy of combatting international terrorism harming U.S. nationals. That limited provision must be reviewed in light of the federal government's constitutional responsibilities for, and broad authority, over, international relations and the protection of U.S. nationals abroad—government interests reasonably linked and roughly proportionate to the deemed-consent provisions of the PSJVTA.

Exercising personal jurisdiction through deemed consent under the PSJVTA would be fully consistent with the requirements of due process.

## II. Consent Can Be Valid Even Without an Exchange of Benefits.

Defendants argue that consent cannot be truly voluntary unless they receive some benefit in

**0887**

return.  MTD at 10–14.  But as explained above, consent to personal jurisdiction need only be "knowing and voluntary" and reasonable—nothing in the relevant case law concerning consent to jurisdiction suggests a benefit must be given.  *Wellness Int'l*, 575 U.S. at 685; *see Roell v. Withrow*, 538 U.S. 580, 590 (2003).  To the contrary, as the Supreme Court has put it, "the key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily'" proceeded.  *Wellness Int'l*, 575 U.S. at 685 (quoting *Roell*, 538 U.S. at 590).

There is no basis to read in a requirement that consent to personal jurisdiction must be in exchange for a benefit.  Defendants point to nothing in the text or history of the Fifth Amendment that requires an exchange of benefits before consent to personal jurisdiction can be valid.  Although the Supreme Court has not specifically addressed Defendants' argument, it has upheld the assertion of personal jurisdiction based on a defendant's actions, even when a defendant receives nothing in return.  In *Bauxites*, for example, the Court held that under Federal Rule of Civil Procedure 37(b)(2)(A), a district court could deem personal jurisdiction to have been established as a sanction for the defendant's failure to comply with a discovery order directed at establishing jurisdictional facts.  456 U.S. at 703–06.  The Court explained that such an action "amount[s] to a legal submission to the jurisdiction of the court, whether voluntary or not."  *Id.* at 704–05.  The Court likewise observed that a defendant's failure to timely object to personal jurisdiction would have the same effect of waiving the requirement, *id.*, even though the defendant receives nothing in return by consenting through waiver. [9]

---

[9] Defendants rely on two district court cases that suggest jurisdiction by consent depends on a "bargain." MTD at 11 (citing *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993); *In re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1278 (D. Md. 1981)).  Both cases involved putative consent to widely applicable general jurisdiction, inferred from the defendants' constructive presence in the state through registration; the PSJVTA, which limits jurisdiction to only certain entities, a specific type of civil action, and expressly deems activities to constitute consent, is distinguishable. In any event, neither decision is binding on this Court.

In other contexts, the Supreme Court has confirmed that a decision to waive a right is "knowing" even without a bargained exchange, if that waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and is "voluntary" if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (waiver of *Miranda* rights); *accord United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (same); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (applying same definition to waiver of inadmissibility of statements made during plea discussions); *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (consent to search is given "freely and voluntarily" under Fourth Amendment if not "the product of duress or coercion"; upholding consent to search obtained without any exchange (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Such a waiver can be effected even without "promises" made to obtain it, or any other consideration or exchange. *Oregon v. Elstad*, 470 U.S. 298, 302 (1985).[10]

Thus, consent can be knowing and voluntary even where the person consenting receives no benefit in return. The PSJVTA deems jurisdiction only with respect to certain parties—PA/PLO and their affiliates or successors—over specified civil actions under a single federal statute—the ATA. The PSJVTA puts defendants on notice that their choice to continue those activities specifically enumerated in it will be the "voluntary act" that manifests consent to jurisdiction, even if no quid pro quo

---

[10] Before *Miranda*, the Supreme Court determined the propriety of an accused's statements based on whether they "were 'voluntary' within the meaning of the Due Process Clause," a test that was satisfied in the absence of "techniques and methods offensive to due process" or circumstances demonstrating the "suspect clearly had no opportunity to exercise a free and unconstrained will." *Elstad*, 470 U.S. at 304 (citation omitted); *accord New York v. Quarles*, 467 U.S. 649, 661 (1984) (O'Connor, J., concurring in judgment) (statement not voluntary if "interrogation was deemed unreasonable or shocking, or if the accused clearly did not have an opportunity to make a rational or intelligent choice"). Neither consideration nor reciprocity was required.

**0889**

is given. *Cf. Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95–96 (1917) (defendant's appointment of agent for service of process constitutionally subjected defendant to suit in state for cases growing out of defendant's activities because the governing statute "ha[d] been held to go to that length" and the execution of the document "was the defendant's voluntary act").[11]

III.   District Courts That Found the PSJVTA Unconstitutional Were Wrong.

Defendants urge the court to follow the reasoning of three district courts in the Southern District of New York that concluded that the PSJVTA's deemed consent provisions were unconstitutional. This Court should not rely on those opinions, which are non-binding and all currently on appeal to the Second Circuit.

The *Fuld* court, for example, held that "the first prong of the 'deemed consent provision' — for 'martyr payments,' [] ha[s] no direct connection to the United States." *Fuld v. PLO*, 578 F. Supp. 3d 577, 587 (S.D.N.Y. 2022) (quoting 18 U.S.C. § 2334(e)(1)(A), *appeal filed*, No. 22-76 (2d Cir. Jan. 13, 2022), *appeal filed*, No. 22-496 (2d Cir. Mar. 8, 2022).  But the *Fuld* court ignored that payments only qualify as consent if made in connection with acts of terrorism that harmed or killed U.S. nationals— those payments certainly have a connection to the United States and its interests in the protection of U.S. nationals abroad.

The *Fuld* court also incorrectly described the constitutional standard for consent to personal

---

[11] Even if Defendants were correct that consent under PSJVTA is best understood as an implied consent that could only be given in exchange for some benefit, some of the bases for consent in the PSJVTA would still satisfy that alleged requirement (maintaining an office or otherwise operating within the United States). *See* MTD at 7 (citing *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (defendant's "acceptance" of the "rights and privileges" of driving on public roads constituted "signification of his agreement" to consent to jurisdiction in state court); *Ruggieri v. General Well Serv. Inc.*, 535 F. Supp. 525, 529 (D. Colo. 1982) ("Implied consent may also arise from a defendant's pre-litigation conduct," such as "use of a state's roads.")).

jurisdiction when it held that consent can only be reasonable if the conduct reflects an "intent to submit to the jurisdiction of a United States court." *Id.* at 580. That conclusion is at odds with Supreme Court opinions and the Federal Rules of Civil Procedure which do not require an intent to submit to jurisdiction. The *Fuld* court appears to derive this standard from dicta in a plurality opinion that discusses general and specific jurisdiction. *Id.* at 585 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality op.). But the plurality opinion in *McIntyre* is not binding precedent, the cited quotes are dicta, and moreover, that case did not involve consent—it described the standards for general or specific jurisdiction. *Id.*[12] The other S.D.N.Y. courts that have considered the constitutionality of the PSJVTA have mistakenly relied on the *Fuld*'s court errant standard of reasonableness. *See Shatsky v. PLO*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *4 (S.D.N.Y. Mar. 18, 2022) (citing and relying on this erroneous standard); *Sokolow v. PLO*, No. 04 CIV. 397 (GBD), 2022 WL 719261, at *5 (S.D.N.Y. Mar. 10, 2022) (same), *appeal filed* No. 22-1060 (2d Cir. May 9, 2022).

The *Fuld* court also relied on a case involving Eleventh Amendment waiver of state sovereign immunity. 578 F. Supp. 3d at 588 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)). But *College Savings* was not a Fifth Amendment due process case, 527 U.S. at 672, and the requirements to waive state sovereign immunity are much more stringent than those for personal jurisdiction. *See id.* at 675–76. States have a unique place in our federal system and any waiver of sovereign immunity must "be unequivocal" and can only be through a "'clear declaration' *by the State* of its waiver." *Id.* at 680. Consent to personal jurisdiction does not need a "clear declaration" of an "unequivocal" intent—it can be waived by failing to raise an objection in an answer or even

---

[12] The *Fuld* court also cites to *WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 355 (D. Conn. 2011), but that case analyzed whether registering to do business in Connecticut provided consent to general personal jurisdiction.

exercised over a defendants' explicit objection. *Compare id. with* Fed. R. Civ. P. 12(h) *and Bauxites*, 456 U.S. at 703–06 (holding that Congress through the Rules Enabling Act authorized the judiciary to exercise personal jurisdiction).

Finally, the *Fuld* court ignored that there are constitutional limits beyond "fair notice and an opportunity to conform" for deemed consent to satisfy due process. *Fuld*, 578 F. Supp. 3d at 590. To be sure, those are important parts of due process, but the *Fuld* court ignored that due process also requires consent to be reasonable and fair—standards that place real limits on what can be deemed consent, and that are met here. *See generally id.* The court also gave no consideration that the PSJVTA jurisdictional provisions are limited: they only apply to specific defendants, the activities that are deemed consent have a close connection to the United States and its interests, and the provisions further the federal interest of deterring international terrorism that harms U.S. nationals. *Id.* The court also did not properly consider that the Defendants here are *sui generis* foreign entities and Congress and the Executive have long worked together to set the appropriate parameters for Defendants' relationship with the United States. *Id.*[13]

In short, this Court should not rely on the reasoning or conclusions of those district court decisions.

---

[13] Defendants also contend the PSJVTA violates constitutional separation of powers arguing that the Act is a legislative attempt to undercut judicial decisions. MTD at 14–15 (citing *Shatsky*, *Waldman*, *Livnat*, and *Klieman*). But those decisions addressed personal jurisdiction based on minimum contacts, which is a *separate* ground to find personal jurisdiction. Defendants are also wrong when they argue that the Act cuts the judiciary out of the decision-making process. Courts must determine whether the factual predicates for consent jurisdiction are met, whether Plaintiffs have provided sufficient facts to show that Defendants have engaged in conduct that is deemed consent to personal jurisdiction under the PSJVTA, and whether exercising jurisdiction would be fair and reasonable.

## Conclusion

The Court should find that the PSJVTA is constitutional.

Dated: September 26, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Fax: (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

*Counsel for Intervenor*
*United States of America*

**0893**

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Zachary A. Avallone*

ZACHARY A. AVALLONE

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

------------------------------------------------------------------x

SHELLEY LEVINE, et al.,                        Case No. 21-cv-03043

                          Plaintiffs,

          v.

THE PALESTINE LIBERATION
ORGANIZATION and
THE PALESTINIAN AUTHORITY,

                          Defendants.

------------------------------------------------------------------x


### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(2) AND RULE 12(b)(6)


**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 2

I.   EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD
     VIOLATE DUE PROCESS............................................................................. 2

     A.   Defendants Have Not Consented To Personal Jurisdiction Under The
          PSJVTA. ........................................................................................... 2

     B.   Defendants Do Not Have Sufficient Contacts With The United States To
          Support Specific Jurisdiction. ............................................................ 10

     C.   The PA And PLO Are Persons Under The Due Process Clause. .......... 13

     D.   Rule 23.2 Does Not Create Personal Jurisdiction Over Defendants................. 15

          1.   Federal procedural rules cannot create jurisdiction that exceeds the
               limits of personal jurisdiction under the Due Process Clause................. 16

          2.   Rule 23.2 does not apply because Plaintiffs do not seek to sue a
               class of the membership of the PA and PLO. ........................... 17

          3.   Ambassador Mansour cannot be sued under Rule 23.2 because the
               FAC does not allege that he participated in tortious conduct. ............... 18

          4.   Plaintiffs misrepresent the *Sokolow* record in support of their claim
               that the Ambassador is a member of the PA and PLO. ......................... 19

II.  THE PSJVTA VIOLATES SEPARATION OF POWERS............................................. 21

III. PLAINTIFFS' DIRECT LIABILTY CLAIM FOR AN ACT OF
     INTERNATIONAL TERRORISM UNDER 18 U.S.C. § 2333(A) SHOULD BE
     DISMISSED. ........................................................................................... 21

     A.   The FAC Fails To Plausibly Allege Proximate Cause.......................................... 22

     B.   The FAC Fails To Plausibly Allege That Defendants Committed An "Act
          of International Terrorism." ........................................................................ 25

     C.   The FAC Does Not Plausibly Allege Defendants Provided Material
          Support to an FTO, Or Intended That Such Support Would Be Used For
          Terrorism........................................................................................... 27

IV.  PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THE ESSENTIAL ELEMENTS
     OF *RESPONDENT SUPERIOR* LIABILITY.................................................. 28

V.   PLAINTIFFS' SECONDARY LIABILTY CLAIMS SHOULD BE DISMISSED........ 29

     A.   Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed....................... 29

B.      Plaintiffs' Claim For Aiding And Abetting Liability Should Be Dismissed. ....... 31

1.   The FAC fails to show that the Defendants were "generally aware" they were assuming a role in terrorist activity. ......................................... 31

2.   The FAC fails to show that the defendants knowingly and substantially assisted the Attack. ............................................................. 34

VI.   PLAINTIFFS HAVE FAILED TO ALLEGE LIABILITY UNDER ISRAELI LAW. ...................................................................................................................... 36

CONCLUSION .............................................................................................................. 37

CERTIFICATE OF SERVICE

**0897**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts v. Lens.Com*,
 722 F.3d 1229 (10th Cir. 2013) ........................................................29

*Alfaro-Huitron v. Cervantes Agribusiness*,
 982 F.3d 1242 (10th Cir. 2020) ........................................................28

*American-Arab Anti-Discrimination Comm. v. Reno*,
 119 F.3d 1367 (9th Cir. 1997) ......................................................24, 33

*Atchley v. AstraZeneca*,
 22 F.4th 204 (D.C. Cir. 2022) ................................................ 23-24, 34

*Bakalar v. Vavra*,
 237 F.R.D. 59 (S.D.N.Y. 2006) ........................................................17

*Bell v. Brockett*,
 922 F.3d 502 (4th Cir. 2019) ..........................................................17

*Bernhardt v. Islamic Republic of Iran*,
 47 F.4th 856 (D.C. Cir. 2022) ......................................................32, 34

*Boerne v. Flores*,
 521 U.S. 507 (1997)......................................................................21

*Boim v. Holy Land Found. For Relief & Dev.*,
 549 F.3d 685 (7th Cir. 2008) ..........................................................25

*Brill v. Chevron Corp.*,
 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017) ........................26

*Brown v. Lockheed Martin Corp.*,
 814 F.3d 619 (2d Cir. 2016)..............................................................3

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
 274 F. Supp. 2d 86 (D.D.C. 2003) ....................................................28

*Cabrera v. Black & Veatch Special Projects Corps.*,
 2021 U.S. Dist. LEXIS 152218 (D.D.C. July 30, 2021)........................26

*Calagaz v. Calhoon*,
 309 F.2d 248 (5th Cir. 1962) ..........................................................17

**0898**

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999)...........................................................................................3, 5, 6

*Collins v. Daniels*,
   916 F.3d 1302 (10th Cir. 2019) ...................................................................15

*Colon v. Twitter, Inc.*,
   14 F.4th 1213 (11th Cir. 2021) ...................................................................33

*Coniglio v. Highwood Servs.*,
   60 F.R.D. 359 (W.D.N.Y. 1972).................................................................18

*Copeland v. Twitter, Inc.*,
   352 F. Supp. 3d 965 (N.D. Cal. 2018) .................................................33, 34

*Crosby v. Twitter*,
   303 F. Supp. 3d 564 (E.D. Mich. 2018).........................................23, 24, 27

*Crosby v. Twitter, Inc.*,
   921 F.3d 617 (6th Cir. 2019) .................................................................33, 35

*Daimler v. Bauman*,
   571 U.S. 117 (2014).......................................................................................6

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
   46 F.4th 226 (5th Cir. 2022) (en banc) ......................................................16

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018) ......................................................................22

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
   462 U.S. 611 (1983).....................................................................................14

*United States ex rel. Fisher Sand & Gravel Co. v. Kirkland Constr.*,
   76 F. Supp. 3d 1199 (D. Colo. 2014)..........................................................27

*Ford Motor v. Montana Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1017 (2021).............................................................................12, 13

*Freeman v. HSBC Holdings*,
   413 F. Supp. 3d 67 (E.D.N.Y. 2019) .....................................................27, 30

*Fuld v. PLO*,
   578 F. Supp. 3d 577 (S.D.N.Y. 2022)............................................... *passim*

*Gater Assets v. Moldovagaz*,
   2 F.4th 42 (2d Cir. 2021) ............................................................................14

**0899**

*Gill v. Arab Bank,*
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) ..............................................................33, 36

*Gilmore v. Palestinian Interim Self-Gov't Auth.,*
    53 F. Supp. 3d 191 (D.D.C. 2014) ..........................................................................34

*Gonzalez v. Google,*
    2 F.4th 871 (9th Cir. 2021) ...............................................................................26, 30

*GSS Group Ltd. v. Nat'l Port Auth.,*
    680 F.3d 805 (D.C. Cir. 2012) ...........................................................................13, 14

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) .................................................................................34

*Hammond Packing Co. v. Ark.,*
    212 U.S. 322 (1909) ..................................................................................................5

*Hernandez v. Office of the Comm'r of Baseball,*
    2018 U.S. Dist. LEXIS 168597 (S.D. Ohio Sep. 30, 2018).....................................15

*Hess v. Pawloski,*
    274 U.S. 352 (1927) ..................................................................................................6

*Honickman v. BLOM Bank,*
    6 F.4th 487 (2d Cir. 2021) .......................................................................................33

*Honickman v. BLOM Bank,*
    432 F. Supp. 3d 253 (E.D.N.Y. 2020) .....................................................................32

*Honorato v. Mount Olympus Enters.,*
    2021 U.S. Dist. LEXIS 156963 (W.D. Wis. Aug. 18, 2021)...................................12

*Hood v. Am. Auto Care,*
    21 F.4th 1216 (10th Cir. 2021) ...........................................................................12, 13

*Hovey v. Elliot,*
    167 U.S. 409 (1897) ..................................................................................................5

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982)..........................................................................................4, 5, 8

*In re Integra Realty Res.,*
    262 F.3d 1089 (10th Cir. 2001) ...............................................................................17

*Kaplan v. Al Jazeera,*
    2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011).........................................23

**0900**

*Kaplan v. Lebanese Canadian Bank,*
  999 F.3d 842 (2d Cir. 2021) ...................................................................30, 31, 32

*Kemper v. Deutsche Bank,*
  911 F.3d 383 (7th Cir. 2018) .............................................................23, 24, 26, 30

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008) ...........................................................................19

*Klieman v. Palestinian Auth.,*
  923 F.3d 1115 (D.C. Cir. 2019) ...................................................................7, 10, 11

*Klinghoffer v. S.N.C. Achille Lauro,*
  937 F.2d 44 (2d Cir. 1991) ..........................................................................10, 14

*Legacy Funeral Grp. v. Damiano,*
  2021 U.S. Dist. LEXIS 74059 (S.D. Tex. Apr. 16, 2021) .....................................12

*Leonard v. USA Petroleum Corp.,*
  829 F. Supp. 882 (S.D. Tex. 1993) .....................................................................5, 7

*Linde v. Arab Bank,*
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) ...................................................................36

*Linde v. Arab Bank, PLC,*
  882 F.3d 314 (2d Cir. 2018) .........................................................................25, 36

*Livnat v. Palestinian Auth.,*
  851 F.3d 45 (D.C. Cir. 2017) .......................................................................11, 14

*Llacua v. W. Range Ass'n,*
  930 F.3d 1161 (10th Cir. 2019) .........................................................................18

*Lumbermen's Underwr. Alliance v. Mobil Oil,*
  612 F. Supp. 1166 (D. Idaho 1985) .....................................................................19

*Marchwinski v. Oliver Tyrone Corp.,*
  81 F.R.D. 487 (W.D. Pa. 1979) ...........................................................................17

*Mendelsohn v. Meese,*
  695 F. Supp. 1474 (S.D.N.Y. 1988) .....................................................................9

*NAACP v. Claiborne Hardware,*
  458 U.S. 886 (1982) .........................................................................................18

*Niz-Chavez v. Garland,*
  141 S. Ct. 1474 (2021) .....................................................................................35

**0901**

*NYC v. Mickalis Pawn Shop*,
  645 F.3d 114 (2d Cir. 2011) ................................................................8

*O'Sullivan v. Deutsche Bank AG*,
  2020 WL 906153 (S.D.N.Y. Feb. 25, 2020) ........................................30

*Osborn v. Visa Inc.*,
  797 F.3d 1057 (D.C. Cir. 2015) ..........................................................19

*Owens v. BNP Paribas*,
  897 F.3d 266 (D.C. Cir. 2018) ......................................................23, 24

*Plaut v. Spendthrift Farm*,
  514 U.S. 211 (1995) ............................................................................21

*Retana v. Twitter*,
  1 F.4th 378 (5th Cir. 2021) ................................................................36

*Richter v. LG Chem, Ltd.*,
  2022 U.S. Dist. LEXIS 184847 (N.D. Ill. Sep. 27, 2022) ....................12

*Roell v. Withrow*,
  538 U.S. 580 (2003) ..............................................................................3

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ..................................................23, 24, 25

*Russello v. United States*,
  464 U.S. 16 (1983) ..............................................................................35

*Saville v. IBM*,
  127 Fed. Appx. 404 (10th Cir. 2005) ..................................................27

*Shatsky v. PLO*,
  2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017) ..............22, 30, 35

*Shatsky v. PLO*,
  2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar. 18, 2022) ............. *passim*

*Shatsky v. PLO*,
  292 F. Supp. 3d 188 (D.D.C. 2017) ................................................24, 34

*Shatsky v. PLO*,
  955 F.3d 1016 (D.C. Cir. 2020) ....................................................9, 10, 11

*Shatsky v. Syrian Arab Republic*,
  795 F. Supp. 2d 79 (D.D.C. 2011) ..................................................29, 31

*Sokolow v. PLO*,
    2022 U.S. Dist. LEXIS 43096 (S.D.N.Y. Mar. 10, 2022) .............................................. *passim*

*Sokolow v. PLO*,
    2022 U.S. Dist. LEXIS 107122 (S.D.N.Y. June 15, 2022)......................................................1

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)...............................................................21, 28, 30, 35

*Stansell v. BGP, Inc.*,
    2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011)......................................................26

*Strauss v. Credit Lyonnais*,
    925 F. Supp. 2d 414 (E.D.N.Y. 2013) ....................................................................................34

*Taylor v. Bywater*,
    1994 U.S. Dist. LEXIS 4176 (D. Kan. Mar. 29, 1994)...................................................17, 19

*United States v. Pink*,
    315 U.S. 203 (1942).................................................................................................................13

*United States v. PLO*,
    695 F. Supp. 1456 (S.D.N.Y. 1988).............................................................................9, 10, 19

*V&A Collection v. Guzzini Props.*,
    46 F.4th 127 (2d Cir. 2022) .......................................................................................................3

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016).........................................................................................10, 11, 14

*Waldman v. PLO*,
    925 F.3d 570 (2d Cir. 2019)...........................................................................................7, 11, 21

*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................................................................15

*Weiss v. Nat'l Westminster Bank*,
    768 F.3d 202 (2d Cir. 2014)......................................................................................................26

*Wellness Int'l Net. v. Sharif*,
    575 U.S. 665 (2015)...................................................................................................................3

*Zadvydas v. Davis*,
    533 U.S. 678 (2001).................................................................................................................13

## Rules

Fed. R. Civ. P. 12 ................................................................................................22, 27

Fed. R. Civ. P. 17 ...................................................................................................18

Fed. R. Civ. P. 23 ........................................................................................... *passim*

## Statutes

18 U.S.C. § 2331(1) ..........................................................................................25, 26

18 U.S.C. § 2334(e) .......................................................................................6, 9, 10

18 U.S.C. § 2339B ...........................................................................................32, 35

22 U.S.C. § 5201(b) .................................................................................................9

Colo. Rev. Stat. §7-30-106(3)................................................................................18

## Other Authorities

Omar Dajani, *Stalled Between Seasons: The International Legal Status of
    Palestine During the Interim Period*, 26 Denv. J. Int'l L. & Pol'y 27 (1997)........................32

DOJ, Office of Legal Counsel, *Mutual Consent Provisions in the Guam
    Commonw. Legis.* (July 28, 1994) ............................................................15

G.A. Res, *State of Palestine in the UN* (Nov. 29, 2012),
    https://undocs.org/en/A/RES/67/19 .........................................................19

K. Toameh, *Facing bankruptcy, terror group accuses Abbas of 'political
    blackmail,'* Jerusalem Post (Apr. 25, 2020)............................................31

Restat. (Third) Agency, § 2.01................................................................................28

Restat. (Third) Agency, § 7.04(1)...........................................................................28

UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in G.A.
    Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16,
    2018), https://www.un.org/press/en/2018/ga12078.doc.htm.................................19

**PRELIMINARY STATEMENT**

Plaintiffs' brief spends little time discussing the PSJVTA—a tacit acknowledgment of its constitutional infirmities.  Plaintiffs do not deny the statute purports to <u>impose</u> personal jurisdiction by declaring Defendants shall be "deemed" to "consent" to jurisdiction when they engage in the same conduct previously held insufficient to support jurisdiction under the Due Process Clause. Plaintiffs and the Government argue that "fair warning" and a "reasonable relationship" to a government objective is all that is needed, but courts have rejected their idea that Congress can legislate that any conduct shall be deemed consent under due process tests.  The Due Process Clause instead requires that conduct cannot be "deemed" to be implied consent to jurisdiction, unless it is a reasonable proxy for actual consent—otherwise it "would effectively mean that there are no due process limitations on the exercise of personal jurisdiction." *Fuld v. PLO*, 578 F. Supp. 3d 577, 590 (S.D.N.Y. 2022) ("*Fuld*"); *Sokolow v. PLO*, 2022 U.S. Dist. LEXIS 43096 (S.D.N.Y. Mar. 10, 2022) ("*Sokolow*"), *recon. denied*, 2022 U.S. Dist. LEXIS 107122 (June 15, 2022); *Shatsky v. PLO*, 2022 U.S. Dist. LEXIS 48721 (S.D.N.Y. Mar. 18, 2022) ("*Shatsky*").

This Court should follow these unanimous decisions and hold that the PSJVTA is unconstitutional.  Apart from the PSJVTA, Plaintiffs' other jurisdictional theories also fail. Plaintiffs cannot establish specific jurisdiction, for the same reason that every other post-*Walden* court has held—namely, Plaintiffs cannot connect the actions of the PA and PLO, or an attack in Israel or Palestine, to the United States.  In every other case, like this one, the claims did not arise from Defendants' alleged U.S. conduct, and Defendants' alleged conduct in Palestine was not aimed at the United States.  Equally, Plaintiffs' Rule 23.2 theory fails because the Federal Rules do not trump the Due Process Clause, and thus cannot supply jurisdiction by rule when jurisdiction is constitutionally deficient.  In addition, Rule 23.2 requires a class comprised of *members* of the

**0905**

unincorporated associations—whereas Plaintiffs are trying to make a class of the associations themselves, both of which are already named as stand-alone Defendants.

Independent of jurisdiction, this Court can dismiss the FAC's primary liability claims because its attempts to tie Defendants to the Attack are speculative rather than factual—indeed, the FAC does not even plausibly allege the PFLP committed the Attack. Plaintiffs speculate about the Attackers' motivations and history, the effects of the funding provided by the PLO to Palestinian political factions, and the activities of the PFLP. They fail to plead proximate causation, material support, or that Defendants committed an "act of international terrorism."

Plaintiffs' other claims fare no better. Plaintiffs fail to plausibly allege an agreement by Defendants to commit the Attack or any other terrorist act. This failure to show Defendants were aware of the Attackers' activities likewise forecloses aiding-and-abetting liability. Nor do Plaintiffs plausibly allege that generalized aid provided by Defendants to the PLO's second-largest political faction knowingly and substantially assisted the Attackers or the Attack. Plaintiffs also fail to plead proximate and but-for causation under Israeli law. Plaintiffs do not trace the alleged support of the PFLP to the Attackers—nor could they, even if the PFLP were responsible, given that the PFLP has many sources of funding, precluding a but-for cause finding as to Defendants.

## ARGUMENT

### I. EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE DUE PROCESS.

#### A. Defendants Have Not Consented To Personal Jurisdiction Under The PSJVTA.

This Court should follow the unanimous decisions in *Fuld*, *Sokolow*, and *Shatsky* that the PSJVTA cannot constitutionally impose "deemed consent" jurisdiction upon Defendants. Relying on bedrock Supreme Court precedent, this trio of decisions held that "the conduct to which

**0906**

Congress attached jurisdictional consequence in the PSJVTA is not 'of such a nature as to justify the fiction' that Defendants actually consented." *Fuld* at 587 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)). They explained that "due process requires more than notice and the opportunity to conform one's conduct for effective consent to jurisdiction." *Shatsky* at 15-16. When Congress deems specific conduct to be "consent," that conduct must be a reasonable stand-in for actual consent—or it "would effectively mean that there are no due process limitations on the exercise of personal jurisdiction." *Fuld* at 590; *Sokolow* at 18-20.

These three decisions reflect the Supreme Court's holding that implied consent is "a deeply factbound analysis" that requires courts to infer "whether [defendant's] actions evinced the requisite knowing and voluntary consent." *Wellness Int'l Net. v. Sharif*, 575 U.S. 665, 685-86 (2015); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016) (explaining a defendant may "submit to jurisdiction" that a court "would otherwise be unable to exercise" through "free and voluntary consent"). And "[t]hat inference is reasonable, however, only where the defendant's statements or conduct actually signal approval or acceptance." *Fuld* at 586. *See, e.g.*, *Roell v. Withrow*, 538 U.S. 580, 584 (2003) (holding parties who "voluntarily participated in the entire course of proceedings" through trial without objecting to jurisdiction "clearly implied their consent" "by their actions").

An "effective waiver of a constitutional right" generally requires proof of "the 'intentional relinquishment or abandonment of a known right or privilege.'" *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (citation omitted). Because implied or "constructive" consent "is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver." *Id.* at 681-82 (internal quotations omitted). Plaintiffs cite *V&A Collection v. Guzzini Props.*, 46 F.4th

- 3 -

**0907**

127, 132 (2d Cir. 2022), to argue otherwise, but that case describes the inapposite circumstance in which *the party bringing suit* impliedly consents to jurisdiction for all claims arising out of *the same transaction*.  The PSJVTA involves no similar actions within the litigation itself.

Conduct by a party within litigation is expressly included in *Bauxites*' catalogue of "legal arrangements [that] have been taken to represent express or implied consent to the personal jurisdiction of the court," including submission "by appearance," forum-selection clauses, arbitration, stipulation, "constructive consent" through "the voluntary use of certain state procedures," and failure to assert a jurisdictional defense in a responsive pleading.  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).  None of those "legal arrangements," reflecting "actions of the defendant" that "amount to a legal submission to the jurisdiction of the court," *id.* at 704-05, is present under the PSJVTA or in this case.

Plaintiffs argue that *Bauxites* eliminated the need for "voluntary" consent to jurisdiction, but it did no such thing.  Pl. Br. 11.  *Bauxites* distinguished between inferring a defendant's knowing and voluntary choice to submit to jurisdiction by its own litigation conduct, and "mere assertions of power" by the forum to impose jurisdiction.  *Bauxites*, 456 U.S. at 705.  The Court examined whether the defendant's failure to comply with court-ordered jurisdictional discovery was a constructive waiver of its objection to personal jurisdiction.  *Id.*  The Court held that it was, but only because the defendant's specific conduct—its "failure to supply the requested information as to its contacts with [the forum]"—"was but an admission of the want of merit in the asserted defense."  *Id.* at 705, 709 (quoting *Hammond Packing Co. v. Ark.*, 212 U.S. 322, 351 (1909)).  By refusing to participate in jurisdictional discovery, the defendant implicitly acknowledged it had sufficient contacts to support jurisdiction.  *Id.* at 706 ("[T]he sanction is nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver.").

**0908**

To illustrate the "due process limits" that apply to implied consent, *Bauxites* distinguished *Hovey v. Elliot*, 167 U.S. 409 (1897), which held "it <u>did</u> violate due process for a court to [find consent to jurisdiction] as '<u>punishment</u>' for failure to obey an order" unrelated to the defendant's defenses. *Bauxites*, 456 U.S. at 706 (emphasis added). The defendant's conduct (failure to pay "a certain sum of money") did not support the presumption of a "want of merit" in its jurisdictional defense. *Id.* at 705-06. Consequently, subjecting the defendant to jurisdiction constituted an improper penalty, rather than a constructive waiver of a jurisdictional defense fairly drawn from the defendant's own conduct. *Id.* at 706 ("Due process is violated only if the behavior of the defendant will not support the *Hammond Packing* presumption.").

The Supreme Court again distinguished between valid, implied <u>consent</u> to jurisdiction and the improper <u>imposition</u> of jurisdiction in *College Savings Bank,* 527 U.S. at 679-82, which held that mere <u>notice</u> of Congress's intent to create jurisdiction if the defendant "voluntarily" engaged in "federally regulated conduct" was insufficient to confer jurisdiction. If the activity giving rise to "consent" does not require authorization from the forum, the defendant's choice to engage in the activity does not reflect any agreement to submit to jurisdiction in the forum because the defendant's ability to engage in the activity did not depend on any benefit (or "gratuity") conferred by the forum in the first instance. *Id*. at 680-81. "Without a received benefit," in other words, "there is no bargain, and without a bargain, there is no due process." *Leonard v. USA Petroleum Corp.,* 829 F. Supp. 882, 889 (S.D. Tex. 1993).

The Government argues that *College Savings Bank* addresses sovereign immunity and not personal jurisdiction. Gov't Br. 17-18. The decision itself, however, refutes this narrow interpretation. Relying on the "classic description of an effective waiver of a constitutional right," the Court explained that "constructive consent is not a doctrine commonly associated with the

- 5 -

**0909**

surrender of <u>constitutional rights</u>." *College Savings Bank*, 527 U.S. at 681-82 (emphasis added). Because "[s]tate sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected," courts should "indulge every reasonable presumption against waiver." *Id.* at 682. As *Fuld* recognized, "the principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly."[1] *Fuld* at 588.

The PSJVTA's failure to establish valid, implied consent to jurisdiction is perhaps best illustrated by contrasting the PSJVTA with its predecessor statute, the Anti-Terrorism Clarification Act of 2018 ("ATCA"). The ATCA provided that Defendants "shall be deemed" to consent to personal jurisdiction if they accepted either of two government benefits: (1) U.S. foreign aid, or (2) the "benefit" of a formal "waiver or suspension" of the prohibitions on Defendants' U.S. activities under the 1987 ATA, which would have permitted them to maintain an embassy in Washington. *See* 18 U.S.C. § 2334(e)(1) (2018) (superseded by PSJVTA). The ATCA applies the principle that a party can choose to accept benefits offered by a forum in exchange for consent to jurisdiction. For example, by "accept[ing]" the "rights and privileges" of driving on public roads, a non-resident defendant signifies its "agreement" to submit to personal jurisdiction in the forum. *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927). Similarly, business registration statutes offer the right to do business in a state in exchange for consent to personal jurisdiction.[2]

In defending the constitutionality of the ATCA, the Government drew on this principle to argue that because "[t]he political branches have long imposed <u>conditions on these benefits</u>,"

---

[1] State sovereign immunity and lack of personal jurisdiction are also both jurisdictional defenses grounded in the Constitution. The Government fails to explain why precedent addressing the waiver of a jurisdictional defense is less instructive than its own cases, which involve Miranda rights and warrantless car searches. *See* Gov't Br. 15.

[2] The Supreme Court recently granted certiorari in a case addressing the continued vitality of business registration statutes following *Daimler v. Bauman*, 571 U.S. 117 (2014), which curtailed the exercise of general jurisdiction over foreign corporations on due process grounds. *See Mallory v. Norfolk Southern Ry.*, No. 21-1168 (cert. granted April 25, 2022).

**0910**

Congress could "determine that the [PLO's] maintenance of an office in this country …, or the [PA's] continued receipt of certain foreign assistance, should be 'deemed' consent to personal jurisdiction in civil cases under the ATA." U.S. Brief at 12-13, *Klieman*, No. 15-7034 (D.C. Cir. Mar. 13, 2019) (emphasis added). The ATCA satisfied due process, in other words, because it grounded "deemed consent" on Defendants' choice to accept or reject distinct government benefits conditioned upon consent. Courts held the ATCA did not establish personal jurisdiction because Defendants had not accepted those benefits. *Waldman v. PLO*, 925 F.3d 570, 574-76 (2d Cir. 2019); *Klieman v. Palestinian Auth.,* 923 F.3d 1115, 1128-31 (D.C. Cir. 2019). Personal jurisdiction thus turned on Defendants' choice <u>not</u> to accept the ATCA's enumerated benefits.

The PSJVTA, by contrast, does not confer any benefit on Defendants in exchange for their purported "consent." It does not authorize Defendants to engage in activities in the United States (which are prohibited by the 1987 ATA), nor does it extend any government benefit (such as foreign aid). Accordingly, "there is no bargain—no social compact" that could evince Defendants' implied agreement to submit to jurisdiction in the United States. *Leonard*, 829 F. Supp. at 889.

Nor, as *Fuld* explained, even absent consent by acceptance of a benefit, does the PSJVTA base "deemed consent" jurisdiction on a reasonable stand-in for consent. Instead, the conduct that creates "deemed consent" jurisdiction under the PSJVTA—payments made in Palestine, maintenance of Palestine's UN Mission, and UN-related activities—does not "even remotely signal[] approval or acceptance of the Court's jurisdiction." *Fuld* at 587. The payments "have no direct connection to the United States, let alone to litigation in a United States court," and inferring consent to jurisdiction on this basis would "strain the idea of consent beyond its breaking point." *Id*. While the U.S. activities prong at least relates to "conduct in the United States," "the conduct (at least as alleged in this case) is too thin to support a meaningful inference of consent to

- 7 -

**0911**

jurisdiction in this country." *Id*.  "To pass muster, however, the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here."  *Id*.

Unable to show actual consent, Plaintiffs fall back on underlined involuntary consent by taking a phrase from *Bauxites* out of context.  *Bauxites* explained that "[t]he expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights." 456 U.S. at 705.  Accordingly, a defendant that fails to object to personal jurisdiction (or fails to comply with court-ordered jurisdictional discovery) may impliedly submit to the court's jurisdiction, "whether voluntary or not."  *Id*. at 704-05; *see also Fuld* at 593 n.9 (acknowledging this distinction).  The same is also true of a defendant that initially challenges jurisdiction, but then willfully withdraws from the litigation and defaults.  *NYC v. Mickalis Pawn Shop*, 645 F.3d 114, 133-36 (2d Cir. 2011).  The principle that parties before a court are responsible for following its rules, which accounts for all the cases cited by Plaintiffs (Pl. Br. 11-14), does not mean that Congress may impose involuntary "consent" on anyone for any action anywhere, so long as they have "fair warning."

The Government, on the other hand, argues that the PSJVTA is a reasonable underlined imposition of jurisdiction: "whether or not labeled 'consent,'" jurisdiction can go "beyond conventional general and specific jurisdiction" so long as it satisfies "fairness and reasonableness."  Gov't Br. 8.  But the cases the Government cites do not support that proposition.  Rather, each cited case still predicates jurisdiction on minimum contacts with the forum, express consent to jurisdiction, or implied consent through actions demonstrating consent—such as litigation conduct, a forum selection clause, or taking advantage of benefits offered by a forum.  None of those cited cases allows the imposition of jurisdiction based on mere notice and reasonableness.  *Fuld* accordingly was correct in holding that legislatively imposed "deemed consent" to jurisdiction must be based

on a reasonable proxy for actual consent, because otherwise, "Congress or a state legislature could provide for jurisdiction over *any* defendant for *any* conduct so long as the conduct post-dated enactment of the law at issue." *Fuld* at 590 (emphasis in original).

The Government also asserts the PSJVTA is constitutional because it is "reasonably linked" to protecting U.S. nationals. Gov't Br. 13. But courts have already held that payments in Palestine to prisoners or families entirely outside the United States are not sufficiently connected to the United States to create jurisdiction under the Due Process Clause. *Shatsky v. PLO*, 955 F.3d 1016, 1022-23 (D.C. Cir. 2020) ("martyr payments" did not confer specific jurisdiction). Nor are the PSJVTA's "US activities" provisions linked to the attacks, providing instead that Defendants "shall be deemed to have consented to personal jurisdiction" if they conduct "any activity while physically present in the United States." 18 U.S.C. § 2334(e)(1)(B)(iii). The FAC does not attempt to link the U.S. activities to the Attack, but instead claims PSJVTA jurisdiction because Palestine's UN Mission conducts "social media and other public relations activities." FAC ¶¶ 24-25.

Finally, the Government implies that the PSJVTA offers a reciprocal benefit because Congress controls whether Defendants can operate in the United States. Gov't Br. 12. But the PSJVTA does not grant any such rights, nor does it modify the Anti-Terrorism Act of 1987, which denies Defendants all "benefit" of "operating in the United States." 22 U.S.C. § 5201(b). That statute is a "wide gauged restriction of PLO activity within the United States," *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988), that deprives Defendants of the "many benefits which accrue to organizations operating in the United States, including political stability [and] the patina of legitimacy." *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988).

Nor is Defendants' ability to operate their UN Mission traceable to the PSJVTA. The UN Headquarters Agreement ("UNHQA") guarantees all "invitees" of the UN rights of "entry, access,

**0913**

and residence" in the UN Headquarters District.  *United States v. PLO*, 695 F. Supp. at 1465-68.

Under the UNHQA, the United States has a freestanding "obligation … to refrain from impairing

the function of" Defendants' UN Mission, which falls outside U.S. "jurisdiction."  *Id.* at 1465-68,

1471.  UN-related activities thus cannot "properly be considered as a basis of jurisdiction."  *See*

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 51 (2d Cir. 1991).  The PSJVTA does not modify

the UNHQA, instead providing that "no court may consider" Defendants' UN-related activities or

"any personal or official activities conducted ancillary" thereto.  18 U.S.C. § 2334(e)(3).  The

PSJVTA thus fails to offer any "benefit" Defendants can accept or reject in exchange for consent

to personal jurisdiction.

### B.   Defendants Do Not Have Sufficient Contacts With The United States To Support Specific Jurisdiction.

The Second and D.C. Circuits have consistently held that Defendants are not subject to

personal jurisdiction in the United States for claims based on their alleged involvement in

indiscriminate third-party attacks in Israel or Palestine.  Those courts explained that Defendants'

"suit-related conduct"—namely, their alleged involvement in terrorist attacks in Israel—is "not

sufficiently connected to the United States."  *Waldman v. PLO*, 835 F.3d 317, 335-37 (2d Cir.

2016).  The Attack at issue in this case is similarly "not expressly aimed at the United States," but

rather "affected United States citizens only because they were victims of indiscriminate violence."

*Id.* at 337; *Shatsky*, 955 F.3d at 1037 (finding no evidence of "intentional targeting of Americans

or some other form of 'intentional conduct by the defendant' is needed to 'create the necessary

contacts with the forum'"); *Klieman*, 923 F.3d at 1124-26 (noting lack of any basis "for inferring

that the terrorists … were instructed, or endeavored, to injure American nationals").  "[A]bsent

intentional targeting, the fact that an American died in a terrorist incident abroad" is exactly the

**0914**

type of "'random, fortuitous, or attenuated' contact" between Defendants and the forum that is insufficient to support specific jurisdiction. *Klieman,* 923 F.3d at 1126 (citation omitted).

Those circuits further explained that Defendants' UN activities are not connected to the terrorist attacks that gave rise to plaintiffs' claims. "[I]n a 'jurisdictional inquiry focuse[d] on the relationship among the defendant, the forum, and the litigation,' the 'litigation' element requires tangible allegations relating the attack … to defendant's contacts with the forum." *Klieman*, 923 F.3d at 1124. They held that "the connections the defendants do have with the United States … revolve around lobbying activities that are not proscribed by the ATA and are not connected to the" attacks at issue. *Waldman,* 835 F.3d at 337, 342; *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017) (plaintiffs failed to establish requisite "link" between attacks and Defendants' "lobbying and fundraising activities inside the United States"); *Shatsky*, 955 F.3d at 1037 (no evidence "connecting the [attack] to the alleged public relations campaign").

Plaintiffs repeat the same arguments made by the plaintiffs in those four cases, claiming that Defendants' work at the UN and in Washington, D.C., is somehow linked to the Attack in this case. Pl. Br. 17-18, 20. But *Waldman, Livnat, Shatsky,* and *Klieman* all rejected this argument. *Waldman*, for example, noted that Defendants maintained a Washington, D.C. office, conducted "diplomatic activities" from that office, "promoted the Palestinian cause in speeches and media appearances," and engaged in "lobbying" and "extensive public relations activities" to "influence United States policy." 835 F.3d at 323, 326, 337. The court held that none of those activities created a "substantial connection" between the alleged attack and the U.S. *Id.* at 335-37.[3]

---

[3] *See also Shatsky*, 955 F.3d at 1022-23, 1037 ("martyr payments" and "public relations campaign" insufficient to support personal jurisdiction); *Klieman*, 923 F.3d at 1118, 1123-26 ("campaign" to "influence" U.S. foreign policy "through the use of U.S. offices, fundraising, lobbying, [and] speaking engagements" insufficient); *Livnat*, 851 F.3d at 56-57 (no link between alleged attack and Defendants' "lobbying" and "plan to influence opinion and policy in the United States" because the plaintiffs did "no more than infer that because some attacks against Jews and Israelis have

Plaintiffs ask this Court to ignore this unbroken line of precedent, claiming that *Ford Motor v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021), "effected a sea-change in specific jurisdiction." Pl. Br. 20. But the opposite is true: "*Ford* wrought ***no sea change*** in the law of specific personal jurisdiction." *Richter v. LG Chem, Ltd.*, 2022 U.S. Dist. LEXIS 184847, *6 (N.D. Ill. Sep. 27, 2022) (emphasis added); *Legacy Funeral Grp. v. Damiano*, 2021 U.S. Dist. LEXIS 74059, *2 (S.D. Tex. Apr. 16, 2021) (*Ford* "did not materially change the basic requirements of the 'connection' required between a plaintiff's suit and a defendant's activities."); *Honorato v. Mount Olympus Enters.,* 2021 U.S. Dist. LEXIS 156963, *2 (W.D. Wis. Aug. 18, 2021) ("*Ford Motor* did not meaningfully change the standard for establishing personal jurisdiction."). *Ford* itself concerned the "relate to" prong of "purposeful-<u>availment</u>" jurisdiction—a theory of jurisdiction that is not implicated in this case. *Ford*, 141 S. Ct. at 1024-25 (emphasis added). The Supreme Court rejected the idea that "anything goes" for the "relate to" prong, but instead held that the cultivation of a market in the forum for a product (*i.e.*, the availment) that later malfunctions will create "the necessary connection between a defendant's in-state activity and the plaintiff's claims." *Id.* at 1022-23, 1026, 1031.

In contrast to the plaintiffs in *Ford*, Plaintiffs chiefly advance a purposeful-<u>direction</u> theory based on the prisoner payments, which hypothesizes that Defendants' actions in Palestine are specifically directed to cause harm in the United States. Likewise, Defendants' UN-related activities in the United States do not satisfy *Ford*. The Tenth Circuit has interpreted *Ford* to require that "the plaintiff's claim arises from essentially <u>the same type of activity</u>, even if the activity that gave rise to the claim was not directed at forum residents." *Hood v. Am. Auto Care*, 21 F.4th 1216,

---

been aimed to influence U.S. policy, the Joseph's Tomb attack was, too"). Plaintiffs' vague claims that the U.S.-based activities were somehow supporting a "terrorist program" (*see* Pl. Br. 19-20 & n.11) suffer from the same problems.

**0916**

1224 (10th Cir. 2021) (emphasis added). Defendants' UN-related conduct does not relate to the Attack under the purposeful-availment reasoning in *Ford* and *Hood* because United Nations work is hardly the "same type of activity" as the terrorist attack at issue here.

### C.   The PA And PLO Are Persons Under The Due Process Clause.

No court has ever denied due process to the PA and PLO. The Second and D.C. Circuits rejected such arguments because all non-sovereign entities are entitled to jurisdictional due process—and Defendants are not sovereign under U.S. law. The Government agreed, with the Solicitor General arguing that *Waldman*'s decision that Defendants receive jurisdictional due process was in accord with Supreme Court precedent and "does not conflict with any decision of another court of appeals." U.S. Amicus Br. at 7-12, *Sokolow v. PLO*, No. 16-1071 (U.S. Feb. 22, 2018).[4] Given this uniformity, this Court should not foment a circuit-split by becoming the only court to hold that Defendants are not entitled to due process protections from jurisdiction.

The Supreme Court has long held that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001); *United States v. Pink,* 315 U.S. 203, 246 (1942) ("[T]he benefits of [Fifth Amendment due process] extend to alien friends as well as to citizens."). Foreign defendants are "forced to appear in the United States" and are therefore "entitled to the protection of the due process clause." *GSS Group Ltd. v. Nat'l Port Auth.,* 680 F.3d 805, 816 (D.C. Cir. 2012). And "because the form of organization by which a defendant does business is irrelevant to any policy governing acquisition of jurisdiction" there is

---

[4] Plaintiffs rely on outdated government papers from the 1980s, Pl. Br. 5-6, which was before the PA's formation in 1994 and before the U.S. and Israel recognized the PLO as a legitimate representative of Palestinians in 1993.

- 13 -

**0917**

"no reason to distinguish between corporate and non-corporate organizations in this regard." *Klinghoffer,* 937 F.2d at 50 (cleaned up).

The sole exception is that state or foreign <u>sovereigns are not entitled to jurisdictional due process</u>—and even that exception is limited to entities that, in effect, are the sovereign. In *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 613-14, 620-30 (1983), the Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." Government agencies and instrumentalities that are juridically independent from a sovereign are thus entitled to due process. *See GSS Group,* 680 F.3d at 816 (state-owned businesses have due process rights). So "only the sovereign itself and its 'alter egos' are not 'persons'" for due process purposes, whereas "[a]gencies and instrumentalities of foreign sovereigns retain their status as 'separate legal person[s]'" and therefore are entitled to jurisdictional due process. *Gater Assets v. Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021). No circuit holds otherwise.

Applying these principles, the Second and D.C. Circuits held that Defendants have jurisdictional due process rights, just like any other non-sovereign entity. The plaintiffs in those cases argued (as do Plaintiffs here) that any entity that "functions as a government" cannot have due process rights. *Livnat*, 851 F.3d at 48. But the D.C. Circuit explained that sovereignty "represents a rare exception to the general rule that the Due Process Clause protects all litigants in our courts, especially by limiting the power of courts to hale defendants before them." *Id.* Similarly, the Second Circuit explained that "the cases cited by the plaintiffs stand for the proposition that sovereign governments lack due process rights, and these cases have not been extended beyond the scope of entities that are separate sovereigns." *Waldman*, 835 F.3d at 329.

- 14 -

**0918**

The same analysis applies here.  Plaintiffs do not cite any cases holding that a non-sovereign entity lacks due process rights.  Pl. Br. 3-5.  Subdivisions of our state and federal governments are considered parts of the sovereign itself.  The DOJ memorandum highlighted by Plaintiffs (p. 4-5) explains that U.S. territories cannot exercise due process rights because they are "political subdivisions … of the United States," in the same way cities are "political subdivisions of states."  DOJ, Office of Legal Counsel, *Mutual Consent Provisions in the Guam Commonw. Legis.,* p. 9-10 (July 28, 1994); U.S. Amicus Br. at 7-12, *Sokolow*, No. 16-1071 (explaining that the Supreme Court applies due process rights to every type of entity except for sovereigns).

Finally, Plaintiffs rely on dicta in *Shatsky* that Defendants should not have "more favored" rights than States.[5]  Pl. Br. 6.  But that argument applies equally to foreign individuals, foreign corporations, and other foreign entities—which are all "outside our constitutional system" and yet are entitled to due process.  Indeed, Plaintiffs *admit* that Defendants are "unincorporated associations" under U.S. law, which means they are entitled to due process.  *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (an association "may have standing in its own right to seek judicial relief from injury to itself … [and] its members").[6]  Plaintiffs' admission that Defendants are unincorporated associations should end the matter, and this Court should reject Plaintiffs' attempt to place the PA and PLO in a constitutional no-man's land as neither a person nor a sovereign.

### D.   Rule 23.2 Does Not Create Personal Jurisdiction Over Defendants.

Plaintiffs' attempts to use Rule 23.2 to establish personal jurisdiction (*see* Pl. Br. 29) violate both the rule itself and due process.  Although Rule 23.2 applies only to suits "against the *members* of an unincorporated association," Plaintiffs want this Court to certify a "class" consisting of solely

---

[5] Defendants' entitlement to due process was not briefed before Judge Vyskocil.
[6] *See Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (an unincorporated association with standing may represent its members' interests); *Hernandez v. Office of the Comm'r of Baseball*, 2018 U.S. Dist. LEXIS 168597, *8 (S.D. Ohio Sep. 30, 2018) (exercising jurisdiction over unincorporated association would violate due process).

the associations themselves (the PA and PLO)—excluding all members of either association. They name Palestine's UN Ambassador as the "class" representative despite admitting he had no connection to the underlying tort. Plaintiffs also grossly misrepresent the record in *Sokolow* in a strained attempt to claim that the Ambassador is a "member" of the PA and PLO.

### 1. Federal procedural rules cannot create jurisdiction that exceeds the limits of personal jurisdiction under the Due Process Clause.

The fundamental problem with Plaintiffs' approach to Rule 23.2 is that rules of civil procedure cannot create personal jurisdiction where prohibited by the Constitution. *See* Def. Mtn 20-21. A Fifth Circuit decision is instructive: the plaintiffs in *Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F.4th 226, 233 (5th Cir. 2022) (en banc), argued that Rule 4(k)(2) was "the substantive source of personal jurisdiction over" defendants in that case. The court, sitting en banc, explained that such a "rule-centric view obscures the purely constitutional nature of the personal jurisdiction question at issue." *Id*. It further held that a "rule does not—and cannot—control the constitutional inquiry whether due process prohibits a court from exercising personal jurisdiction over the defendant." *Id*. The same analysis applies here—Rule 23.2 cannot supply jurisdiction where, as in this case, neither the "minimum contacts" or "consent" requirements have been satisfied.

Plaintiffs attempt to elide the constitutional inadequacy of jurisdiction over the PA and PLO by responding that this Court need not have personal jurisdiction over "absent" class members. Pl. Br. 26. But that is a *non sequitur* because Plaintiffs invoke Rule 23.2 to establish jurisdiction over the PA and PLO, which are not absent at all—both are present in this Court to contest personal jurisdiction. And Plaintiffs concede they are suing <u>only</u> those two unincorporated associations, and not seeking to impose liability on Ambassador Mansour or the absent members (*i.e.*, the membership of the PA and PLO). Pl. Br. 30 (defining the "defendant classes" as "the

- 16 -

**0920**

associations, which are the tortfeasors"). Because Defendants' members are not the subject of Plaintiffs' claims, their cases about absent class members are inapposite.

Moreover, Plaintiffs' cases (*see* Pl. Br. 26) exclusively concern ***plaintiff*** classes, which have different due process considerations than defendant classes. "[T]he very notion of a defendant class raises immediate due process concerns." *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487, 489 (W.D. Pa. 1979). The Tenth Circuit has emphasized that "defendant class actions create a special need to be attentive to the due process rights of absent parties." *In re Integra Realty Res.*, 262 F.3d 1089, 1105 (10th Cir. 2001). Due process accordingly puts "greater limits on the use of defendant classes than plaintiff classes," especially "where the unnamed class members risk exposure to liability." *Bakalar v. Vavra*, 237 F.R.D. 59, 63-64 (S.D.N.Y. 2006). When monetary damages are involved, as here, the "[f]ailure to provide notice and/or opt out rights may deprive an unnamed defendant class member of the ability to challenge issues such as personal jurisdiction, venue and choice of law." *Bell v. Brockett*, 922 F.3d 502, 511 n.3 (4th Cir. 2019) (cleaned up).

### 2. Rule 23.2 does not apply because Plaintiffs do not seek to sue a class of the membership of the PA and PLO.

Rule 23.2 does not allow class actions directed at associations rather than members, as it only "applies to an action brought ... against the <u>members</u> of an unincorporated association." Yet Plaintiffs admit they are not suing "members of an unincorporated association as a class," but instead are using the rule only to assert personal jurisdiction over the associations themselves (the PA and PLO). Pl. Br. 23, 29-30. But Rule 23.2 requires a plaintiff "to sue, not the [unincorporated association] itself, but the [unincorporated association's] members." *Taylor v. Bywater,* 1994 U.S. Dist. LEXIS 4176, *8 (D. Kan. Mar. 29, 1994). As such, Plaintiffs' reliance on cases like *Calagaz*, *see* Pl. Br. 24-25, is misplaced as those plaintiffs "denie[d] any intention of making [the association] a party defendant." *Calagaz v. Calhoon,* 309 F.2d 248, 253 (5th Cir. 1962).

Plaintiffs also fail to meaningfully distinguish cases (Def. Mtn 21-24) showing that a class action is inappropriate under Rule 23.2 when the entity can be sued directly. For example, they argue *Coniglio v. Highwood Servs.,* 60 F.R.D. 359 (W.D.N.Y. 1972), "merely rejected the plaintiffs' attempt to name the defendant association itself as the representative of the association's members." Pl. Br. 29. To the contrary, *Coniglio* held that because the "NFL has been named and served as a party defendant pursuant to Rule 17(b) ... the maintenance of a defendant class action pursuant to Rule 23.2 would be inappropriate in the present action." 60 F.R.D. at 364. Plaintiffs ask this Court to break new ground contrary to the rule's language and the Due Process Clause: They *have not found a single case* applying Rule 23.2 to an association (with the capacity to be sued in the forum) to circumvent a court's lack of personal jurisdiction over the association.

### 3. Ambassador Mansour cannot be sued under Rule 23.2 because the FAC does not allege that he participated in tortious conduct.

Plaintiffs concede they have no independent claim against Ambassador Mansour, arguing that the FAC "need not allege any specific tortious conduct by Mansour because he is being sued as [a] representative of the defendant classes—the associations, which are the tortfeasors." Pl. Br. 30. They name Ambassador Mansour <u>solely</u> for his purported membership. *Id.* This is improper: "Civil liability may not be imposed merely because an individual belonged to a group." *NAACP v. Claiborne Hardware,* 458 U.S. 886, 920 (1982). Federal and Colorado law recognize that a defendant cannot be liable for tortious activity based on association membership alone. *See, e.g., Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1181 (10th Cir. 2019) (rejecting the argument that "all members of an association could be deemed to have entered into an antitrust conspiracy simply because they joined the association, participated in its governance, and agreed to abide by its rules"); Colo. Rev. Stat. §7-30-106(3) ("A person is not liable for a tortious act or omission for

**0922**

which a nonprofit association is liable merely because the person is a member of the nonprofit association [or] is authorized to participate in [its] management.").[7]

Because liability cannot be imposed on a member solely based on membership, no claims can lie against Ambassador Mansour under Rule 23.2. *Lumbermen's Underwr. Alliance v. Mobil Oil*, 612 F. Supp. 1166, 1170-72 (D. Idaho 1985) (where members cannot be liable for association's torts, "a procedural mechanism for such a suit is, of course, superfluous"); *Taylor*, 1994 U.S. Dist. LEXIS 4176, *8 (dismissing Rule 23.2 action against union members because "federal law prohibits actions for monetary damages against individual union members").

Relatedly, Plaintiffs' argument that Ambassador Mansour is not an "invitee" because the PA "has no status at all at the UN" (Pl. Br. 33) is incorrect. The UN recognizes Palestine as a Non-member Observer State,[8] and a permanent member of various UN committees, with the ability to participate (and lead) in UN-related organizations.[9] Courts have long recognized that Palestine's UN Mission "is an invitee of the United Nations under the Headquarters Agreement and its status is protected by that agreement." *United States v. PLO*, 695 F. Supp. at 1471. U.S. courts therefore have an "obligation … to refrain from impairing the function of the PLO Observer Mission to the United Nations.'" *Id*. Exercising personal jurisdiction based on the Ambassador's presence would violate the United States' obligations to the UN.

### 4.    Plaintiffs misrepresent the *Sokolow* record in support of their claim that the Ambassador is a member of the PA and PLO.

---

[7] *See also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (association membership, and even "participation on the association's board of directors" is insufficient alone to make a member liable); *Osborn v. Visa Inc.*, 797 F.3d 1057, 1067 (D.C. Cir. 2015) ("'[m]ere membership in associations is not enough to establish participation in a conspiracy with other members of those associations'") (citation omitted).

[8] G.A. Res, *State of Palestine in the UN*, A/RES/67/19 (Nov. 29, 2012), https://undocs.org/en/A/RES/67/19; *see also* U.S. Stat. of Interest, *Ungar v. Palestinian Auth.*, No. 18-0302, at 25 (S.D.N.Y. Sept. 12, 2005) (asking court to defer to the UN on the rights of Palestine's mission). The UN recognizes the PA as the government of the State of Palestine.

[9] UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in G.A. Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018), https://www.un.org/press/en/2018/ga12078.doc.htm.

Finally, Plaintiffs grossly distort the *Sokolow* record (Pl. Br. 30-32) to argue that Defendants are estopped from denying that Ambassador Mansour is a member of the PA and PLO. Defendants' discovery responses in *Sokolow* do <u>not</u> provide "detailed definitions of [the PA and PLO's] respective memberships" as Plaintiffs claim.  In fact, the *Sokolow* plaintiffs reached the <u>opposite</u> conclusion after reviewing those same responses, arguing that "defendants admitted that they <u>could not identify their 'members'</u> within the meaning of the rule in *Martin v. Curran*."  *See* Pl. Mem. in Supp. MSJ, *Sokolow*, DE 492, at 5 (S.D.N.Y. May 6, 2014).

Defendants have always maintained their membership is context-dependent. *See* Ex. J., DE 69-11, Interrog. Obj. Nos. 6(a), 7-9.  In the hearing cited by Plaintiffs, Defendants explained that the PA and PLO are "*sui generis*" entities, and that they could not "tick off the elements of the PA and ... link them directly to a definition of an unincorporated association."  Perlin Decl., Ex. I, DE 69-10, *Sokolow* Hr'g Tr., at 11-12, 16, 65.  On one hand, the PLO could be considered "an umbrella group for a variety of political parties and factions," but on the other, might be said to include "all [] Palestinians."  *Id.* at 10-11; Perlin Decl., Ex. J., Interrog. Answ. No. 7 ("all Palestinian persons may be viewed as represented by the PLO from the time of birth until the time of death").

Plaintiffs claim that the directory pages they attached (Perlin Decl., Ex. K) show the members of the PA and PLO.  But in their interrogatories, the *Sokolow* plaintiffs defined the PA and PLO as including "any ministry, agency, division, bureau, department or instrumentality thereof."  Perlin Decl., Ex. J, Pls.' Specific Definitions Nos. 1-2.  As a result, Defendants' responses did not distinguish between entities, instrumentalities, or otherwise—nor did they state that the directory shows the "members" of the PA and the PLO.  Defendants only stated that the directory contains "the names of certain elected, appointed, and employed officials."  *See* Perlin

- 20 -

**0924**

Decl., Ex. J, Interrog. Answ. Nos. 8-9.  Defendants never specified which, if any, of the officials

in the directory (which includes municipality and village councils) were "members."[10]

Far from being "critical" as Plaintiffs claim (Pl. Br. 32), Judge Daniels never mentioned

the membership issue in his decision.  *Sokolow v. PLO*, 60 F. Supp. 3d 509, 523-24 & n.21

(S.D.N.Y. 2014).  While acknowledging Defendants "do not fit perfectly within the description of

an unincorporated association", he held that Defendants were unincorporated associations.  *Id*.

Neither Judge Daniels, nor any opinion he cited, attempted to define the membership of either

organization.  *Id*.  This Court should reject Plaintiffs' estoppel argument.

## II.   <u>THE PSJVTA VIOLATES SEPARATION OF POWERS.</u>

The Government notes that the PSJVTA still allows courts to engage in fact-finding (Gov't

Br. 18 n.13) but does not deny the PSJVTA prohibits courts from determining whether Defendants

have actually consented to jurisdiction.  The PSJVTA oversteps Congressional authority by pre-

determining which facts will constitute consent.  Congress cannot simply "require federal courts

to exercise the judicial power in a manner that" they have already held the Constitution forbids in

*Waldman* and *Livnat*.  *Plaut v. Spendthrift Farm*, 514 U.S. 211, 218, 238-39 (1995).  Though the

PSJVTA "attempt[s] a substantive change in constitutional protections," it is "precedent, not [the

statute], which must control."  *Boerne v. Flores*, 521 U.S. 507, 532, 536 (1997).

## III.   <u>PLAINTIFFS' DIRECT LIABILTY CLAIM FOR AN ACT OF INTERNATIONAL TERRORISM UNDER 18 U.S.C. § 2333(a) SHOULD BE DISMISSED.</u>

Plaintiffs fail to identify non-conclusory factual allegations in the FAC showing that

Defendants: (1) proximately caused Plaintiffs' injuries; (2) committed an "act of international

terrorism"; or (3) provided material support to an FTO, or support to others with the knowledge or

---

[10] Ambassador Mansour's name appears in the directory only as the head of the UN Mission.  *See, e.g.,* Perlin Decl.,
Ex. K, at 02:008808, 02:008811-12, 02:008835, 02:008839, 02:008862, & 02:008866.

**0925**

intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism. Consequently, Plaintiffs' direct liability claim under Section 2333(a) must be dismissed.

### A. The FAC Fails To Plausibly Allege Proximate Cause.

This Court should follow the weight of authority dismissing "material support" ATA claims for lack of proximate cause where, as here, there are no allegations connecting the alleged FTO support to the Attack. *See* Def. Mtn 30-33; *see also Fields v. Twitter, Inc.*, 881 F.3d 739, 744-49 (9th Cir. 2018) (holding that to establish proximate causation under the ATA, there must be "some direct relation between the injury asserted and the injurious conduct alleged").

Plaintiffs wrongly claim that "none of [the ATA cases Defendants cite] is relevant to the facts, allegations, or posture of this case." Pl. Br. 40.[11]  The summary judgment decision in *Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017), is a legal-insufficiency ruling made on undisputed facts and a theory of liability that mirror the allegations and claims in the FAC. *See id.* at *29-32 (dismissing ATA claims premised on Defendants' support and funding to the PFLP, including by: (1) paying rent for a PFLP office, (2) paying salaries to PFLP leaders, and (3) paying families of incarcerated PFLP members). Specifically, *Shatsky* dismissed ATA claims for lack of proximate cause because the plaintiffs failed to show any direct link between Defendants' payments and the specific attack. *Id.* at *19, 29-32; *see also* Def. Mtn 32-42 (discussing *Shatsky*). Just as in *Shatsky*, Plaintiffs have not alleged a causal link between the Attack and the limited support Defendants allegedly provided to the PFLP.

While Plaintiffs take issue with Defendants' description of the alleged support as "limited" and "generalized" (Pl. Br. 40), they do not dispute that the forms of support the FAC alleges

---

[11] Defendants cite no Rule 12(b)(6) dismissals of ATA claims against the PA and PLO because such claims instead have been dismissed on jurisdictional grounds.

Defendants provided the PFLP—including (1) general funding, (2) permission to maintain office space in Palestine, (3) access to radio frequencies and website domains, and (4) payments to released prisoners under Palestinian social welfare programs—are the same types of governmental support Defendants provide other PLO constituent factions.  *See* FAC ¶¶ 133, 135, 137-144.  Thus, Plaintiffs are essentially asking this Court to find the PA and PLO liable because the PFLP is a political faction within the PLO.  However, as set forth in the Motion, because the PA and PLO are governmental entities, Plaintiffs must allege specific facts linking Defendants' governmental acts to the Attack.  *See* Def. Mtn 29.  Governmental entities, such as Defendants, have "many legitimate agencies, operations, and programs to fund," *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013), so when a material support claim is dependent on governmental actions, as it is in this case, "the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Kemper v. Deutsche Bank*, 911 F.3d 383, 393 (7th Cir. 2018); *see also Owens v. BNP Paribas*, 897 F.3d 266 (D.C. Cir. 2018).  Moreover, courts have found the type of limited and generalized support alleged in the FAC to be too incidental, speculative and attenuated to amount to proximate causation under the ATA.[12]

Plaintiffs' reliance on *Atchley v. AstraZeneca*, 22 F.4th 204 (D.C. Cir. 2022) to argue that they do not have to plausibly allege a connection between the support to the PFLP and the Attack is misplaced.  The allegations of targeted support in *Atchley* are fundamentally different than the FAC's allegations of generalized governmental support.  *Id.* at 234-36 (explaining that the plaintiffs' injuries directly related to the monetization of goods defendants allegedly provided to a terrorist group).  Moreover, *Atchley* distinguished *Owens, Rothstein,* and *Kemper*—which, like

---

[12] *Crosby v. Twitter*, 303 F. Supp. 3d 564, 579 (E.D. Mich. 2018) (provision of media services is too attenuated to raise a plausible inference of causation); *Kaplan v. Al Jazeera*, 2011 U.S. Dist. LEXIS 61373, *22 (S.D.N.Y. June 7, 2011) (no proximate cause without allegations that "broadcasts were used by Hezbollah to better target their rockets").

**0927**

here, involved governmental entities (albeit state sponsors of terrorism, which Defendants are not)—because, unlike those cases, the *Atchley* "plaintiffs d[id] not allege that defendants aided an autonomous nation with many functions and priorities. Rather, they allege[d] that defendants gave to a single agency that had been overtaken by terrorists." *Id.* at 228. In contrast, the FAC acknowledges that the PLO, as a governmental entity, provides general funding and resources to all PLO political factions, one of which is the PFLP. FAC ¶ 113. Thus, as in *Owens, Rothstein,* and *Kemper,* a causal chain cannot be presumptively drawn between the Attack and Defendants' general funding and support of the PFLP as one PLO constituent faction.[13]

Finally, Plaintiffs do not dispute that to establish proximate causation between the Defendants' alleged support to the PFLP and their alleged injuries, they must connect the Attackers to the PFLP. However, the only allegations they can point to in order to make this connection are the after-the-fact claims of credit allegedly made by PFLP members. Pl. Br. 39. The FAC contains no allegations that the PFLP and the Attackers were in contact prior to the Attack or that the PFLP had any involvement in planning or committing the Attack. *See Crosby,* 303 F. Supp. 3d at 579 (no proximate causation where "the only communications between anyone that could have remotely involved the defendants' services and that even arguably related directly to the shooting were claims of responsibility by ISIS news sources <u>after the attack was completed</u>; nothing in the amended complaint even alludes to any contacts or communications between anyone—let alone between ISIS and [the attacker]—that directly concerned the attack beforehand"); *see also Shatsky*

---

[13] Plaintiffs argue *Owens, Rothstein,* and *Kemper* do not apply (Pl. Br. 41), but they interpret those cases too narrowly because "one of the links on a causal chain" in this case is a government entity. *Kemper*, 911 F.3d at 393. Moreover, Plaintiffs ignore that the PFLP engages in myriad of government activities unrelated to terrorism. *See American-Arab Anti-Discrimination Committee v. Reno*, 119 F.3d 1367, 1370 (9th Cir. 1997) (the PFLP "is engaged in a wide range of lawful activities, including the provision of education, day care, health care, and social security, as well as cultural activities, publications, and political organizing") (quotations omitted), *vac'd on other gnds*, 525 U.S. 471 (1999).

**0928**

*v. PLO*, 292 F. Supp. 3d 188, 194-95 (D.D.C. 2017) (terrorists' after-the-fact claims of credit are not trustworthy because "[i]n such a morally-twisted environment," attacks on civilians reflect "glory" and thus, there is an "incentive to lie") (collecting cases).

### B.  The FAC Fails To Plausibly Allege That Defendants Committed An "Act of International Terrorism."

Plaintiffs' allegations of generalized government funding and services provided to the PFLP are insufficient to plead that Defendants *themselves* committed an "act of international terrorism," as defined in Section 2331(1). *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018). The FAC does not plausibly allege the required elements of an "act of international terrorism," including that Defendants' conduct: (1) "involve[d] violent acts or acts dangerous to human life"; and (2) "appear[ed] to be intended to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination or kidnapping." 18 U.S.C. § 2331(1); *see, e.g.*, *Linde*, 882 F.3d at 319-322; *Rothstein*, 708 F.3d at 97.

Plaintiffs' reliance on *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 690 (7th Cir. 2008) as support for their contention that Defendants' provision of funding necessarily qualifies as an act "dangerous to human life" irrespective of whether such support directly aided any of the PFLP's terrorist activities is misplaced. Pl. Br. 35-36. *Boim* was decided before Congress enacted JASTA, and courts have found that liability of the kind recognized in *Boim* is now properly lodged under the secondary liability provision of JASTA. *See Linde*, 882 F.3d at 326-331. While Plaintiffs fail to state a claim under the framework for JASTA aiding and abetting liability, they also do not state a claim for primary liability because "material support to a terrorist organization does not invariably equate to an act of international terrorism." *Id.* at 326.

- 25 -

**0929**

Likewise, Plaintiffs baldly assert that "the FAC alleges Defendants' actions appeared to be and were intended to influence a government and population." Pl. Br. 35. The "appear to be intended" requirement is an objective, external-appearance standard, not one of subjective intent. *Weiss v. Nat'l Westminster Bank,* 768 F.3d 202, 207 n.6 (2d Cir. 2014). Courts regularly dismiss ATA claims where plaintiffs fail to plausibly allege that a defendant appeared to act with the terroristic intent Section 2331(1) requires. *See, e.g.*, *Kemper*, 911 F.3d at 390 (dismissing ATA claims in part because the defendants did not appear to act with terroristic intent, but appeared to be "motivated by economics"); *Gonzalez v. Google*, 2 F.4th 871, 900-01 (9th Cir. 2021) (dismissing direct ATA claims premised on the provision of material support to an FTO because the defendants appeared to be motivated by "economic self-enrichment").

More particularly, courts have found that general allegations of payments made to entities known to engage in violent activities do not satisfy the ATA's terroristic-intent requirement absent some plausible allegation that those payments reflected the defendant's own intentional involvement in a terrorist attack. In *Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017), the court found that it "is not enough" that the defendant turned a "blind eye" to whether its payments might be funneled to Saddam Hussein's regime because an allegation that defendant "should have, but didn't take a harder look" fails to demonstrate any "outward appearance" of terroristic intent by defendant. *Id.* at *18-20.[14]

Rather than alleging Defendants outwardly appear to have terroristic intent, the FAC claims Defendants <u>avoid</u> any outward association with terrorism. Pl. Br. 43-44 (citing FAC ¶¶ 108-153)

---

[14] *See also Cabrera v. Black & Veatch Special Projects Corps.*, 2021 U.S. Dist. LEXIS 152218, *57, 60 (D.D.C. July 30, 2021) (defendants only had an "appearance of ambivalence" in providing funds to the Taliban); *Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808, *26 (M.D. Fla. Mar. 31, 2011).

**0930**

("Defendants carefully remain at arm's-length from the violence ….").[15]  Indeed, Defendants'

actions appear to be motivated by the need to provide legitimate governmental services and to

further legitimate policy goals.  As the Government notes, the PA is "a key partner of the United

States and Israel in stabilizing the West Bank and combating terrorism."  Gov't Br. 2 n.2.  This

statement belies any conclusion that Defendants acted with terroristic intent.

### C.    The FAC Does Not Plausibly Allege Defendants Provided Material Support to an FTO, Or Intended That Such Support Would Be Used For Terrorism.

Plaintiffs do not dispute that the FAC fails to allege that Defendants had prior knowledge

of the Attack or provided support or resources directly to the Attackers and therefore Plaintiffs

cannot satisfy Sections 2339A or 2339C.  *See* Def. Mtn 36.  Thus, Plaintiffs' claims premised on

those statutes must be dismissed.  *See Saville v. IBM*, 127 Fed. Appx. 404, 406 (10th Cir. 2005)

(dismissing a claim because the plaintiff failed to dispute, and thus conceded, that the elements of

res judicata had been satisfied); *United States ex rel. Fisher Sand & Gravel Co. v. Kirkland

Constr.*, 76 F. Supp. 3d 1199, 1204-05 (D. Colo. 2014) (holding that where a party does not dispute

an argument in its opposition, it concedes that point).

In addition, while Plaintiffs allege that Defendants provided material support in the form

of internet and radio services, such "routine" services do not qualify as "material support" because

they were provided by Defendants as part of their governmental responsibilities.  *See Crosby*, 303

F. Supp. 3d at 576-77 (allegations "that the defendants provided 'routine' services knowing only

generally that some (unidentified) users could be affiliated with terrorism" insufficient for material

---

[15] Plaintiffs' assertion that Defendants were, at minimum, deliberately indifferent to the PFLP's use of funding for terrorism—even if taken as true in the Rule 12 context—does not negate that Defendants outwardly appeared to act in furtherance of their governmental responsibilities. *Freeman v. HSBC Holdings*, 413 F. Supp. 3d 67, 92 (E.D.N.Y. 2019) ("Plaintiffs' allegations that Defendants were deliberately indifferent to Iran's involvement with terrorism or the risk that the transferred funds would end up in the hands of FTOs like Hezbollah are insufficient to overcome [the] appearance" that defendants were motivated by "the opportunity to make money.").

support); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (bank not liable for material support where it provided "routine banking service[s]").

## IV.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THE ESSENTIAL ELEMENTS OF *RESPONDENT SUPERIOR* LIABILITY.

Plaintiffs fail to show they can bring a respondeat superior liability claim under the ATA. *See* Def. Mtn 37-38. Plaintiffs have also failed to plead essential elements of such a claim under *Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242 (10th Cir. 2020), first because they concede that neither the PFLP nor the Attackers can be considered an employee of the PA or PLO. Pl. Br. 43 (noting that in this case, "the agent is <u>not</u> the employee of the principal"). Thus, Plaintiffs' reliance on *Sokolow*, 60 F. Supp. 3d 509, is misplaced because that court dismissed vicarious liability claims against the PLO for lack of evidence of an employment relationship and against the PA where "there [was] insufficient evidence that a PA employee was involved in the June 19, 2002 attack or acted within the scope of his employment." *Id.* at 519-20.

Nor can their claims survive under *Alfaro-Huitron* because the Tenth Circuit stated that if an agent is not an employee, then "a principal is liable" when "the conduct was within the scope of the agent's actual authority." *Alfaro-Huitron,* 982 F.3d at 1252 (citing Restat. (Third) Agency, § 7.04(1)). Actual authority only exists "when ... the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *Id.* at 1251 (citing Restat. (Third) Agency, § 2.01)). Agency here thus requires certain "factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *Id.* at 1252-53 (citation omitted). "[W]ithin any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms." *Id.* at 1252-53. Therefore, "actual authority" requires allegations that the agent both (1) could

reasonably believe that "the principal's grant of actual authority encompassed the act in question," which is an "objective standard" and (2) "that the agent actually hold the belief, a subjective standard." *1-800 Contacts v. Lens.Com*, 722 F.3d 1229, 1251 (10th Cir. 2013) (cleaned up).

Here, Plaintiffs make no plausible allegation that the Attackers themselves were Defendants' agents, and only loosely contend that an agency relationship exists between Defendants and the PFLP (even assuming the PFLP were plausibly alleged to have committed the Attack) based solely on the following allegations: (1) Defendants and the PFLP share the identical ideological goal of gaining control of territories governed by Israel; (2) they have engaged in terroristic acts for years; and (3) Defendants provide the PFLP with certain resources and funding, which is "control" over the PFLP.  Pl. Br. 43; FAC ¶¶ 126-27.  The FAC, however, does not identify any encouragement from Defendants for the PFLP to commit the Attack, or that the PFLP consented to commit the Attack on behalf of Defendants.  The FAC instead acknowledges that Defendants avoid any association with terrorism. Pl. Br. 43-44.  And while the FAC baldly asserts that the PA and PLO could exert control over the PFLP, Plaintiffs do not dispute that the PFLP is currently boycotting PLO meetings or that it previously suspended its participation in the PLO because the PLO objected to its continued support of the use of violence.  *See* Def. Mtn 28; *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 84–85 (D.D.C. 2011).

## V.      PLAINTIFFS' SECONDARY LIABILTY CLAIMS SHOULD BE DISMISSED.

### A.      Plaintiffs' Claim For Conspiracy Liability Should Be Dismissed.

Plaintiffs have failed to state a claim for conspiracy under Section 2333(d) because they fail to show an agreement to commit the Attack between the Defendants on the one hand, and the Attackers or the PFLP on the other.  The "crux of any conspiracy is an agreement between the co-conspirators," and JASTA requires Plaintiffs to connect the alleged agreement to the "act of

- 29 -

**0933**

international terrorism" for which they sue. *Kemper*, 911 F.3d at 395 (citation omitted). "[T]he further down the causal chain a defendant sits, the more diligent a plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement." *Id.* at 395-96.

The FAC does not plausibly allege that Defendants "conspire[d] directly with the person or entity"—here, Uday Abu Jamal and Ghassan Abu Jamal—to commit *any act* of "international terrorism" as defined in the ATA, let alone "the act of international terrorism that injured the plaintiff[s]." *Freeman*, 413 F. Supp. 3d at 98 n.41; *see also O'Sullivan v. Deutsche Bank AG*, 2020 WL 906153, *6 (S.D.N.Y. Feb. 25, 2020) (complaint "proffers no facts from which the Court can infer that Defendants ... entered into any agreement to commit the acts of international terrorism that injured Plaintiffs"). Indeed, the FAC does not allege any pre-Attack communications between Defendants and the Attackers.[16]

Similarly, Plaintiffs do not plausibly plead that the Defendants had an agreement with the PFLP to carry out the Attack or any other act of international terrorism. Plaintiffs correctly observe that "few if any conspiracy claims under § 2333(d) have been found viable," but contend that this case is different because the Defendants are "deeply driven by an ideology and political goals" which they share with the PFLP. Pl. Br. 50. But these conclusory statements, at most, allege that Defendants and the PFLP have certain overlapping political goals, <u>not</u> an agreement to commit an act of terrorism or use terrorism to advance those goals. *Kaplan v. Lebanese Canadian Bank,* 999 F.3d 842, 856 (2d Cir. 2021) ("conspiracy involves an agreement to participate in a wrongful activity") (cleaned up); *Gonzalez*, 2 F.4th at 907 n.19 (allegation that Google "conspired with ISIS,

---

[16] At most, the FAC alleges contact between the Defendants and the Attackers <u>after the Attack</u> in the form of payments to their families (FAC ¶¶ 23, 177), which is insufficient to show a <u>pre-Attack</u> agreement to perpetrate the Attack. *See Sokolow*, 60 F. Supp. 3d at 517 n.11 ("A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks."); *Shatsky*, 2017 U.S. Dist. LEXIS 94946, *31-32 (same).

**0934**

its members[,] and affiliates to promote, plan, and carry out the acts of international terrorism that injured the plaintiffs" was "conclusory" and "insufficient to survive a motion to dismiss") (quotations omitted).  Despite Plaintiffs' claims otherwise (Pl. Br. 40), the PLO and PFLP are distinct political entities with exceedingly different views on the conflict with Israel.[17]

Plaintiffs do not plausibly allege that the PA and PLO, comprising the Palestinian government, had any agreement with the PFLP to commit violence.  To the contrary, the U.S. Government's representation that the United States is "cooperating on training of PA security forces" and its affirmation of the PA as "a key partner of the United States and Israel in stabilizing the West Bank and combating terrorism" belies the very notion of an agreement to commit terrorist attacks.  Gov't Br. 2 n.2.

### B.      Plaintiffs' Claim For Aiding And Abetting Liability Should Be Dismissed.

Plaintiffs' aiding and abetting claim should be dismissed because the FAC's threadbare allegations fail to show that (a) Defendants were "generally aware" of their role "as part of an overall illegal or tortious activity" at the time of the alleged assistance, and (b) Defendants "knowingly and substantially assist[ed] the principal violation."  *Kaplan*, 999 F.3d at 856.

#### 1.      The FAC fails to show that the Defendants were "generally aware" they were assuming a role in terrorist activity.

Plaintiffs fail to plausibly allege that Defendants were "generally aware of [their] role" in an act of international terrorism.  *Kaplan*, 999 F.3d at 863.  General awareness requires "a higher

---

[17] *See Shatsky*, 795 F. Supp. 2d at 84-85 ("The PFLP … 'suspended its participation in the PLO' … and had been outlawed by the PA several months prior to the attack.  Furthermore, in 2002, the PA and PLO leadership detained the leader of the PFLP, thereby verifying the schism between the entities.  In short, defendants argue that these facts show that the PA/PLO had broken with the PFLP and did not share or support PFLP's continued use of violence. ... I find defendants' assertions are sufficient to constitute a defense against plaintiffs' allegations that the PA and PLO were responsible for the attacks through their wide-ranging support of and conspiracy with the PFLP."); *see also* K. Toameh, *Facing bankruptcy, terror group accuses Abbas of 'political blackmail,'* Jerusalem Post (Apr. 25, 2020), https://www.jpost.com/middle-east/facing-bankruptcy-terror-group-accuses-abbas-of-political-blackmail-625863 (describing various efforts by Defendants to minimize the power and influence of the PFLP).

*mens rea* than that sufficient to establish material support in violation of the ATA, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." *Honickman v. BLOM Bank*, 432 F. Supp. 3d 253, 264 (E.D.N.Y. 2020) (citation omitted); *Kaplan*, 999 F.3d at 860 ("knowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element"); *see* U.S. Amicus Br. at *28-29, *Weiss v. Nat'l Westminster Bank*, 2022 U.S. S. Ct. Briefs Lexis 1643 (May 24, 2022) ("Congress's determination in Section 2339B that any material support to an FTO enables terrorism does not mean that every JASTA defendant who provides such support is generally aware that it is playing a role in unlawful activity from which acts of international terrorism are a foreseeable risk—or that the multi-factor substantial assistance standard will always be satisfied.").

The FAC fails to draw any link whatsoever between the Attack (or the Attackers) and support allegedly provided by the Defendants. Absent that connection, Plaintiffs cannot show that Defendants were "aware" that they were playing a "role" in Uday Abu Jamal's and Ghassan Abu Jamal's terrorist activities. Indeed, the paucity of the aiding-and-abetting claim is evident by Plaintiffs' heavy reliance on "generally" as a modifier for "awareness." Pl. Br. 47.

Defendants' alleged limited and generalized support to the PFLP (a "pillar[] of the Palestinian political system" at ¶ 178) does not plausibly show that this support was "for the specific purpose of" enabling terrorism (Pl. Br. 47-48). To the contrary, Defendants as governmental entities "invariably maintain legitimate government activities", including political interaction with the PFLP.[18] *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 868 (D.C. Cir.

---

[18] The PFLP "hold[s] seats on the [Palestine National Council, one of the PLO's two primary policymaking organs] in much the same way as would [a] political part[y] in a national legislature." Omar Dajani, *Stalled Between Seasons: The International Legal Status of Palestine During the Interim Period*, 26 Denv. J. Int'l L. & Pol'y 27, 52 (1997).

2022) (discussing sovereign nations); *American-Arab Anti-Discrimination Comm.,* 119 F.3d at 1370 (the PFLP "is engaged in a wide range of lawful activities, including the provision of education, day care, health care, and social security, as well as cultural activities, publications, and political organizing") (quotations omitted).  The provision of generalized support to the PFLP as a PLO political faction did not make the Attack foreseeable or demonstrate Defendants' general awareness of, or involvement in, any alleged terrorist activities.  *Honickman v. BLOM Bank*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting "fungibility" of money theory that would "displace the aiding-and-abetting standard with the standard for criminal material support by making 'knowingly providing material support to an FTO, without more' sufficient 'as a matter of law' for the general awareness element"); *Copeland v. Twitter*, 352 F. Supp. 3d 965, 975 (N.D. Cal. 2018) ("The plaintiff must show that the defendant *intended* to further the organization's terrorist activities or at least was 'generally aware' that, through its actions, the defendant 'was thereby playing a 'role' in [the organization's] violent or life-endangering activities.'  That means more than just providing material support to such an organization.") (cleaned up; emphasis in original).

The FAC also fails to plausibly allege that the Attackers were PFLP operatives.  To be sure, if the PFLP did not "commit, plan, or authorize" the Attack, the aiding-and-abetting claim must be dismissed.  *Crosby v. Twitter, Inc.*, 921 F.3d 617, 626 (6th Cir. 2019) (affirming dismissal of secondary liability claim where Plaintiffs pled "insufficient facts to allege that ISIS 'committed, planned, or authorized' the Pulse Night Club shooting").  In this case, Plaintiffs rely on self-serving after-the-fact claims of responsibility by PFLP leaders (FAC ¶¶ 172, 173), despite no allegations in the FAC that the PFLP had advance knowledge.[19]  *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1222

---

[19] Courts hold that after-the-fact claims of responsibility to be inherently untrustworthy because terrorists have self-serving motivations to make those claims, regardless of the truth.  *Gill v. Arab Bank*, 893 F. Supp. 2d 542, 569

(11th Cir. 2021) ("[Committed, planned, or authorized] connotes conscious actions at the time of or before an act. Here ISIS claimed credit after-the-fact, and there is nothing in the complaint to suggest that ISIS was aware of [the attacker] or knew beforehand about his planned attack.") (citation omitted); *Copeland*, 352 F. Supp. 3d at 974-75 (same); *c.f. Atchley*, 22 F.4th at 219 (Hezbollah's planning role was evident from unique weapons used in attacks).

Plaintiffs' reliance on allegations about an unrelated attack three-and-a-half years earlier fares no better. Pl. Br. 48; FAC ¶ 158. The PFLP's culpability for the 2011 attack on the Fogel family is not probative of whether Defendants were "generally aware" of the Attack here—particularly in light of their status as a "key partner" in "combating terrorism." Gov't Br. 2 n.2.

> **2.** **The FAC fails to show that the defendants knowingly and substantially assisted the Attack.**

"A defendant who lacks general awareness cannot be said to have knowingly assisted a foreign terrorist organization," *Bernhardt*, 47 F.4th at 870, and for the reasons discussed *supra*, Defendants lacked general awareness and therefore could not have knowingly assisted the Attack.

Plaintiffs also fail to plausibly plead that any assistance allegedly provided by the Defendants was "substantial," and thus played a "major part in prompting," or was integral to, the Attack. *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983); *Bernhardt*, 47 F.4th at 871 (failure to show that aid was "significant" "severely undermines a finding of substantiality"). Aiding-and-abetting liability may not rest on the provision of generalized assistance to a terrorist

---

(E.D.N.Y. 2012) ("The motivation of self-interest in a claim of 'credit' for a terrorist attack on a civilian undermines trustworthiness. An incentive exists for an individual or an organization to mislead. Under the perverse assumptions of terrorists, an armed attack on civilians reflects glory. Taking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances."); *Strauss v. Credit Lyonnais*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) ("Hamas actively seeks publicity for its claims of responsibility for attacks against Israelis as part of its propaganda. Thus, in this instance, Hamas' claims of responsibility were not against its interest as an organization such that Hamas only would have made them if it believed them to be true.") (citation omitted); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 205 (D.D.C. 2014) (same); *Shatsky*, 292 F. Supp. 3d at 194–95 (same).

**0938**

organization,[20] rather than to the actual "act of international terrorism" that injured Plaintiffs, and "[c]ourts now routinely dismiss ATA claims when the plaintiffs fail to allege a direct link between the defendants and the individual perpetrator." *Crosby*, 921 F.3d at 627 n.6 (collecting cases). Section 2333's use of the singular—"an act"—makes clear that a defendant is liable for aiding-and-abetting only when it assists a specific crime, not an overall "enterprise" or "campaign." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) ("Congress's decision to use the indefinite article 'a'" can provide "evidence that it used the term" to mean "a discrete … thing.").

Plaintiffs have not pled facts showing the Defendants provided any pre-Attack or contemporaneous assistance to the Attackers.[21]  Generalized support provided by Defendants to the PFLP cannot constitute substantial assistance because, as discussed above, Plaintiffs have not plausibly pled that the Attack was orchestrated by the PFLP.  But even if the PFLP were responsible, the alleged assistance—"funding, radio frequency, and internet service that Defendants provided the PFLP" (Pl. Br. 36-37)—was not "substantial." *Shatsky*, 2017 U.S. Dist. Lexis 94946, *29 ("[P]laintiffs posit a connection between [a PFLP office] rent payment and the bombing based solely on the fact that [the office was] nearby to [the bombing location].  To say the least, that is a stretch!").  Specifically, the FAC <u>does not</u> allege that: (1) funds provided by the Defendants to the PFLP were transferred to the Attackers or used to fund the Attack; (2) the Attackers benefited in any way from "support payments" to "experienced and hardened terrorist leaders and operatives" of the PFLP (Pl. Br. 37 (quotations omitted)); or (3) the Attackers were

---

[20] The "material support" provision of 18 U.S.C. § 2339B establishes criminal liability for "knowingly provid[ing] material support or resources to" an FTO.  Congress could have used similar language if it intended to create aiding-and-abetting liability for generalized aid—but the fact that Congress did not indicates that it "intentionally and purposely" declined to create such liability. *Russello v. United States*, 464 U.S. 16, 23 (1983).

[21] Nor have Plaintiffs pled any facts showing that the Attackers were motivated by the payments program. *Shatsky*, 2017 U.S. Dist. Lexis 94946, *31 ("these after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron bombing"); *Sokolow*, 60 F. Supp. 3d at 517 n.11 (same).

**0939**

aware of, let alone radicalized by, PFLP radio programs or any website hosted on "Defendants' top-level domain" (Pl. Br. 40).[22]

Finally, as a donor of significant economic assistance to Palestine, the United States was aware of the funding and resources provided by Defendants to the various political factions, including the PFLP.  The Government would not have called the PA a "key partner of the United States and Israel in stabilizing the West Bank and combating terrorism" (Gov't Br. 2 n.2) if the Defendants were "knowingly and substantially" assisting in the commission of terrorist attacks.

## VI.   PLAINTIFFS HAVE FAILED TO ALLEGE LIABILITY UNDER ISRAELI LAW.

Plaintiffs' Israeli law expert concedes that negligence requires Defendants' actions to be a "but-for" or "*sine qua non*" cause of Plaintiffs' injuries.  Shnoor Decl. (Dkt. 69-13) at ¶ 7.  Significantly, Plaintiffs do not argue they have met this strict standard – *i.e.*, that, but-for the limited and generalized governmental support to the PFLP, the Attack would not have occurred.  Pl. Br. 51.  Nor could Plaintiffs plausibly make such an assertion because much of the governmental support was monetary.  Courts have repeatedly recognized that the fungibility of money bars a finding of but-for causation where a terrorist group has multiple funding sources.  *Linde v. Arab Bank*, 97 F. Supp. 3d 287, 324 (E.D.N.Y. 2015), *vacated on other grounds,* 882 F.3d 314 (2d Cir. 2018); *Gill*, 893 F. Supp. 2d at 507-08.  This is precisely the case here, where Plaintiffs have sued others, including Syria and Iran, for providing support for the same Attack.  Nor have Plaintiffs shown that the provision of radio frequencies, web domains, office space, or prisoner payments played any role in the Attack.

---

[22] Providing means of communication, without more, is insufficient for aiding-and-abetting liability.  *See Retana v. Twitter*, 1 F.4th 378, 384 (5th Cir. 2021) ("the Dallas shooting was committed solely by Johnson, not by Hamas's use of Defendants' Internet services and social media platforms to radicalize Johnson").

Even if negligence may be imposed on "multiple 'but-for' tortfeasors" (Dkt. 69-13 at 2) that is beside the point because Plaintiffs cannot meet the but-for causation standard as to the Defendants (Dr. Shnoor never undertakes any analysis on that point.)  Given that Plaintiffs sued others for this same Attack, they cannot allege that the Attack would not have occurred but-for the alleged support from Defendants—as opposed to support from Syria, Iran, or other entities.  And Plaintiffs' claims for negligence and vicarious liability under Israeli law also fail for the same reasons their ATA claims fail—the FAC does not plausibly plead any connection between Defendants' governmental support and the Attack.  Def. Mtn 44.  Without but-for or proximate causation, Plaintiffs have failed to state a claim for either negligence or vicarious liability under Israeli law.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' FAC should be dismissed.

November 14, 2022

Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

/s/  *Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

717 17th Street, Suite 1825
Denver, CO 80202
Telephone: (303) 830-1776
Facsimile: (303) 894-9239

*Attorneys for Defendants*

- 37 -

**0941**

## CERTIFICATE OF SERVICE

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on November 14, 2022, I caused true and correct copies of the foregoing to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  November 14, 2022

_/s/ Gassan A. Baloul_

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

                     Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                     Defendants.

---

## PLAINTIFFS' SUPPLEMENTAL BRIEFING CONCERNING
## *MALLORY V. NORFOLK S. RY.*, No. 21-1168 (U.S. June 27, 2023)

---

**0943**

*Mallory v. Norfolk S. Ry.*, 143 S. Ct. 2028 (2023) affirmed the validity of *Pennsylvania Fire v. Gold Issue Mining & Milling*, 243 U.S. 93 (1917) and similar cases, and thus requires the denial of Defendants' pending motion to dismiss for lack of personal jurisdiction.[1]

## A.    The Impact of *Mallory* on the Pay-for-Slay Prong of the PSJVTA

*Mallory* negates Defendants' claim due process requires <u>subjective</u> consent to submit to jurisdiction—holding personal jurisdiction may be waived "expressly <u>or constructively</u>." *Id*. at 2045. (Jackson, J., concurring) (emphasis added). Thus, due process is met if defendant performed a "voluntary act" which the statute warned would constitute submission to jurisdiction, regardless of a defendant's subjective desire to submit to jurisdiction. *Penn. Fire*, 243 U.S. at 96.

*Mallory* also rebuts Defendants' claim due process demands a quid pro quo. "[A] <u>variety of actions</u> of the defendant that may seem like technicalities nonetheless can amount to a legal submission to the jurisdiction of a court." *Id*. at 2044 (cleaned up, emphasis added).[2] *Mallory* therefore disposes of Defendants' claim the "Pay-for-Slay" prong is facially unconstitutional.

Plaintiffs allege (based on Defendants' own documents) that since the statutory trigger date, Defendants "made over one thousand Pay-for-Slay payments, totaling millions of dollars, to over 100 terrorists involved (or to the family members of terrorists who were killed) in some 50 terrorist attacks in which American citizens were killed or injured," including the decedents and plaintiffs in <u>this</u> action. DE 50, ¶¶ 20-23. Defendants did <u>not</u> dispute these facts. Rather, they admit the Pay-for-Slay elements were met, and ask the Court to "move directly to the constitutional issues." DE 58, at n.4. These facts are thus established. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (cleaned up).

---

[1] Plaintiffs maintain their threshold argument that these defendants lack due process rights.

[2] *Cf. Fuld v. PLO*, 578 F. Supp. 3d 577, n.10 (S.D.N.Y. 2022) (quid pro quo <u>not</u> required by due process).

**0944**

Whether the Pay-for-Slay prong would meet due process in <u>every other</u> case is irrelevant. Here, given the volume of payments, the number of U.S. victims who were the subject of those payments, and the fact Defendants paid "Martyr" benefits for the <u>specific terrorist murderers</u> who executed the attack from which <u>this action</u> arises, it is clear due process is satisfied.

**B.      The Impact of *Mallory* on the U.S.-Activities Prong of the PSJVTA**

*Mallory* and *Pennsylvania Fire* show the PSJVTA's U.S.-activities prong is a continuation in a long line of constitutionally sound statutes deeming various types of voluntary conduct to be a willing submission to personal jurisdiction in the forum.

Plaintiffs allege Defendants submitted to personal jurisdiction under the U.S.-activities prong because after the statutory trigger date they voluntarily used their U.S. offices "as a personal residence, and to conduct propaganda, social media, and other public relations activities that are unrelated to the official business of the United Nations" and "[D]efendants and their employees and agents conducted activities on [D]efendants' behalf while physically present in the United States, including extensive propaganda, public relations, lobbying, and social media activities that are unrelated to the official business of the United Nations." Plaintiffs also allege the PA lacks capacity to conduct foreign relations and has no status at the UN, and thus as a <u>threshold</u> matter <u>none</u> of its U.S.-based conduct can be official UN business. DE 50, ¶¶ 24-26.

Defendants' sole reply to these facts is a footnote claiming all their U.S. activities were official UN business or "exempt meetings," and claim the PLO's non-UN activities since the PSJVTA trigger date were all activities barred by the 1987 Anti-Terrorism Act (which applies to the PLO, not the PA).[3] DE 58 at 12, n.7. But these <u>factual</u> claims are <u>unsupported by affidavits</u> and

---

[3] "[T]he Anti-Terrorism Act of 1987 [...] prohibits the expenditure of <u>funds from the Palestine Liberation Organization</u> in the United States to <u>further the PLO's interests</u>" and "the PA and the PLO <u>are legally distinct entities</u>." *Application of the Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*, 2022 WL 16859386, at 1, n.1 (O.L.C. Oct. 28, 2022) (emphasis added).

**0945**

so must be disregarded. *Wenz*, 55 F.3d at 1505. Moreover, "[a]rguments made in a perfunctory manner, such as in a footnote, are waived." *Titan Feeding v. Corey Cattle*, 2022 WL 4182458, at *8 (D. Colo. Sept. 13, 2022) (cleaned up). Further, *Mallory* eliminates the (factually unsupported) claim that none of the PLO's non-UN activities are cognizable under the PSJVTA since they were all illegal under the 1987 ATA. *Mallory* confirmed *Pennsylvania Fire*, which endorsed the rule a defendant cannot dodge jurisdiction by arguing the illegality of its activities, since a defendant is "estopped to set up its own wrong as a defense." *Id.*, 243 U.S. at 96. Finally, Defendants <u>do not contest the allegation the PA lacks any UN status</u>.

On this record and under *Wenz*'s burden-shifting rule, the Court should find Plaintiffs have made a "prima facie showing" (*id.* at 1505) that the U.S.-activities prong is satisfied. Alternatively, the Court should order briefing on Defendants U.S.-activities. Plaintiffs' opposition explained that Defendants produced extensive discovery from the *Shatsky* case concerning the PSJVTA's factual predicates, but given Defendants' decision to challenge the PSJVTA solely on facial (not factual) constitutional grounds, Plaintiffs saw "no reason to burden the Court with the massive volume of underlying records from the *Shatsky* production, which are not now and likely never will be […] necessary to determining jurisdiction." DE 69 at 15. Plaintiffs volunteered to submit the materials as needed or the Court orders (*id.*), and remain ready to do so.

Because the PSJVTA's look-back period is "5 consecutive calendar years" § 2334(2)(e), the relevant period for considering Defendants' U.S.-activities runs from early 2020 <u>until today</u>. But the time period covered by the *Shatsky* discovery <u>ended in mid-2021</u>. Thus there has not been any discovery, in any case, regarding Defendants' U.S. activities <u>during the past two years</u>. Thus, if Defendants' motion is not denied on this record, Plaintiffs should be permitted jurisdictional discovery on Defendants' U.S.-activities not covered by *Shatsky*, prior to factual briefing.

**0946**

DATED this 24th day of July, 2023.

Respectfully Submitted,


*s/ Daniel K. Calisher*
Daniel K. Calisher
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiffs*


*s/ Jordan Factor*
Jordan Factor
Allen Vellon Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-534-4499
Email: jfactor@allen-vellone.com
*Attorneys for Plaintiffs*


*s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-233-7164
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*

**0947**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of July, 2023, a true and correct copy of the foregoing **PLAINTIFFS' SUPPLEMENTAL BRIEFING CONCERNING *MALLORY V. NORFOLK S. RY.*, No. 21-1168 (U.S. June 27, 2023)**, was electronically served upon all counsel of record via *ECF*.

_____*s/ Daniel K. Calisher*_____

**0948**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **SHELLEY LEVINE**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**THE PALESTINE LIBERATION ORGANIZA-TION** and **THE PALESTINIAN AUTHORITY**,<br><br>Defendants. | Case No. 1:21-cv-03043-RM-STV |

## INTERVENOR UNITED STATES OF AMERICA'S
## SUPPLEMENTAL BRIEF

**0949**

The United States intervened in this case to defend the constitutionality of the Promoting Security and Justice for Victims of Terrorism Act of 2019's ("PSJVTA") deemed consent provisions. *See generally*, U.S. Br., ECF No. 73. Per the Court's order, ECF No. 105, the United States submits this brief to explain why the Supreme Court's decision in *Mallory v. Norfolk Southern Railway Company*, 143 S. Ct. 2028 (2023), confirms that the PSJVTA's deemed consent provisions are facially constitutional.

In *Mallory*, the Court upheld as consistent with due process a Pennsylvania law providing that a company's registration as a foreign corporation allowed the state courts to exercise "general personal jurisdiction" over it. 143 S.Ct. at 2037 (citing 42 Pa. Cons. Stat. § 5301(a)(2)(i)). The Court found that *Pennsylvania Fire v. Gold Issue Mining & Milling*, 243 U.S. 93 (1917), controlled and that the statute was consistent with due process because (1) "Pennsylvania law is explicit" about what actions will be deemed consent to general personal jurisdiction, (2) defendant Norfolk Southern admitted that it registered as a foreign corporation, and (3) Norfolk Southern conceded that "it understood it would be amenable to suit on any claim" as a result of that registration. *Id.* The statute was constitutional because it gave fair warning that a particular activity would subject companies to jurisdiction, and registering corporations provided knowing and voluntary consent to personal jurisdiction—just like the PSJVTA.

Like Defendants in this case, Norfolk Southern claimed that Pennsylvania's law violated the Fourteenth Amendment's Due Process clause, arguing that a law specifying that certain conduct would be deemed consent to personal jurisdiction is unconstitutional if that same conduct—standing alone—would not suffice to establish specific or general personal jurisdiction. Resp. Br., *Mallory*, 2022 WL 3925010 at **13–15, **20–21; *see* ECF No. 76, at 1. The Supreme Court rejected this argument, distinguishing between personal jurisdiction on the basis of consent and the establishment of general or specific personal jurisdiction in the absence of consent. *Mallory*, 143 S. Ct. at 2039; *id.* at 2048–49 (Alito, J., concurring) (distinguishing between cases that involve deemed consent with "cases invol[ing]

**0950**

constitutional limits on jurisdiction over *non-consenting* corporations"); *id.* at 2045 (Jackson, J., concurring) (with deemed consent, "a State can exercise jurisdiction over the defendant consistent with the Due Process Clause, even if our personal-jurisdiction cases would normally preclude the State from subjecting a defendant to its authority under the circumstances presented.").

Like Defendants here, Norfolk Southern also relied on *College Savings Bank* to argue that a statute cannot define what conduct implies consent to personal jurisdiction. Resp. Br., *Mallory v. Norfolk S. Rlwy. Co.*, 2022 WL 3925010 at *12 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)); Defs.' Reply ISO Mot. to Dismiss, ECF No. 76 at 3, 5–6 ("Defs.' Reply"). The Supreme Court rejected that argument and squarely held that a statute *could* set out what conduct is deemed consent to personal jurisdiction. *Mallory*, 143 S.Ct. at 2043–44; *id.* at 2046 (Jackson, J., concurring); *id.* at 2048–49 (Alito, J., concurring).

A majority in *Mallory* also used a flexible approach to decide when a party knowingly and voluntarily consents. Contrary to Defendants' argument, Defs.' Reply at 3, "'[a] variety of legal arrangements have been taken to represent express or implied consent to'" personal jurisdiction consistent with due process." 143 S. Ct. at 2030 n.5; *id.* at 2039 ("consent may be manifested in various ways by word or deed."); *id.* at 2045–46 (Jackson, J., concurring) (consent is valid where consequence was clear and not compelled); *id.* at 2047 (Alito, J., concurring) (consent occurred where defendant "acted with knowledge"). Driving the point home, the Court held that "under our precedents a variety of 'actions of the defendant' that may seem like technicalities nonetheless can 'amount to a legal submission to the jurisdiction of a court.'" *Mallory*, 143 S. Ct. at 2044; *id.* at 2028 (Jackson, J., concurring) (describing many ways to waive personal jurisdiction); *id.* at 2047–48 (Alito, J., concurring) (similar).

*Mallory* also underscores Defendants have failed "*[their] burden* of showing that original and historic understandings of due process foreclose consent statutes" like the PSJVTA. 143 S.Ct. at 2035,

**0951**

n.5. Defendants identify no binding case that makes the distinction they ask the Court here to make—that the PSJVTA's consent provisions violate due process because Defendants get no benefit in exchange for their consent. Defs.' Reply ISO Mot. to Dismiss, at 7, ECF No. 76. While an acceptance of a benefit can *sometimes* be part of an exchange establishing deemed consent to personal jurisdiction, *Mallory* did not hold that the Due Process Clause requires such an exchange to satisfy due process.

Defendants downplay *Mallory*'s significance, describing the holding as "quite narrow" and largely a plurality opinion. Defs.' Resp. to Pls.' Notice at 2, ECF No. 104. But even Justice Alito, whose opinion is arguably the narrowest, held that exercising personal jurisdiction under the Pennsylvania law did not violate Due Process. *See* 143 S. Ct. at 2046 (Alito, J., concurring in the judgment); *id.* at 2044 n.11 (noting areas of agreement between the plurality opinion and Justice Alito's concurrence). While Justice Alito separately noted his view that "the dormant Commerce Clause" may limit "a State's authority to condition" the "right of an out-of-state corporation to do business in another State," that observation has no application to the federal PSJVTA. *Id.* at 2052 (Alito, J., concurring).

The PSJVTA involves exercising federal judicial authority over non-sovereign foreign entities, who, like Norfolk Southern, have been deemed to consent to personal jurisdiction based upon a statute that gave fair warning of what activity might subject them to suit. Compared to the statute in *Mallory*, the consent provided under the PSJVTA is narrow, and enacted to further U.S. foreign policy of combatting international terrorism harming U.S. nationals. As relevant here, the Constitution vests the political branches—Congress and the Executive—with responsibilities over foreign relations and authorizes those branches to define the country's relationship with foreign entities, like Defendants in this case. *See* U.S. Br., ECF No. 73, at 11–13. The PSJVTA is a constitutional exercise of that power.

For these reasons and those in its original brief, the United States urges the Court to find that the deemed consent provisions of the PSJVTA are facially constitutional.

Dated: July 24, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

DIANE KELLEHER
Assistant Director

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Fax: (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

*Counsel for Intervenor*
*United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Zachary A. Avallone*

ZACHARY A. AVALLONE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

                    Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION
and THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian Interim Self-Government Authority" and/or
"The Palestinian National Authority"),

                    Defendants.

---

**DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING *MALLORY***

---

**0955**

In *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028 (2023), the Supreme Court reaffirmed two points central to Defendants' arguments: (1) *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694, 704-05 (1982), provides the due process framework for evaluating whether "some 'actions of the defendant … amount to a legal submission to the jurisdiction of the court'" (MTD 6, quoting *Bauxites*); and (2) under that framework, a court may infer "consent" or submission to personal jurisdiction from a defendant's choice to accept a government benefit "with jurisdictional strings attached." *Mallory* 143 S. Ct. at 2044. From the start, Defendants have pointed to business registration statutes as exemplifying implied consent to jurisdiction: when a defendant accepts the benefit of "doing business in the state," it "freely and voluntarily" accepts "the conditions the forum places on such activities." MTD 10-11 & n.6; Reply 6 & n.2.

*Mallory* thus applies the same, well-established standards for "consent" addressed in Defendants' prior briefs. The PSJVTA does not provide valid "consent" to jurisdiction under this framework because there is no benefit for Defendants to accept or reject in exchange for their purported consent. Further, none of Defendants' alleged activities supports a presumption that Defendants knowingly and voluntarily submitted to personal jurisdiction. This Court should also reject Plaintiffs' improper new arguments on the PSJVTA's factual predicates.

## I. *Mallory* Confirms the Due Process Standards for Consent to Personal Jurisdiction.

Despite the fractured opinions in *Mallory*,[1] all nine Justices agreed that *Bauxites* provides

---

[1] The Court's actual holding in *Mallory* is narrow. Five Justices agreed only on a statement of the case and that the Court's prior decision in *Pennsylvania Fire* —which upheld a similar business-registration statute—"controls this case" and remains good law. *See Mallory*, 143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B). The Government's reliance on other sections is misplaced: *Mallory* does <u>not</u> present a plurality opinion that requires lower courts to read tea-leaves.

**0956**

the standard for evaluating "consent" to personal jurisdiction under the Due Process Clause. *Mallory*, 143 S. Ct. at 2039, 2044 (plurality op.); *id.* at 2045-46 (Jackson, J., concurring); *id.* at 2048, 2051 (Alito, J., concurring in part); *id.* at 2057 (Barrett, J., dissenting) (each citing *Bauxites*).

As Defendants previously explained, *Bauxites* provides the key to distinguishing between valid "consent" to jurisdiction and "mere assertions of power" by the forum to unilaterally impose jurisdiction. *See* Reply 3-5 (quoting *Bauxites*). *Bauxites* explains that a "variety of legal arrangements" can create consent to personal jurisdiction. 456 U.S. at 703-04. Sometimes, as with a forum selection clause, consent is express. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"). Other times, courts may infer consent based on litigation conduct that a defendant intends to submit to jurisdiction. *See, e.g.*, *Roell v. Withrow*, 538 U.S. 580, 584 (2003) (parties who "voluntarily participated in the entire course of proceedings" through trial without objecting to jurisdiction "clearly implied their consent"); *Hooper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (implied consent through litigation conduct).

But "whether express or implied," a party's consent must be "knowing and voluntary." *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015). An "effective waiver of a constitutional right" generally requires proof of "the 'intentional relinquishment or abandonment of a known right or privilege.'" *College Savings Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 679, 682 (1999). Because implied or "constructive" consent "is not a doctrine commonly associated with the surrender of constitutional rights," federal courts "indulge every reasonable presumption against waiver." *Id.* at 681-82.

To give rise to valid consent under the Due Process Clause, *Bauxites* explains that the

**0957**

defendant's conduct must be sufficient to support a "presumption of fact" that the defendant submitted to jurisdiction in the forum. 456 U.S. at 705-06 (compliance with the "*Hammond Packing* presumption" is necessary to "secure[]" the "preservation of due process"). Inferring consent "is reasonable," in other words, "only where the defendant's statements or conduct actually signal approval or acceptance" of the court's jurisdiction, and thereby serve as a reasonable "proxy" for consent. *Fuld v. PLO*, 578 F. Supp. 3d 577, 586-87 (S.D.N.Y. 2022).

*Mallory* does not make new law—quite the opposite. Its majority opinion (143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B)), is limited to <u>affirming</u> the old business registration statute case, *Pennsylvania Fire*. Applying this framework, *Mallory* held that the defendant's specific conduct—registering to do business in Pennsylvania and "tak[ing] full advantage" of that opportunity by hiring nearly 5,000 employees, maintaining 2,400 miles of track, and spending over $1 billion—was sufficient to support the presumption it had submitted to jurisdiction. 143 S. Ct. at 2041-42. By complying with the statute, Norfolk Southern obtained "the benefits and burdens shared by domestic corporations"—including consent to suit in state court. *Id.* at 2037.

None of the *Mallory* opinions cited, let alone purported to reject, *College Savings*, whose framework for distinguishing "consent" to jurisdiction from legislatively-imposed jurisdiction is fully in line with *Bauxites*. *Contra* Gov't Br. 2. *Mallory* involved the defendant's acceptance of an in-forum benefit conditioned on consent to suit in Pennsylvania. The statute at issue in *College Savings*, by contrast, offered no benefit, but rather imposed jurisdiction to punish conduct that Congress wanted to curtail. The Court rejected such statutes, explaining that the imposition of jurisdiction by legislative fiat presents a "fundamentally different" case than implying consent from a defendant's acceptance of a benefit or "gratuity" from the forum conditioned on consent.

**0958**

*College Savings*, 527 U.S. at 686-87; *see also Bauxites*, 456 U.S. at 705-06 (distinguishing between valid consent and the improper imposition of jurisdiction as "punishment").

The specific conduct relied upon by Plaintiffs in this case—Defendants' diplomatic activities in the U.S. and social welfare payments in Palestine—does not depend on any "benefit" or allowance by the U.S. government, nor does it otherwise support a presumption that Defendants voluntarily submitted to personal jurisdiction in the United States.  To the contrary, courts have repeatedly held the same conduct is insufficient to support personal jurisdiction over Defendants under the Due Process Clause.  *See* MTD 16-17; Reply 10-11.  Because that conduct is insufficient to support jurisdiction, Defendants' decision to continue engaging in the same, jurisdictionally-insufficient conduct after enactment of the PSJVTA signifies nothing about jurisdiction, let alone consent to jurisdiction.  Instead, the PSJVTA imposes jurisdiction as punishment for conduct Congress dislikes, just as in *College Savings*.

## II.    *Mallory* Reaffirms that Acceptance of a Government Benefit May Create Consent—But the PSJVTA Fails to Provide Any Such Benefit.

In holding that Norfolk Southern consented to jurisdiction by registering to do business in the State, the Court relied on the same "exchange-of-benefits" theory discussed in Defendants' briefs.  *See* MTD 10-11; Reply 6-7, 10.  The statute at issue in *Mallory* required out-of-state corporations to consent to personal jurisdiction "in exchange for status as a registered foreign corporation and the benefits that entails."  143 S. Ct. at 2033 (emphasis added).

Consistent with Defendants' prior briefing, *Mallory* explained that "state laws requiring consent to suit in exchange for access to [the State's] markets" are one of the "variety of legal arrangements" under *Bauxites* that can give rise to implied consent to jurisdiction.  *Id.* at 2041 n.8 (plurality opinion) (emphasis added); *see also id.* at 2041 (the statute "gave the company the right

**0959**

to do business in-state in return for agreeing to answer any suit against it," and "the company had taken full advantage of its opportunity to do business in the Commonwealth" (emphasis added)). By accepting the invitation to register, Norfolk Southern agreed to "both the benefits and burdens shared by domestic corporations"—including consent to jurisdiction in the State. *Id.* at 2037.

The PSJVTA does not provide any government benefit for Defendants to accept or reject. Unlike its predecessor statute, the Anti-Terrorism Clarification Act, the PSJVTA does not ground "deemed consent" on acceptance of foreign assistance or a waiver of the ATA's prohibition on Defendants' operations in the United States. Reply 6-7. The PSJVTA thus falls outside the "exchange-of-benefits" line of cases reaffirmed by *Mallory*, which hinge on the defendant "accepting an in-[forum] benefit with jurisdictional strings attached." 143 S. Ct. at 2044.

The PSJVTA instead imposes "deemed consent" even though Defendants have not accepted any government benefit conditioned on consent, or engaged in other conduct that would support the presumption they have submitted to suit in the United States. Nothing in *Mallory* suggests the Court would accept the legislative imposition of personal jurisdiction over Defendants in the absence of such conduct. *See* 143 S. Ct. at 2038 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit.").

### III.   *Mallory* Does Not Change the Analysis of the PSJVTA's Factual Predicates.

This Court should reject Plaintiffs' attempt to improperly use their *Mallory* brief to make new arguments on the PSJVTA's factual predicates—though those arguments fall under their own weight in any case. Defendants produced the entire jurisdictional discovery record from *Shatsky v. PLO*, No. 18-12355 (S.D.N.Y.), where identical PSJVTA jurisdictional issues were litigated. The *Shatsky* record included thousands of documents, and four days of 30(b)(6) testimony on the

**0960**

Payments Predicate from the Palestinian Deputy Minister of Finance and the Director of Salary and Financials.  That record shows Defendants' program applies equally to every Palestinian imprisoned or killed in connection with the conflict with Israel, such that the payments in this case are qualitatively identical to those found insufficient to support jurisdiction in prior cases.  *See, e.g., Fuld*, 578 F. Supp. 3d 577; *Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) ("martyr payments" did not confer personal jurisdiction).

Plaintiffs also ask for new discovery on the U.S. Activities Predicate, despite comprehensive paper discovery on that issue and five 30(b)(1) depositions in *Shatsky* from Defendants' UN Ambassador, Deputy UN Ambassador, UN Media Affairs Advisor, and others. Plaintiffs guess things may have changed, but "pure speculation as to the existence of helpful facts" cannot support additional jurisdictional discovery.  *Dental Dynamics v. Jolly Dental Grp.*, 946 F.3d 1223, 1234 (10th Cir. 2020).  For more than 35 years, courts have held that the activities of Palestine's UN Mission are protected and limited under the UNHQA and do not depend on U.S. government authorization.  *U.S. v. PLO*, 695 F. Supp. 1456 (S.D.N.Y. 1988).

The U.S. government—fully empowered by the 1987 ATA to enjoin Defendants' activities if they exceed UNHQA bounds, *see* 22 U.S.C. §§ 5202-5203—has never (even here) claimed that Defendants' U.S. activities exceed those bounds.  Instead, the activities alleged in the FAC are all diplomatic or UN-related—Defendants do <u>nothing</u> in the U.S. that is illegal under the ATA.  *See* MTD 5-6, 11-12, 16-17; Reply 9-10, 11, 12-13, 19.  Defendants' "activities in furtherance of the Mission's work" are official UN actions as defined by the United Nations itself.  *See* MTD 11; Report, UN CEIRPP, UN Doc. A/75/35 (Oct. 10, 2020) (describing the official purpose and activities of the UN committee in which Palestine's UN Mission participates).

**0961**

Dated:  August 3, 2023                    Respectfully submitted,


                                          *s/ Gassan A. Baloul*
                                          Gassan A. Baloul
                                          Mitchell R. Berger
                                          Squire Patton Boggs (US) LLP
                                          2550 M Street, N.W.
                                          Washington, D.C. 20037
                                          Telephone: (202) 457-6000
                                          Facsimile: (202) 457-6315
                                          gassan.baloul@squirepb.com
                                          mitchell.berger@squirepb.com

                                          *Attorneys for Defendants*

**0962**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 3rd day of August, 2023 a true and correct copy of the

foregoing **DEFENDANTS' SUPPLEMENTAL BRIEF CONCERNING *MALLORY*** was

electronically served upon all counsel of record via *CM/ECF*.


<u>*s/ Gassan A. Baloul*</u>
Gassan A. Baloul

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-03043-GPG-STV

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

## ORDER

---

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint

under Rule 12(b)(2) and Rule 12(b)(6) (D. 58).  The Court GRANTS the motion for the following

reasons.

## I.  FACTS

This civil action arises from a terrorist attack in a synagogue in the Israeli Har Nof

neighborhood of Jerusalem on November 18, 2014 (D. 50 at 38).[1]  Plaintiffs allege that two

operatives of the Popular Front for the Liberation of Palestine (PFLP), Uday Abu Jamal and

Ghassan Abu Jamal, carried out a terrorist attack and killed several worshippers at the synagogue

(some of whom were also American citizens).  The victims included Rabbi Aryeh Kupinsky, Rabbi

---

[1] The Court draws the operative facts as set forth in Plaintiffs' First Amended Complaint (D. 50).

Moshe Twersky, Rabbi Abraham Goldberg, Rabbi Kalman (Cary) Levine, and Police Sergeant Zidan Saif.  The suspects also seriously injured Dr. Norman Heching and Rabbi Saul Goldstein (*id.* at 38-39).  This civil action is brought by the personal representatives of the estates of U.S. citizens Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky as well as of non-U.S. citizens Zidan Saif and Rabbi Abraham Goldberg (*id.* at 4).

Rather than bringing this civil action against the estate of Uday Abu Jamal and Ghassan Abu Jamal or the PFLP, Plaintiffs are suing the Palestine Liberation Organization (PLO) (claiming that it is a front for the PFLP), the Palestinian Authority (PA), and Riyad Mansour (as representative of the PLO and PA) pursuant to the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA), under 18 U.S.C. §§ 2333, 2334, and the Antiterrorism Act (ATA), under 18 U.S.C. § 2331.  Plaintiffs assert that this Court has original subject matter jurisdiction over Plaintiffs' ATA claims under 18 U.S.C. §§ 2331, 2333, 2334, and 2338 along with 28 U.S.C. § 1331, as well as supplemental subject matter jurisdiction over their Israeli-law claims under 28 U.S.C. § 1367.

Plaintiffs raise six claims:  (1) direct liability for international terrorism under 18 U.S.C. § 2333(a); (2) respondeat superior liability for international terrorism under 18 U.S.C. § 2333(a); (3) aiding and abetting under 18 U.S.C. § 2333(d); (4) conspiracy under 18 U.S.C. § 2333(d); (5) negligence under Israeli law, Civil Wrongs Ordinance (CWO) § 35; and (6) vicarious liability under CWO § 12 (*id.* at 42-54).  Defendants argue, inter alia, that exercising jurisdiction over them would violate due process and that the PSJVTA does not establish valid personal jurisdiction via the Due Process Clause of the Fifth Amendment (D. 58).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), if a court is without personal jurisdiction over a party, the court cannot render a valid judgment.  Fed. R. Civ. P. 12; *see J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021).  The plaintiff bears the burden of establishing that the federal court has jurisdiction over the defendant.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  To avoid dismissal, the plaintiff must make a prima facie showing of personal jurisdiction and must point to well-pleaded factual allegations, both in the complaint and in any supporting affidavits, that would support jurisdiction over each defendant.  *Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023).  When deciding personal jurisdiction without an evidentiary hearing the court does not need to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

Plaintiffs allege that the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(1)(C) and 4(k)(2).[2]  In a civil action based on a federal question, the

---

[2] Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA and general personal jurisdiction over Defendant Mansour (D. 69 at 19-34).  These claims typically arise under the Fourteenth Amendment and the state's long-arm statute, however, these claims may be analyzed under the Fifth Amendment as the standard is the same in civil cases (this issue will be addressed infra).  Ultimately, this Court finds that the PSJVTA's consent provision does not comport with due process.  Thus, to the extent that Plaintiffs would attempt to assert personal jurisdiction under Colorado's long-arm statute, this argument would fail too.  The plaintiff must show (1) the laws of the forum state potentially confer jurisdiction by authorizing service upon the defendant, and (2) the exercise of such jurisdiction comports with the principles of due process.  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citation omitted).  Because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause," the statutory and constitutional analysis is the same.  *Id.*  Thus, the court merely needs to examine whether the exercise of personal jurisdiction comports with due process.  The due process analysis examines whether:  (1) the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court (either by showing general or specific personal jurisdiction) and (2) the exercise of personal jurisdiction in the circumstances presented offends traditional notions of fair play and substantial justice.  *Id.* (quotations and citations omitted).  This Court finds that Defendants do not have any minimum contacts with the state

court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).  Under Rule 4(k)(1)(C), "[s]erving a summons or filing of a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014) (internal quotations and citation omitted).  "While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are [nonetheless] distinct concepts that require separate inquiries." *Id.*  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction . . . provided that due process is satisfied." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).

Rule 4(k)(2) provides for federal long-arm jurisdiction if the plaintiff can show:  (1) the defendant is not subject to the jurisdiction of any state's court of general jurisdiction, and (2) that the exercise of jurisdiction comports with due process, the United States Constitution, and laws. *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 671 (D. Colo. 2019); *see also Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012).  "This Rule serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Archangel Diamond Corp. Liquidating Tr.*, 75 F. Supp. 3d

of Colorado and would not expect to be haled into court here, thus the exercise of personal jurisdiction over Defendants would not comport with the Due Process Clause of the Fourteenth Amendment.

at 1360 (internal quotations and citation omitted).  In order to preclude the use of Rule 4(k)(2)

under the first prong of the test, courts require the defendant

> to name some other state in which the suit could proceed. Naming a more
> appropriate state would amount to a consent to personal jurisdiction there
> . . . If, however, the defendant contends that he cannot be sued in the forum
> state and refuses to identify any other state where suit is possible, then the
> federal court is entitled to use Rule 4(k)(2). This procedure makes it
> unnecessary to traipse through the 50 states, asking whether each could
> entertain the suit.

*Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311.

## III.  ANALYSIS

In the instant motion to dismiss, Defendants argue that:  (1) they have not consented to

personal jurisdiction under the PSJVTA; (2) the PA and PLO are persons under the Due Process

Clause of the Fifth Amendment, and (3) Federal Rule of Civil Procedure 23.2 does not convey

personal jurisdiction over them (D. 58, D. 76).  Plaintiffs contend that (1) Defendants have

submitted to jurisdiction under the PSJVTA by making payments to terrorists or family members

after the enactment of the PSJVTA; (2) the PLO and PA are not persons under the due process

clause; (3) this Court has specific jurisdiction over the PLO and PA; and (4) this Court has personal

jurisdiction over Defendants under Federal Rule of Civil Procedure 23.2 (D. 69).  The parties also

submitted briefing on the U.S. Supreme Court's decision, *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct.

2028 (2023), which held that Pennsylvania's consent statute requiring an out-of-state corporation

to consent to personal jurisdiction in order to register to do business within the state did not violate

the Due Process Clause of the Fourteenth Amendment.  There is no dispute Defendants PLO and

PA waived service of process in this action (D. 15) and Defendant Mansour was served at his home

address in Florida (D. 55).  The question before the Court is whether the PSJVTA consent

**0968**

provision for personal jurisdiction in federal courts comports with due process.  The Court finds that it does not.

### A.  PSJVTA

The scope of personal jurisdiction "flows not from Art. III, but from the Due Process Clause."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.").  The Court conveys its condolences to the victims and their families.  While the events described in Plaintiffs' First Amended Complaint are undoubtedly tragic, the Court is mandated to examine whether it can exercise jurisdiction and to ensure that it is within the limits prescribed by the Due Process Clause.[3]

To understand this case, it is necessary to understand the catalyst for the PSJVTA.  In 2016, the Second Circuit vacated a jury verdict against the PLO and PA due to a lack of jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016).   The Second Circuit determined that the PLO and PA were not recognized as sovereign states by the United States and were not corporations; rather, the PA was designated a non-sovereign government and the PLO as a foreign agent (both of which the Second Circuit defined as unincorporated associations).  *Id.* at 332.  Ultimately, the Second Circuit held that the defendants' activities in the United States (e.g., maintaining an office in Washington, D.C., promoting the Palestinian cause in speeches and media

---

[3] It is irrelevant for this Court to distinguish between the Fifth Amendment and Fourteenth Amendment in its analysis in this case because the minimum contacts and fairness analyses are the same under the Fifth Amendment and the Fourteenth Amendment in civil cases.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)); *see also Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1359 (D. Colo. 2014).

appearances, and retaining a lobbying firm) did not render the defendants essentially at home in the United States to such an extent that a federal court would have personal jurisdiction over civil claims regarding terrorist attacks in Israel.  *Id.* at 333; *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotations and citation omitted).  The Second Circuit ultimately ruled that there was no general personal jurisdiction, specific personal jurisdiction, or waiver of personal jurisdiction because the attacks occurred outside of the United States, the attacks in Israel were not expressly aimed at the United States (although Americans did die or suffer injuries), and lobbying activities by the defendants to change American policy were insufficiently related conduct under the ATA. *Waldman*, 835 F.3d at 343–44.

In light of this case and other rulings[4] that victims of terrorist attacks in Israel or family members of said victims could not bring a civil action against the PLO or PA under the ATA in federal courts, Congress enacted the PSJVTA.  18 U.S.C. § 2333; *see also* Further Consolidated Appropriations Act of 2020, Pub. L. No. 116-94, 133 Stat. 2534; *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 578 (S.D.N.Y. 2022).  The PSJVTA provides that any national of the United States who is injured "in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," may sue the PLO or PA "to recover threefold

---

[4] *See, e.g., Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54 (D.C. Cir. 2017).

the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).

Specifically, the PSJVTA declares that the PLO and PA "shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed" if either (1) after 120 days post-enactment of the PSJVTA, the defendant makes a direct or indirect payment to a party who has committed an act of terrorism or to any family member of an individual who died committing an act of terrorism that killed or injured a United States national; or (2) after 15 days post-enactment of the PSJVTA, the defendant continues to maintain or establishes an office, headquarters, premises, or other facilities or establishments in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority."  18 U.S.C. § 2334(e)(1)(A)-(B).  The PSJVTA notes that "no court may consider," inter alia, that any premise or activity undertaken was exclusively for the purpose of conducting official business of the United Nations (UN) when determining consent to personal jurisdiction.  18 U.S.C. § 2334(e)(3).  Like the U.S. District Court for the Southern District of New York, this Court finds that Congress cannot simply legislate that "any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court."  *Fuld*, 578 F. Supp. 3d at 580.  Ultimately, the Court finds that it cannot exercise jurisdiction in this case because the consent provision of the PSJVTA does not comport with due process.

**0971**

### 1. Persons under the Due Process Clause

First, Plaintiffs argue that the PLO and PA are not persons under the Due Process Clause and that the Due Process Clause only applies to natural persons and private corporations but not a political body or a sovereign (D. 69 at 6-7). This argument is unavailing. Plaintiffs clearly allege in the Amended Complaint that Defendants PLO and PA are each "a person as defined in 18 U.S.C. § 2331." Per 18 U.S.C. § 2331(3), "the term 'person' means any individual or entity capable of holding a legal or beneficial interest in property."

The Tenth Circuit has clarified that courts may consider context when determining the meaning of a word in a statute. Context means "the text of the Act of Congress surrounding the word at issue, or the text of other related congressional Acts." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1130 (10th Cir. 2013); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993) ("The relevant portion of the Dictionary Act, 1 U.S.C. § 1, provides (as it did in 1959) that [i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.") (internal quotations omitted).[5]

The PLO and the PA are not foreign sovereigns because they are not recognized by the United States as a sovereign state and such determination by the Executive is binding. *Waldman*,

---

[5] The U.S. Court of Appeals for the District of Columbia Circuit seemed to suggest that the PLO and PA were foreign corporations that were not subject to personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding that Plaintiffs could not invoke retroactive consent to personal jurisdiction because Defendants had not yet made a payment to trigger the PSJVTA). The U.S. Court of Appeals for the Second Circuit also invoked *Daimler* but held that the PA is a non-sovereign government and the PLO is a foreign agent, both of which are unincorporated associations. *Waldman*, 835 F.3d at 332. Either decision, in the eyes of this Court, renders the PLO and PA to be persons that are entitled to due process protection.

**0972**

835 F.3d at 329 (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015)); *see also Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 431 (S.D.N.Y. 2004) (detailing the history of the PLO and PA).  While Plaintiffs rely on the dicta in *Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *5 (S.D.N.Y. Mar. 18, 2022), for the proposition that the PLO and PA are not persons for purposes of constitutional due process, this Court respectfully disagrees.  The definition of personhood within the PSJVTA includes the PLO and PA because they are entities capable of holding a legal or beneficial interest in property, and Plaintiffs relied upon such a definition when pleading that the PLO and PA were persons in the Amended Complaint.  Accordingly, this Court finds that the PLO and PA are persons under the PSJVTA and, therefore, entitled to due process protection.  *See Waldman*, 835 F.3d at 330 ("Indeed, this Court has already applied Fourteenth Amendment principles to Fifth Amendment civil terrorism cases."); *see also* U.S. Amicus Br., *Sokolow v. Palestine Liberation Organization*, 138 S.Ct. 1438 (2018), 2018 WL 1251857 at *8 ("This Court has not recognized any other class of entities - whether natural or artificial - as outside the category of 'persons' for purposes of due process. It has treated as 'persons' domestic and foreign entities of various types, such as corporations.").

### 2.  *Mallory and Consent to the PSJVTA*

The next issue before this Court is to determine whether the PSJVTA's consent provision comports with due process.  The United States intervened in this case to defend the constitutionality of the consent provision of the PSJVTA, arguing that the U.S. Supreme Court affirmed in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023) that deemed consent was consistent with due process (D. 107).  The holding in *Mallory*, however, is not as broad-sweeping as Plaintiffs and the United States purport it to be.  The *Mallory* Court did not break new ground

**0973**

in its holding but rather reaffirmed that *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917) controlled the analysis.  Accordingly, the U.S. Supreme Court held that Pennsylvania's consent statute, which required out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as a condition of registering to do business within the state, did not violate the Fourteenth Amendment's Due Process Clause.  *Mallory*, 143 S. Ct. at 2037-38.

The PSJVTA is substantially different from the Pennsylvania statute.  *Compare* 18 U.S.C. § 2334 with 42 Pa. Stat. and Cons. Stat. § 5301(a)(2)(i), (b).  In both *Pennsylvania Fire* and *Mallory*, the out-of-state corporation had registered with the respective department of state in order to conduct business and maintained an office within that jurisdiction.  That is not the case here.  Rather, the trigger for establishing personal jurisdiction over the PLO and PA is if one of the entities (1) makes an international payment, directly or indirectly, to an individual convicted of terrorism that injured or killed a national of the United States or to *any family member* of the convicted person; (2) maintains a premise within the United States; or (3) conducts *any activity* while physically present in the United States on behalf of the PLO or PA, regardless of whether that activity is UN-related.  18 U.S.C. § 2334(e)(1)(A)-(B) (emphasis added).[6]  With the PSJVTA, "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction . . . and declared that such conduct 'shall be deemed' to be consent."  *Fuld*, 578 F. Supp. 3d at 587.  As the U.S. Supreme Court noted in 1945:

---

[6] Because the Court finds that the PSJVTA violates the Due Process Clause, it will refrain from delving into an analysis regarding whether it is also vague and ambiguous or facially unconstitutional.

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945).

As previously discussed, and as Plaintiffs have alleged, Defendants are persons and not out-of-state corporations that have registered to do business within Colorado. Defendants' work at the UN and in Washington, D.C., or payments made in Palestine also do not trigger jurisdiction in the U.S. District Court for the District of Colorado. *See Sokolow*, 607 F. Supp. 3d at 326 ("Even accepting Plaintiffs' argument that Defendants' United States activities fall within the ambit of the PSJVTA's U.S. activities prong . . . these types of conduct do not infer any intention on the part of Defendants to legally submit to suit in the United States."); *Fuld*, 578 F. Supp. at 587 ("Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it must be willful, thoughtful, and fair. Extorted actual consent and equally unwilling implied consent are not the stuff of due process." (internal quotations and citation omitted)). Plaintiffs' allegations neither support the conclusion that Defendants have consented to the jurisdiction of every federal court in the United States nor can be extrapolated to establish jurisdiction in the U.S. District Court for the District of Colorado. Ultimately, this Court finds that the holding in *Mallory* is not applicable to the PSJVTA, the consent provision of the PSJVTA does not comport with due process, and Defendants have not consented to jurisdiction in this Court.

### 3. General and Specific Personal Jurisdiction

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, which are analyzed similarly in civil cases, the Court examines two parts to the due process test for personal jurisdiction as established by *International Shoe* and its progeny: (1) "the minimum contacts inquiry" (i.e., "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant"); and (2) "the reasonableness inquiry" (i.e., "whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case"). *Waldman*, 835 F.3d at 331 (internal quotations and citations omitted). A court can exercise personal jurisdiction in two ways: general jurisdiction and specific jurisdiction. *See Int'l Shoe Co*., 326 U.S. at 316.

Plaintiffs do not allege that there is general personal jurisdiction over the PLO and PA but do allege that the Court has general personal jurisdiction over Riyad Mansour, who is the named representative for the PLO and PA, as he is a domiciliary of the United States and service was effected at Mansour's home address in Florida (D. 69 at 27). Plaintiffs fail to identify activities sufficient to establish general personal jurisdiction, which "requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Medinfo, Inc. v. MedTool LLC*, No. 15-CV-00260-MEH, 2015 WL 3542712, at *2 (D. Colo. June 5, 2015) (internal quotations and citation omitted).

Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA (D. 69 at 19-27). "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the

**0976**

forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Here, the only tie this case has to the U.S. District Court for the District of Colorado is the fact that Plaintiff Shelley Levine is domiciled and resides in Boulder, Colorado (D. 50 at 5). The actions by Defendants (especially actions taken in Israel) are not sufficiently connected to the United States or even the state of Colorado. Thus, there is no basis to conclude that Defendants may haled into a federal court in the United States, let alone this Court. "The overwhelming evidence shows that the defendants are 'at home' in [the Palestinian Territories]."[7] *Waldman*, 835 F.3d at 332. Accordingly, the Court finds that Plaintiffs have failed to establish that this Court has either specific or general personal jurisdiction over any of the Defendants due to lack of activity in the forum.

---

[7] See *Palestinian Territories*, U.S. Dep't of State, https://www.state.gov/countries-areas/palestinian-territories/ (last visited Aug. 22, 2023).

### 4. Federal Rule of Civil Procedure 23.2

Finally, Plaintiffs argue that Rule 23.2 permits class actions against unincorporated associations.[8] Rule 23.2 states:

> This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. *The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members.* In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e).

Fed. R. Civ. P. 23.2 (emphasis added). This rule does not create personal jurisdiction over Defendants when there is a lack of consent, general personal jurisdiction, or specific personal jurisdiction. Furthermore, Plaintiffs are not suing Defendants as a class action under Rule 23. Accordingly, this argument is unavailing, and the Court will not spend further time analyzing it.

### B. Remaining Claims

The Court has disposed of all of Plaintiffs' federal law claims. All the remaining claims are brought under Israeli law, which Plaintiffs argue implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3), when all the federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims not brought under federal law. *See Smith v. City of Enid*, 149 F.3d 1151,

---

[8] The Tenth Circuit has previously held that unincorporated associations may not be sued under certain federal laws. *See Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 1:22-CV-00581-CNS, 2023 WL 1338676, at *6 (D. Colo. Jan. 31, 2023) (holding that an unincorporated association could not be sued under 42 U.S.C. § 1985(3)) (collecting cases); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017); *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006) (holding that an unincorporated association was not a person under 42 U.S.C. § 1983). However, because this Court has agreed with the Second Circuit that, the PA is a non-sovereign government and the PLO is a foreign agent, which makes them persons under the Due Process Clause, the Court does not need to reach the issue of whether Defendants are unincorporated associations and whether they can even be sued in the Tenth Circuit. *See Waldman*, 835 F.3d at 332.

1156 (10th Cir. 1998).  Accordingly, the Court dismisses the remaining claims without prejudice for lack of subject-matter jurisdiction.

### IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED (D. 58).  It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED August 23, 2023.

BY THE COURT:

_____
Gordon P. Gallagher
United States District Judge

**0979**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher**

Civil Action No. **1:21-cv-03043-GPG-STV**

SHELLEY LEVINE, et al.,

     Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

     Defendants.

---

## FINAL JUDGMENT

---

     In accordance with the orders filed during the pendency of this case, and pursuant to Fed.

R. Civ. P. 58(a), the following Final Judgment is hereby entered.

     Pursuant to the order entered by Judge Gordon P. Gallagher on August 23, 2023, [D. 111]

it is

     **ORDERED** that Defendants' Motion to Dismiss [D. 58] is **GRANTED**, It is

     **FURTHER ORDERED** that Plaintiffs' First Amended Complaint and all remaining

          claims are dismissed without prejudice, it is

     **FURTHER ORDERED:** that judgment is entered in favor of the Defendants, and

          against the Plaintiffs, it is

     **FURTHER ORDERED** that the Defendants are awarded their costs to be taxed by the

          Clerk of the Court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1)

          and D.C.COLO.LCivR 54.1

This case will be closed.

DATED at Grand Junction, Colorado this 23rd day of August 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

By:     s/ D. Clement
        D. Clement
        Deputy Clerk

**0981**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 1:21-cv-03043-GPG-STV

SHELLEY LEVINE, *et al.*,

               Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

               Defendants.

---

## NOTICE OF APPEAL

---

**0982**

Notice is hereby given that all the plaintiffs in the above-captioned action appeal to the United States Court of Appeals for the Tenth Circuit from the Order of the United States District Court for the District of Colorado (Gallagher, *J.*), filed on August 23, 2023 (Dkt. No. 111), which dismissed this action, and from the Final Judgment entered by the aforementioned district court on August 23, 2023 (Dkt. No. 112), which entered final judgment dismissing this action.

All the plaintiffs herein hereby appeal from each and every part of the aforementioned Order and Final Judgment, and from any and all other orders entered in this action that merged into the aforementioned Order and Final Judgment.

DATED this 13th day of September, 2023.

Respectfully Submitted,

*s/ Daniel K. Calisher*
Daniel K. Calisher
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiffs*

*s/ Jordan Factor*
Jordan Factor
Allen Vellon Wolf Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-534-4499
Email: jfactor@allen-vellone.com
*Attorneys for Plaintiffs*

*s/ Asher Perlin*
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Telephone: 786-687-0404
Email: asher@asherperlin.com
*Attorneys for Plaintiffs*

**0983**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of September, 2023, a true and correct copy of the foregoing **Notice of Appeal**, was electronically served upon all counsel of record via *ECF*.

*s/ Asher Perlin*
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-03043-GPG-STV

SHELLEY LEVINE, et al.,

    Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

    Defendants.

---

## ORDER

---

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint

under Rule 12(b)(2) and Rule 12(b)(6) (D. 58).  The Court GRANTS the motion for the following

reasons.

### I.  FACTS

This civil action arises from a terrorist attack in a synagogue in the Israeli Har Nof

neighborhood of Jerusalem on November 18, 2014 (D. 50 at 38).[1]  Plaintiffs allege that two

operatives of the Popular Front for the Liberation of Palestine (PFLP), Uday Abu Jamal and

Ghassan Abu Jamal, carried out a terrorist attack and killed several worshippers at the synagogue

(some of whom were also American citizens).  The victims included Rabbi Aryeh Kupinsky, Rabbi

---

[1] The Court draws the operative facts as set forth in Plaintiffs' First Amended Complaint (D. 50).

Moshe Twersky, Rabbi Abraham Goldberg, Rabbi Kalman (Cary) Levine, and Police Sergeant Zidan Saif.  The suspects also seriously injured Dr. Norman Heching and Rabbi Saul Goldstein (*id.* at 38-39).  This civil action is brought by the personal representatives of the estates of U.S. citizens Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky as well as of non-U.S. citizens Zidan Saif and Rabbi Abraham Goldberg (*id.* at 4).

Rather than bringing this civil action against the estate of Uday Abu Jamal and Ghassan Abu Jamal or the PFLP, Plaintiffs are suing the Palestine Liberation Organization (PLO) (claiming that it is a front for the PFLP), the Palestinian Authority (PA), and Riyad Mansour (as representative of the PLO and PA) pursuant to the Promoting Security and Justice for Victims of Terrorism Act of 2019 (PSJVTA), under 18 U.S.C. §§ 2333, 2334, and the Antiterrorism Act (ATA), under 18 U.S.C. § 2331.  Plaintiffs assert that this Court has original subject matter jurisdiction over Plaintiffs' ATA claims under 18 U.S.C. §§ 2331, 2333, 2334, and 2338 along with 28 U.S.C. § 1331, as well as supplemental subject matter jurisdiction over their Israeli-law claims under 28 U.S.C. § 1367.

Plaintiffs raise six claims:  (1) direct liability for international terrorism under 18 U.S.C. § 2333(a); (2) respondeat superior liability for international terrorism under 18 U.S.C. § 2333(a); (3) aiding and abetting under 18 U.S.C. § 2333(d); (4) conspiracy under 18 U.S.C. § 2333(d); (5) negligence under Israeli law, Civil Wrongs Ordinance (CWO) § 35; and (6) vicarious liability under CWO § 12 (*id.* at 42-54).  Defendants argue, inter alia, that exercising jurisdiction over them would violate due process and that the PSJVTA does not establish valid personal jurisdiction via the Due Process Clause of the Fifth Amendment (D. 58).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), if a court is without personal jurisdiction over a party, the court cannot render a valid judgment.  Fed. R. Civ. P. 12; *see J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021).  The plaintiff bears the burden of establishing that the federal court has jurisdiction over the defendant.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  To avoid dismissal, the plaintiff must make a prima facie showing of personal jurisdiction and must point to well-pleaded factual allegations, both in the complaint and in any supporting affidavits, that would support jurisdiction over each defendant.  *Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023).  When deciding personal jurisdiction without an evidentiary hearing the court does not need to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017).

Plaintiffs allege that the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(1)(C) and 4(k)(2).[2]  In a civil action based on a federal question, the

---

[2] Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA and general personal jurisdiction over Defendant Mansour (D. 69 at 19-34).  These claims typically arise under the Fourteenth Amendment and the state's long-arm statute, however, these claims may be analyzed under the Fifth Amendment as the standard is the same in civil cases (this issue will be addressed infra).  Ultimately, this Court finds that the PSJVTA's consent provision does not comport with due process.  Thus, to the extent that Plaintiffs would attempt to assert personal jurisdiction under Colorado's long-arm statute, this argument would fail too.  The plaintiff must show (1) the laws of the forum state potentially confer jurisdiction by authorizing service upon the defendant, and (2) the exercise of such jurisdiction comports with the principles of due process.  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (citation omitted).  Because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause," the statutory and constitutional analysis is the same.  *Id*.  Thus, the court merely needs to examine whether the exercise of personal jurisdiction comports with due process.  The due process analysis examines whether:  (1) the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court (either by showing general or specific personal jurisdiction) and (2) the exercise of personal jurisdiction in the circumstances presented offends traditional notions of fair play and substantial justice.  *Id*. (quotations and citations omitted).  This Court finds that Defendants do not have any minimum contacts with the state

court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Under Rule 4(k)(1)(C), "[s]erving a summons or filing of a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014) (internal quotations and citation omitted). "While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are [nonetheless] distinct concepts that require separate inquiries." *Id.* "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction . . . provided that due process is satisfied." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).

Rule 4(k)(2) provides for federal long-arm jurisdiction if the plaintiff can show: (1) the defendant is not subject to the jurisdiction of any state's court of general jurisdiction, and (2) that the exercise of jurisdiction comports with due process, the United States Constitution, and laws. *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 671 (D. Colo. 2019); *see also Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012). "This Rule serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Archangel Diamond Corp. Liquidating Tr.*, 75 F. Supp. 3d

of Colorado and would not expect to be haled into court here, thus the exercise of personal jurisdiction over Defendants would not comport with the Due Process Clause of the Fourteenth Amendment.

at 1360 (internal quotations and citation omitted).  In order to preclude the use of Rule 4(k)(2) under the first prong of the test, courts require the defendant

> to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311.

## III. ANALYSIS

In the instant motion to dismiss, Defendants argue that:  (1) they have not consented to personal jurisdiction under the PSJVTA; (2) the PA and PLO are persons under the Due Process Clause of the Fifth Amendment, and (3) Federal Rule of Civil Procedure 23.2 does not convey personal jurisdiction over them (D. 58, D. 76).  Plaintiffs contend that (1) Defendants have submitted to jurisdiction under the PSJVTA by making payments to terrorists or family members after the enactment of the PSJVTA; (2) the PLO and PA are not persons under the due process clause; (3) this Court has specific jurisdiction over the PLO and PA; and (4) this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 23.2 (D. 69).  The parties also submitted briefing on the U.S. Supreme Court's decision, *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023), which held that Pennsylvania's consent statute requiring an out-of-state corporation to consent to personal jurisdiction in order to register to do business within the state did not violate the Due Process Clause of the Fourteenth Amendment.  There is no dispute Defendants PLO and PA waived service of process in this action (D. 15) and Defendant Mansour was served at his home address in Florida (D. 55).  The question before the Court is whether the PSJVTA consent

provision for personal jurisdiction in federal courts comports with due process.  The Court finds

that it does not.

## A.  PSJVTA

The scope of personal jurisdiction "flows not from Art. III, but from the Due Process

Clause."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)

("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It

represents a restriction on judicial power not as a matter of sovereignty, but as a matter of

individual liberty.").  The Court conveys its condolences to the victims and their families.  While

the events described in Plaintiffs' First Amended Complaint are undoubtedly tragic, the Court is

mandated to examine whether it can exercise jurisdiction and to ensure that it is within the limits

prescribed by the Due Process Clause.[3]

To understand this case, it is necessary to understand the catalyst for the PSJVTA.  In 2016,

the Second Circuit vacated a jury verdict against the PLO and PA due to a lack of jurisdiction.

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016).   The Second Circuit

determined that the PLO and PA were not recognized as sovereign states by the United States and

were not corporations; rather, the PA was designated a non-sovereign government and the PLO as

a foreign agent (both of which the Second Circuit defined as unincorporated associations).  *Id.* at

332.  Ultimately, the Second Circuit held that the defendants' activities in the United States (e.g.,

maintaining an office in Washington, D.C., promoting the Palestinian cause in speeches and media

---

[3] It is irrelevant for this Court to distinguish between the Fifth Amendment and Fourteenth Amendment in its analysis in this case because the minimum contacts and fairness analyses are the same under the Fifth Amendment and the Fourteenth Amendment in civil cases.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)); *see also Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1359 (D. Colo. 2014).

appearances, and retaining a lobbying firm) did not render the defendants essentially at home in the United States to such an extent that a federal court would have personal jurisdiction over civil claims regarding terrorist attacks in Israel. *Id.* at 333; *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotations and citation omitted). The Second Circuit ultimately ruled that there was no general personal jurisdiction, specific personal jurisdiction, or waiver of personal jurisdiction because the attacks occurred outside of the United States, the attacks in Israel were not expressly aimed at the United States (although Americans did die or suffer injuries), and lobbying activities by the defendants to change American policy were insufficiently related conduct under the ATA. *Waldman*, 835 F.3d at 343–44.

In light of this case and other rulings[4] that victims of terrorist attacks in Israel or family members of said victims could not bring a civil action against the PLO or PA under the ATA in federal courts, Congress enacted the PSJVTA. 18 U.S.C. § 2333; *see also* Further Consolidated Appropriations Act of 2020, Pub. L. No. 116-94, 133 Stat. 2534; *Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577, 578 (S.D.N.Y. 2022). The PSJVTA provides that any national of the United States who is injured "in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," may sue the PLO or PA "to recover threefold

---

[4] *See, e.g., Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54 (D.C. Cir. 2017).

the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).

Specifically, the PSJVTA declares that the PLO and PA "shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed" if either (1) after 120 days post-enactment of the PSJVTA, the defendant makes a direct or indirect payment to a party who has committed an act of terrorism or to any family member of an individual who died committing an act of terrorism that killed or injured a United States national; or (2) after 15 days post-enactment of the PSJVTA, the defendant continues to maintain or establishes an office, headquarters, premises, or other facilities or establishments in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority."  18 U.S.C. § 2334(e)(1)(A)-(B).  The PSJVTA notes that "no court may consider," inter alia, that any premise or activity undertaken was exclusively for the purpose of conducting official business of the United Nations (UN) when determining consent to personal jurisdiction.  18 U.S.C. § 2334(e)(3).  Like the U.S. District Court for the Southern District of New York, this Court finds that Congress cannot simply legislate that "any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court."  *Fuld*, 578 F. Supp. 3d at 580.  Ultimately, the Court finds that it cannot exercise jurisdiction in this case because the consent provision of the PSJVTA does not comport with due process.

**0992**

### 1. Persons under the Due Process Clause

First, Plaintiffs argue that the PLO and PA are not persons under the Due Process Clause and that the Due Process Clause only applies to natural persons and private corporations but not a political body or a sovereign (D. 69 at 6-7). This argument is unavailing. Plaintiffs clearly allege in the Amended Complaint that Defendants PLO and PA are each "a person as defined in 18 U.S.C. § 2331." Per 18 U.S.C. § 2331(3), "the term 'person' means any individual or entity capable of holding a legal or beneficial interest in property."

The Tenth Circuit has clarified that courts may consider context when determining the meaning of a word in a statute. Context means "the text of the Act of Congress surrounding the word at issue, or the text of other related congressional Acts." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1130 (10th Cir. 2013); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993) ("The relevant portion of the Dictionary Act, 1 U.S.C. § 1, provides (as it did in 1959) that [i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.") (internal quotations omitted).[5]

The PLO and the PA are not foreign sovereigns because they are not recognized by the United States as a sovereign state and such determination by the Executive is binding. *Waldman*,

---

[5] The U.S. Court of Appeals for the District of Columbia Circuit seemed to suggest that the PLO and PA were foreign corporations that were not subject to personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding that Plaintiffs could not invoke retroactive consent to personal jurisdiction because Defendants had not yet made a payment to trigger the PSJVTA). The U.S. Court of Appeals for the Second Circuit also invoked *Daimler* but held that the PA is a non-sovereign government and the PLO is a foreign agent, both of which are unincorporated associations. *Waldman*, 835 F.3d at 332. Either decision, in the eyes of this Court, renders the PLO and PA to be persons that are entitled to due process protection.

835 F.3d at 329 (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015)); *see also Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 431 (S.D.N.Y. 2004) (detailing the history of the PLO and PA).  While Plaintiffs rely on the dicta in *Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV), 2022 WL 826409, at *5 (S.D.N.Y. Mar. 18, 2022), for the proposition that the PLO and PA are not persons for purposes of constitutional due process, this Court respectfully disagrees.  The definition of personhood within the PSJVTA includes the PLO and PA because they are entities capable of holding a legal or beneficial interest in property, and Plaintiffs relied upon such a definition when pleading that the PLO and PA were persons in the Amended Complaint.  Accordingly, this Court finds that the PLO and PA are persons under the PSJVTA and, therefore, entitled to due process protection.  *See Waldman*, 835 F.3d at 330 ("Indeed, this Court has already applied Fourteenth Amendment principles to Fifth Amendment civil terrorism cases."); *see also* U.S. Amicus Br., *Sokolow v. Palestine Liberation Organization*, 138 S.Ct. 1438 (2018), 2018 WL 1251857 at *8 ("This Court has not recognized any other class of entities - whether natural or artificial - as outside the category of 'persons' for purposes of due process. It has treated as 'persons' domestic and foreign entities of various types, such as corporations.").

### 2.   *Mallory and Consent to the PSJVTA*

The next issue before this Court is to determine whether the PSJVTA's consent provision comports with due process.   The United States intervened in this case to defend the constitutionality of the consent provision of the PSJVTA, arguing that the U.S. Supreme Court affirmed in *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023) that deemed consent was consistent with due process (D. 107).  The holding in *Mallory*, however, is not as broad-sweeping as Plaintiffs and the United States purport it to be.  The *Mallory* Court did not break new ground

**0994**

in its holding but rather reaffirmed that *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917) controlled the analysis. Accordingly, the U.S. Supreme Court held that Pennsylvania's consent statute, which required out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as a condition of registering to do business within the state, did not violate the Fourteenth Amendment's Due Process Clause. *Mallory*, 143 S. Ct. at 2037-38.

The PSJVTA is substantially different from the Pennsylvania statute. *Compare* 18 U.S.C. § 2334 with 42 Pa. Stat. and Cons. Stat. § 5301(a)(2)(i), (b). In both *Pennsylvania Fire* and *Mallory*, the out-of-state corporation had registered with the respective department of state in order to conduct business and maintained an office within that jurisdiction. That is not the case here. Rather, the trigger for establishing personal jurisdiction over the PLO and PA is if one of the entities (1) makes an international payment, directly or indirectly, to an individual convicted of terrorism that injured or killed a national of the United States or to *any family member* of the convicted person; (2) maintains a premise within the United States; or (3) conducts *any activity* while physically present in the United States on behalf of the PLO or PA, regardless of whether that activity is UN-related. 18 U.S.C. § 2334(e)(1)(A)-(B) (emphasis added).[6] With the PSJVTA, "Congress simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction . . . and declared that such conduct 'shall be deemed' to be consent." *Fuld*, 578 F. Supp. 3d at 587. As the U.S. Supreme Court noted in 1945:

---

[6] Because the Court finds that the PSJVTA violates the Due Process Clause, it will refrain from delving into an analysis regarding whether it is also vague and ambiguous or facially unconstitutional.

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945).

As previously discussed, and as Plaintiffs have alleged, Defendants are persons and not out-of-state corporations that have registered to do business within Colorado. Defendants' work at the UN and in Washington, D.C., or payments made in Palestine also do not trigger jurisdiction in the U.S. District Court for the District of Colorado. *See Sokolow*, 607 F. Supp. 3d at 326 ("Even accepting Plaintiffs' argument that Defendants' United States activities fall within the ambit of the PSJVTA's U.S. activities prong . . . these types of conduct do not infer any intention on the part of Defendants to legally submit to suit in the United States."); *Fuld*, 578 F. Supp. at 587 ("Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements of due process, it must be willful, thoughtful, and fair. Extorted actual consent and equally unwilling implied consent are not the stuff of due process." (internal quotations and citation omitted)). Plaintiffs' allegations neither support the conclusion that Defendants have consented to the jurisdiction of every federal court in the United States nor can be extrapolated to establish jurisdiction in the U.S. District Court for the District of Colorado. Ultimately, this Court finds that the holding in *Mallory* is not applicable to the PSJVTA, the consent provision of the PSJVTA does not comport with due process, and Defendants have not consented to jurisdiction in this Court.

### 3. General and Specific Personal Jurisdiction

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, which are analyzed similarly in civil cases, the Court examines two parts to the due process test for personal jurisdiction as established by *International Shoe* and its progeny: (1) "the minimum contacts inquiry" (i.e., "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant"); and (2) "the reasonableness inquiry" (i.e., "whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case"). *Waldman*, 835 F.3d at 331 (internal quotations and citations omitted). A court can exercise personal jurisdiction in two ways: general jurisdiction and specific jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316.

Plaintiffs do not allege that there is general personal jurisdiction over the PLO and PA but do allege that the Court has general personal jurisdiction over Riyad Mansour, who is the named representative for the PLO and PA, as he is a domiciliary of the United States and service was effected at Mansour's home address in Florida (D. 69 at 27). Plaintiffs fail to identify activities sufficient to establish general personal jurisdiction, which "requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Medinfo, Inc. v. MedTool LLC*, No. 15-CV-00260-MEH, 2015 WL 3542712, at *2 (D. Colo. June 5, 2015) (internal quotations and citation omitted).

Plaintiffs also argue that the Court has specific personal jurisdiction over the PLO and PA (D. 69 at 19-27). "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the

forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Here, the only tie this case has to the U.S. District Court for the District of Colorado is the fact that Plaintiff Shelley Levine is domiciled and resides in Boulder, Colorado (D. 50 at 5). The actions by Defendants (especially actions taken in Israel) are not sufficiently connected to the United States or even the state of Colorado. Thus, there is no basis to conclude that Defendants may haled into a federal court in the United States, let alone this Court. "The overwhelming evidence shows that the defendants are 'at home' in [the Palestinian Territories]."[7] *Waldman*, 835 F.3d at 332. Accordingly, the Court finds that Plaintiffs have failed to establish that this Court has either specific or general personal jurisdiction over any of the Defendants due to lack of activity in the forum.

---

[7] See *Palestinian Territories*, U.S. Dep't of State, https://www.state.gov/countries-areas/palestinian-territories/ (last visited Aug. 22, 2023).

### 4.  Federal Rule of Civil Procedure 23.2

Finally, Plaintiffs argue that Rule 23.2 permits class actions against unincorporated associations.[8]  Rule 23.2 states:

> This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. *The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members.* In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e).

Fed. R. Civ. P. 23.2 (emphasis added).  This rule does not create personal jurisdiction over Defendants when there is a lack of consent, general personal jurisdiction, or specific personal jurisdiction.  Furthermore, Plaintiffs are not suing Defendants as a class action under Rule 23.  Accordingly, this argument is unavailing, and the Court will not spend further time analyzing it.

### B.  Remaining Claims

The Court has disposed of all of Plaintiffs' federal law claims.  All the remaining claims are brought under Israeli law, which Plaintiffs argue implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367.  Under 28 U.S.C. § 1367(c)(3), when all the federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining claims not brought under federal law.  *See Smith v. City of Enid*, 149 F.3d 1151,

---

[8] The Tenth Circuit has previously held that unincorporated associations may not be sued under certain federal laws. *See Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 1:22-CV-00581-CNS, 2023 WL 1338676, at *6 (D. Colo. Jan. 31, 2023) (holding that an unincorporated association could not be sued under 42 U.S.C. § 1985(3)) (collecting cases); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017); *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006) (holding that an unincorporated association was not a person under 42 U.S.C. § 1983).  However, because this Court has agreed with the Second Circuit that, the PA is a non-sovereign government and the PLO is a foreign agent, which makes them persons under the Due Process Clause, the Court does not need to reach the issue of whether Defendants are unincorporated associations and whether they can even be sued in the Tenth Circuit.  *See Waldman*, 835 F.3d at 332.

1156 (10th Cir. 1998).  Accordingly, the Court dismisses the remaining claims without prejudice for lack of subject-matter jurisdiction.

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED (D. 58).  It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED August 23, 2023.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

**1000**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Gordon P. Gallagher**

Civil Action No. **1:21-cv-03043-GPG-STV**

SHELLEY LEVINE, et al.,

      Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION;
THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government
Authority" and/or "The Palestinian National Authority"); and
RIYAD MANSOUR, as the representative of The Palestine Liberation Organization
and The Palestinian Authority,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed.

R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the order entered by Judge Gordon P. Gallagher on August 23, 2023, [D. 111]

it is

      **ORDERED** that Defendants' Motion to Dismiss [D. 58] is **GRANTED**, It is

      **FURTHER ORDERED** that Plaintiffs' First Amended Complaint and all remaining

          claims are dismissed without prejudice, it is

      **FURTHER ORDERED:** that judgment is entered in favor of the Defendants, and

          against the Plaintiffs, it is

      **FURTHER ORDERED** that the Defendants are awarded their costs to be taxed by the

          Clerk of the Court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1)

          and D.C.COLO.LCivR 54.1

**1001**

This case will be closed.

DATED at Grand Junction, Colorado this 23rd day of August 2023.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

By:      s/ D. Clement
         D. Clement
         Deputy Clerk

**1002**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **SHELLEY LEVINE**, et al.,<br><br>Plaintiffs,<br><br>    v.<br><br>**THE PALESTINE LIBERATION ORGANIZA-TION** and **THE PALESTINIAN AUTHORITY**,<br><br>Defendants. | Case No. 1:21-cv-03043-RM-STV |

### NOTICE OF APPEAL

Notice is hereby given that Intervenor United States of America appeals to the United States Court of Appeals for the Tenth Circuit from the Opinion and Order Granting Defendants' Motion to Dismiss, dated August 23, 2023 (ECF No. 111) and the Final Judgment entered dismissing the action (ECF No. 112), as well as from any and all other orders entered in this action that merged into the aforementioned Order and Final Judgment.

Dated: October 20, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

DIANE KELLEHER
Assistant Branch Director

*/s/ Alexander N. Ely*
ALEXANDER N. ELY (DC Bar No. 230008)
Trial Attorney
United States Department of Justice

**1003**

Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 993-5177; Fax: (202) 616-8470
alexander.n.ely@usdoj.gov

*Counsel for Intervenor*
*United States of America*

2

**1004**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Alexander N. Ely*

ALEXANDER N. ELY

*Counsel for Intervenor United States of America*

**1005**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on January 29, 2024, I electronically filed the foregoing **CONSOLIDATED JOINT APPENDIX Volumes I-IV** with the Clerk of the Court using the *ECF* system which will serve a true and correct copy upon all counsel of record via *ECF*.

*s/ Chip G. Schoneberger*

Chip G. Schoneberger

360 S. Garfield Street, 6th Floor

Denver, Colorado 80209

303-333-9810

cschoneberger@fostergraham.com

*Attorney for Appellants*
